IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

| | |
|---|---|
| SHAWN MCBREAIRTY,<br><br>Plaintiff,<br><br>v.<br><br>HEATH MILLER, in his personal and official capacities; SCHOOL BOARD OF RSU22,<br><br>Defendants. | Case No. _____<br><br>**EMERGENCY MOTION FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION** |

Plaintiff Shawn McBreairty moves for a temporary restraining order and preliminary injunction to enjoin Defendants from prohibiting Mr. McBreairty from public comment based on viewpoint discrimination and from enforcing BEDH Public Participation Policy Rule 2. McBreairty respectfully requests the entry of an injunction prior to the next RSU22 meeting on April 26, 2023. He has been removed from two prior meetings, under threat of arrest, for criticizing RSU22 employees – and he intends to do so again at the next meeting. McBreairty's First Amendment rights will not be protected without injunctive relief. McBreairty and the public interest will be irreparably harmed if this relief does not issue prior to April 26. This motion is based on all pleadings and papers on file herein and the attached Memorandum of Points and Authorities, and any further argument and evidence as may be presented at a hearing.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**1.0     INTRODUCTION**

Defendants permit praise of their employees at school board meetings, but they do not allow criticism of the same government employees. And, in fact, they do not even allow McBreairty (and only McBreairty) to so much as mention the names of RSU22 employees. As such, the School Board and its chair, Miller, tolerates certain viewpoints and prohibits others. McBreairty previously prevailed in a suit against this same School Board for its unconstitutional actions. *McBreairty v. Sch. Bd. of RSU22*, 2022 U.S. Dist. LEXIS 128353 (D. Me. July 20, 2022) (hereinafter, *McBreairty v. RSU22*). However, undeterred by this result, Defendants violated the First Amendment again. This time, they did so by enforcing a viewpoint-based rule that prohibits speaking ill of government employees, but which permits speaking well of government employees.

The public must be free to debate the relative merits of government employees, including those of the public schools. The Connecticut Supreme Court addressed this issue with great clarity:

> Robust and wide open debate concerning the conduct of the teachers in the schools of this state is a matter of great public importance . . . [T]eachers' positions, if abused, potentially might cause serious psychological or physical injury to school aged children. Unquestionably, members of society are profoundly interested in the qualifications and performance of the teachers who are responsible for educating and caring for the children in their classrooms. Further, teachers exercise almost unlimited responsibility for the daily implementation of the governmental interest in educating young people. In the classroom, teachers are not mere functionaries. Rather, they conceive and apply both policy and procedure.

*Kelley v. Bonney*, 606 A.2d 693, 710 (Conn. 1992). There is no reason a Maine court should view this any differently. After all, the Connecticut Supreme Court was upholding a universal American concept – The First Amendment.

**2.0 FACTS**

**2.1 RSU22 School Board Meeting and Public Participation Policy Rule 2**

Plaintiff Shawn McBreairty is an advocate who regularly attends Defendant RSU22 School Board meetings that are overseen by Defendant RSU22 School Board Chair Heath Miller.

BEDH Public Participation Policy Rule 2 provides as follows:

> Confidential personnel information will not be shared in a public session. **No complaints or allegations will be allowed at Board meetings concerning any person employed by the school system** or against particular students. Personnel matters or **complaints concerning** student or **staff issues** will not be considered in a public meeting but will be referred through established policies and procedures. (Compl. at **Exhibit A**) (emphasis added)

McBreairty specifically challenges the bolded portions of the rule.[1]

McBreairty was victim of this rule. While addressing the School Board, McBreairty criticized RSU22 employees. Defendants then unconstitutionally enforced Rule 2 to silence McBreairty's criticisms.

**2.2 RSU22 School Board meeting – October 19, 2022**

Defendants unconstitutionally allow government employees to be praised by name, but not criticized. As but one example, on October 19, 2022, Dolly Sullivan, a Program Director for Educate Maine, made public comment at the RSU22 School Board meeting. *See* Compl. at **Exhibit C**. Ms. Sullivan is the Program Director for the Maine Teacher of the Year program. During Ms. Sullivan's public comment, she provided an assessment of Kelsey Stoyanova's service as the 2022 Maine Teacher of the Year, including referring to her as "thoughtful," "intentional," "brave," and "brilliant." Ms. Sullivan permitted to praise Ms. Stoyanova with no issue. After Ms. Sullivan

---

[1] McBreairty does not intend to advocate about particular students at this time. Doing so may implicate other interests that are not necessary to address at this stage. However, it would seem equally unconstitutional to prohibit criticizing a student in certain contexts. For example, if a student held a student government leadership position and drew criticism or was charged with committing a heinous crime. Nevertheless, McBreairty has never discussed particular students.

completed her comments, a round of applause broke out, and Defendant Miller can be heard saying "Thank you Ms. Sullivan for all you and your organization have done for us."

### 2.3 RSU22 School Board meeting – February 15, 2023

In contrast to Ms. Sullivan, who faced no reprobation for mentioning Stoyanova by name, McBreairty was penalized for mentioning Stoyanova. On February 15, 2023, McBreairty made public comment at the RSU22 meeting. *See* Compl. at **Exhibit D**. McBreairty played a prerecorded statement where he criticized Stoyanova. Unlike the praise Ms. Sullivan received for lauding Stoyanova, Defendant Miller objected to McBreairty critically discussing Ms. Stoyanova's performance. When McBreairty criticized her, Defendant Miller ordered McBreairty to stop his public comment and sit down. The School Board cut the video feed, stopped the meeting, and called the Hampden Police Department to remove McBreairty under threat of arrest if he did not comply. Accordingly, McBreairty was not even permitted to remain as a spectator at the otherwise public meeting.

Defendant Miller told officers that McBreairty violated BEDH Public Participation Policy Rule 2 ("Rule 2") and ordered that McBreairty leave the premises. The police report states:

> Heath [Miller] then spoke up and said that he had violated the policy and Shawn was warned. Shawn said the policy is repugnant to the Constitution. Heath said Shawn mentioned employee names. [sic] and was warned but Shawn continued to do it. Mentioning employee names is against policy.
> . . .
> Heath advised before the public portion he reads the policy and the list of bullet points. Heath read one that says in substance no confidential personal information wont be shared about persons employed at the school. Complaints and allegations will be aloud [sic] at board meetings about concerning any person employed by the school or students. Heath said Shawn played a recording of himself which is perfectly fine and he let him do it until he mentioned a teachers name and an allegation towards that teacher, Heath then told him to sit down and Shawn then mentioned another staff members name in a negative manner. He then told Shawn he could not continue.

Compl. at **Exhibit E** at 3-4. If Rule 2 did not exist, Defendants could not have removed Plaintiff.

### 2.4 RSU22 School Board meeting – March 15, 2023

Rather than immediately filing suit, which could have, McBreairty exercised restraint. He returned to RSU22 for the following meeting on March 15. McBreairty hoped that the incident on February 15 would not repeat, as Defendants had a month in which to reconsider their unconstitutional actions. McBreairty reminded them of the prior case before this very court. Defendants were undeterred.

McBreairty made public comment at the RSU22 School Board meeting. *See* Compl. at **Exhibit F**. During his public comment, McBreairty criticized RSU22 employees. Defendant Miller again prevented McBreairty from finishing his public comment and ordered him to leave the premises. Immediately after McBreairty uttered the name of an employee, Defendant Miller ordered McBreairty to stop speaking and sit down. Once again, the School Board cut the video feed, stopped the meeting, and called the police to remove McBreairty from the premises.

### 3.0 LEGAL STANDARD

FRCP 65 provides for temporary restraining orders and preliminary injunctions upon notice. *See* Fed. R. Civ. P. 65(a) and (b). A temporary restraining order or preliminary injunction must (1) state the reasons why it issued; (2) state its specific terms; and (3) describe in reasonable detail the act or acts restrained or required. Fed. R. Civ. P. 65(d). Injunctive relief should be issued if: (1) the plaintiff is likely to succeed on the merits; (2) the plaintiff is likely to suffer irreparable harm if the injunction did not issue; (3) the balance of equities tips in plaintiff's favor; and (4) the injunction is in the public interest. *Winter v. NRDC, Inc.*, 555 U.S. 7, 20 (2008).

## 4.0 LEGAL ARGUMENT

### 4.1 Plaintiff Has Standing

In the First Amendment context, two types of injuries provide standing without the challenger having undergone criminal prosecution. When "the plaintiff has alleged an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by [the] statute, and there exists a credible threat of prosecution." *Mangual v. Rotger-Sabat*, 317 F.3d 45, 56-57 (1st Cir. 2003). When a plaintiff "is chilled from exercising her right to free expression or forgoes expression in order to avoid enforcement consequences he also demonstrates constitutional standing. *Id.* at 57; (collecting cases). Twice, Defendants prevented Mr. McBreairty from completing his public comment before the School Board, and had him removed by law enforcement under threat of arrest because he expressed a disfavored viewpoint. Facing a credible threat of arrest the next time McBreairty exercises his First Amendment right to criticize a public employee, McBreairty has standing.

### 4.2 Plaintiff is Likely to Prevail on the Merits of His Claims

This Court previously found for McBreairty, and in repeat circumstances, it should do so again. As previously found, "Mr. McBreairty's expression of his school-related concerns at the podium during the public comment period of School Board meetings constitutes speech that is protected under the First Amendment." *McBreairty v. RSU22* at *14. The RSU22 meetings are a limited public forum. *Id*. at *20. As previously found:

> "[T]he School Board shoulders much of the burden when it comes to the merits of the Plaintiff's First Amendment claim. See *United States v. Playboy Ent. Grp., Inc.*, 529 U.S. 803, 816 (2000) ("When the Government restricts speech, the Government bears the burden of proving the constitutionality of its actions."); *Tinker v. Des Moines Indep. Cmty. Sch. Dist.*, 393 U.S. 503, 509 (1969) (In order for the State . . . to justify prohibition of a particular expression of opinion, it must be able to show that its action was caused by something more than a mere desire to avoid the discomfort and unpleasantness that always accompany an unpopular viewpoint.)

*McBreairty v. RSU22* at \*13. Defendants cannot engage in viewpoint discrimination at all, nor can they engage in content based discrimination unless doing so is reasonable under the forum analysis.

Defendants violated McBreairty's constitutional rights, specifically engaging in viewpoint discrimination by preventing Mr. McBreairty from engaging in public comment before a public body and by using Rule 2, which is unconstitutional facially and as-applied. The burden is now upon the government to provide a constitutionally permissible reason for doing so. It cannot.

### 4.2.1 Free Speech Claim

Plaintiff is likely to prevail under his First Amendment claim. As in *McBreairty v. RSU22*:

Maine law dictates: 'A school board shall provide the opportunity for the public to comment on school and education matters at a school board meeting. Nothing in this subsection restricts the school board from establishing reasonable standards for the public comment period, including time limits and conduct standards." 20-A M.R.S. § 1001(20) (emphasis added). And in the Policy, the School Board "recognizes its responsibility to conduct the business of the district," states that the "primary purpose of the meeting is for the Board to conduct its business as charged by the law," allows the public limited time "to voice opinions or problems," and gives the Chair discretion to limit "irrelevant" speech. *Id. at* \*19.

Rule 2 is facially invalid, and the way it has been applied is at odds with the contours of the limited public forum, created by Maine law. As this Court already found, in a prior challenge to RSU22's actions, "it is hard to shake the sense that the School Board is restricting the speech because the Board disagrees with both Mr. McBreairty's opinions and the unpleasantness that accompanies them." *Id*. at \*26. This is still the case. At two meetings, as soon as Mr. McBreairty criticized (or even mentioned) an employee, Miller interrupted Mr. McBreairty and prevented him from completing his comments. (Compl. at ¶¶ 12-20) No reasonable mind could believe that McBreairty's calm criticism was "unpleasant" at the two meetings.

As discussed above, on February 15, 2023, Mr. McBreairty spoke before the School Board. He criticized Stoyanova. (Compl. at ¶ 14; Compl. at **Exhibit C**). Defendant Miller ordered Mr.

McBreairty to stop his public comment and to sit down. (Compl. at ¶ 15) The School Board cut the video feed, and brought in the Hampden Police to remove Mr. McBreairty from the premises, under threat of arrest, for engaging in constitutionally-protected speech. (Compl. at ¶ 15) Defendant Miller told the police officers that Mr. McBreairty violated Rule 2. The police report states:

> Heath read one that says in substance no confidential personal information wont be shared about persons employed at the school. **Complaints and allegations will be aloud [sic] at board meetings about concerning any person employed by the school or students. Heath said Shawn played a recording of himself which is perfectly fine and he let him do it until he mentioned a teachers name and an allegation towards that teacher, Heath then told him to sit down and Shawn then mentioned another staff members name in a negative manner. He then told Shawn he could not continue.**

Compl. at **Exhibit E** at 3-4 (emphasis added)

Given that Defendants had already been subject to an injunction by this very Court, McBreairty hoped that this was just a temporary loss of reason. McBreairty went to the next meeting, on March 15, 2023. At that meeting, Mr. McBreairty again engaged in public comment. (Compl. at ¶¶ 17-20) Mr. McBreairty mentioned Jennifer Norwood, a Hampden Academy High School teacher and criticized her practices. (*Id.* at ¶ 19) Immediately after Mr. McBreairty mentioned Norwood's name, Defendant Miller warned Mr. McBreairty stating, "We are not going to speak about school employees. This is your one warning." (*Id.*) McBreairty had not even yet criticized Norwood. As Mr. McBreairty continued speaking, he began criticizing another teacher, Mrs. Campbell. Immediately after Mr. McBreairty mentioned Campbell's name, Defendant Miller again ordered Mr. McBreairty to stop speaking and sit down for violating Rule 2. (*Id.* at ¶ 20). Again, the School Board cut the video feed, and called the Hampden Police to remove Mr. McBreairty from the meeting. (*Id.*)

Yet, Defendants allow positive comments about teachers. On October 19, 2022, Dolly Sullivan, a Program Director for Educate Maine, engaged in public comment before the School Board. (*Id.* at ¶ 10) Ms. Sullivan used her time for public comment to provide an assessment of Kelsey Stoyanova's service as the 2022 Maine Teacher of the Year, including referring to her as "thoughtful," intentional," "brave," and "brilliant." (*Id.*) After Ms. Sullivan completed her comments, a round of applause broke out, and Defendant Miller said, "Thank you Ms. Sullivan for all you and your organization have done for us." (*Id.* at ¶ 11)

Permitting praise, but not criticism, is unconstitutional viewpoint discrimination. "[I]n determining whether the State is acting to preserve the limits of the forum it has created so that the exclusion of a class of speech is legitimate, [the Supreme Court has] observed a distinction between, on the one hand, content discrimination, which may be permissible *if it preserves the purposes of that limited forum*, and, on the other hand, viewpoint discrimination, *which is presumed impermissible when directed against speech otherwise within the forum's limitations*." *Rosenberger v. Rector & Visitors of Univ. of Va.*, 515 U.S. 819, 829-30 (1995) (emphasis added). "When the government targets not subject matter, but particular views taken by speakers on a subject, the violation of the First Amendment is . . . blatant." *Id.* at 829. "The government must abstain from regulating speech when the specific motivating ideology or the opinion or perspective of the speaker is the rationale for the restriction." *Id.*

Defendants' actions are viewpoint discrimination. "[D]isfavoring ideas that offend discriminates based on viewpoint, in violation of the First Amendment." *Iancu v. Brunetti*, 139 S. Ct. 2294, 2301 (2019) (internal quotation marks omitted). "A viewpoint need not be political; any form of support or opposition to an idea could be considered a viewpoint." *Marshall v. Amuso*, 571 F. Supp. 3d 412, 421 (E.D. Pa. 2021) (quoting *Mata v. Tam*, 137 S. Ct. 1744, 1766 (2017)

(Kennedy, J., concurring in part) ("The First Amendment's viewpoint neutrality principle protects more than the right to identify with a particular side. It protects the right to create and present arguments for particular positions in particular ways, as the speaker chooses.")). Defendants prohibited McBreairty from criticizing RSU22 employees. But, Ms. Sullivan was, not only permitted to talk about employees by name, but she was applauded for issuing praise. McBreairty was stopped by Defendants from speaking for even *mentioning the name of an employee*, even prior to uttering any criticism. This is unconstitutional viewpoint discrimination.

### 4.2.2 Rule 2 is Unconstitutional, Both Facially and As-Applied

Defendants' unconstitutional actions were founded on the unconstitutional Rule 2, and Plaintiff is faced with that rule at all future meetings. "Public speech at school board meetings is in fact protected by the First Amendment." *Marshall*, 571 F. Supp. 3d at 422 (citation omitted). "[P]ublic bodies may confine their meetings to specified subject matter . . . ." *Madison Joint Sch. Dist. v. Wis. Emp't Relations Comm'n*, 429 U.S. 167, 175 n.8 (1976). But, such confinement must be reasonable, viewpoint neutral, and clear. Rule 2 is not.

In *Marshall*, the court found unconstitutional viewpoint discrimination in an as-applied challenge to a school board's policy that permitted "positive and complementary personally-directed comments supportive of Board and school employees" but prohibited "negative, challenging, or critical personally-directed comments." 571 F. Supp. 3d at 422. Here, as in *Marshall,* Rule 2 expressly prohibits "complaints and allegations . . . concerning any person employed by the school system[.]" Compl. at **Exhibit A**. On its face, Rule 2 bans a viewpoint. Rule 2 permits praising employees while prohibiting complaints. Rule 2 is facially unconstitutional.

Rule 2 is an unconstitutional prior restraint. "The term 'prior restraint' is used to describe administrative and judicial orders forbidding certain communications when issued in advance of

- 10 -
Emergency Motion for Temporary Restraining Order and Preliminary Injunction

the time that such communications are to occur." *Alexander v. United States*, 509 U.S. 544, 550 (1993) (internal quotation marks and citation omitted; emphasis in original). Importantly:

> The danger of censorship and of abridgment of our precious First Amendment freedoms is too great where officials have unbridled discretion over a forum's use. Our distaste for censorship -- reflecting the natural distaste of a free people -- is deep-written in our law.

*Southeastern Promotions, Ltd. v. Conrad*, 420 U.S. 546, 553 (1975). Systems that give public officials the power to deny use of a forum in advance of actual expression are unconstitutional prior restraints. *Id. See generally Near v. Minnesota*, 283 U.S. 697, 703, 706, 713-23 (1931). Here, Rule 2 unconstitutionally restrains Plaintiff's speech before he even attempts to make it.

Additionally, Rule 2 is unconstitutional as-applied. The moment Mr. McBreairty uttered an employee's name, Miller immediately interrupted him. In *McBreairty v. RSU22*, the Court lacked sufficient evidence to observe how the School Board applied Rule 2 concerning "complaints or allegations." *Id.* *23 n.14. Now, there is clear evidence to show that Defendants apply Rule 2 in a viewpoint discriminatory manner. After Ms. Sullivan finished praising Ms. Stoyanova, a round of applause breaks out, and Defendant Miller is heard saying "Thank you Ms. Sullivan for all you and your organization have done for us." (Compl. at ¶ 11) But, when Mr. McBreairty even mentions the name of an employee, before criticizing them, Defendant Miller states "we are not going to mention names." (Compl. at ¶ 14) As Mr. McBreairty attempted to criticize Ms. Stoyanova, Defendant Miller ordered Mr. McBreairty to stop his public comment altogether and used law enforcement to remove him. (Compl. at ¶¶ 15-17) A month later, Defendant Miller again prevented Mr. McBreairty from naming and criticizing teachers and again, had him removed by police. (Compl. at ¶¶ 18-21).

Even if Rule 2 were somehow facially constitutional and merely a content-based restriction (which would itself be suspect), Defendants apply Rule 2 in an inconsistent and vague manner.

Defendants use it to restrict McBreairty (and McBreairty only) from even mentioning the name of an employee, even before he criticizes them. *Compare Huminski v. Corsones*, 396 F.3d 53, 92-93 (2d Cir. 2004) (finding First Amendment violation where plaintiff was singled-out for adverse suppression of expression, even in a nonpublic forum). To the extent that Defendants may claim that Rule 2 can be interpreted a viewpoint-neutral way, it would still be unconstitutional.

While restricting the mere mention of an employee's name *could be* viewpoint-neutral, it would still be an unconstitutional content-based restriction.[2] In a limited public forum, the government may impose some content-based restrictions, but may not do so without limitation. It may only do so "if it preserves the purposes of that limited forum" *Rosenberger,* 515 U.S. at 829-30. It can hardly be said that a government body can be "preserving the purposes of that limited public forum" when that forum exists to discuss RSU22 business, but RSU22 uses the rule to prohibit even *mentioning* the names of RSU22 employees. To whatever extent RSU22 might claim that Rule 2 could be interpreted or amended to ban mentioning RSU22 employees, in praise or in criticism, this would be unreasonable and counter to the purposes for which the forum exists. Discussions of government actions and policies necessarily implicates the public employees and officials behind them.

As this Court found in McBreairty's prior case, "the primary purpose of the meeting is for the Board to conduct its business as charged by the law, [and it] allows the public limited time 'to voice opinions or problems.'" *McBreairty v. RSU22* at *19. Maine Law requires RSU22 to provide the opportunity to comment on "school and education matters," though "irrelevant" speech can be excluded. There is nothing irrelevant about *talking about* the body's employees, and the stated

---

[2] Further, since it only seems to apply to McBreairty, and it seems to only be used to stop criticism, the mask of viewpoint neutrality would fall off the moment it is subject to scrutiny.

purpose of the public forum is to give the public the opportunity to discuss "opinions or problems." *Id*. at 19. There is neither authority nor justification to prohibit McBreairty from talking about employees of the government body he is before, and certainly not to limit him from criticizing them. This is the core purpose of the forum created by Maine law and by RSU22 policies. "The law and the Policy show that the School Board opened up a limited public forum for the purpose of inviting public comment on school-related matters." *Id.* at *20.

Rule 2 is facially unconstitutional, and to the extent it can be found not to be, Defendants applied Rule 2 against Mr. McBreairty in an unconstitutional manner.

### 4.3 Plaintiff Has Been Irreparably Harmed; the Harm Must be Enjoined

The "loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976). When a plaintiff seeks injunctive relief for "an alleged violation of First Amendment rights, a plaintiff's irreparable harm is inseparably linked to the likelihood of success on the merits of plaintiff's First Amendment claim." *WV Assn'n of Club Owners and Fraternal Srvs., Inc. v. Musgrave*, 553 F.3d 292, 298 (4th Cir. 2009). Thus, if the plaintiff demonstrates a likelihood of success on the merits of its First Amendment claim, they necessarily also establish irreparable harm. *Fortuño, 699 F.3d at 15*.

Twice, the Defendants deprived Mr. McBreairty of his First Amendment rights by shutting him down prior to the expiration of his allotted 3-minutes of public comment and calling the police to remove him from the school grounds. (Compl. at ¶¶ 17, 21) Defendants' decision to prevent Mr. McBreairty from completing his public comment two months in a row is a pattern that will continue without this Court's intervention. While Defendants have not banned McBreairty from attending meetings, as in the prior case, they have enacted a *de facto* ban and a prior restraint on his speech. Their intent is to only allow praise. When they are criticized, Defendants use the police force to remove McBreairty.

### 4.4 The Balance of Equities Tips in Plaintiff's Favor

When the government restricts protected speech, the balance of hardships weighs heavily in a plaintiff's favor. *See Firecross Ministries v. Municipality of Ponce*, 204 F. Supp. 2d 244, 251 (D.P.R. 2002) ( "insofar as hardship goes, the balance weighs heavily against Defendants, since they have effectively silenced Plaintiffs' constitutionally protected speech.") Here, the balance of equities tips in McBreairty's favor. Failing to grant the requested injunction will continue to deprive McBreairty of his constitutional rights pursuant to the First Amendment of the Constitution and Article I Sections 4 and 15 of the Maine Constitution. Defendants will suffer no harm if McBreairty is granted the requested injunctive relief. Rather, an injunction will merely restore the rights guaranteed by the U.S. and Maine Constitutions. A temporary restraining order, to be converted into a preliminary injunction, must issue.

### 4.5 Injunctive Relief is in the Public Interest

"Protecting rights to free speech is *ipso facto* in the interest of the general public." *McBreairty v. RSU22* at *31-32. Moreover, the unconstitutional regulation being enforced by Defendants in this case has the potential to harm nonparties to the case because it will limit or infringe upon their rights as well. *See Wolfe Fin. Inc. v. Rodgeres*, 2018 U.S. Dist. LEXIS 64335, at *49 (M.D. N.C. April 17, 2018) (*citing McCarthy v. Fuller*, 810 F.3d 456, 461 (7th Cir. 2015). Other members of the public are chilled from speaking their minds as well. They see McBreairty shut down and hustled out of the meeting by armed police for merely mentioning government employees, much less criticizing them. Which citizen of ordinary firmness would risk speaking critically at a government meeting if such criticism means ejection by armed guards?

Further, even members of the public who are too shy to speak have a right to hear McBreairty's criticisms. Even the government is harmed if it cannot hear critiques of how its

employees are performing. How can a government operate effectively if it never hears criticism? The government will create the illusion that it is operating with a unanimous mandate, and perhaps even fool itself into continuing negative policies, because nobody would dare to criticize them. Enjoining that self-inflicted harm is in the public interest. It is a poor example of representative democracy if the government is shielded from even knowing that citizens may have criticisms of employees. There has been no disruption, except when the Defendants have disrupted their own meetings instead of simply letting McBreairty express his disapproval. The public interest favors the issuance of the injunction, just as it did in *McBreairty v. RSU22.*

### 4.6    At Most, a Minimal Bond Should Be Required

A bond should be required if the enjoined party will suffer harm from the issuance of the injunction. *See Scotts Co. v. United Indus. Corp.*, 315 F.3d 264, 285 (4th Cir. 2002). In *McBreairty v. Sch. Bd. of RSU22*, no bond was required and no harm came to the Defendants. An injunction will repair the *status quo* and allow the First Amendment to flourish. McBreairty requests that the injunction issue with no bond required.

### 5.0    CONCLUSION

"Expression of . . . school-related concerns at the podium during the public comment period of School Board meetings constitutes speech that is protected under the First Amendment." *McBreairty v. RSU22* at *5. After the issuance of an injunction in his prior case. McBreairty returned to engage in his civic-minded activism. He spoke without even being accused of being disruptive. He was peaceful and well-mannered. Defendants have not even been willing to allow McBreairty "to voice opinions or problems," (the purpose of the very forum) unless those opinions were of the government approved viewpoint – to praise, but not criticize. To the extent the policy was used to even limit the mere mention of employees, this is again at odds with Maine law as

recognized in *McBreairty v. RSU22* at *20. The Court should enter a preliminary injunction against the Defendants from enforcing Public Participation Policy Rule 2 as it is unconstitutional facially, with respect to its limitations on viewpoint, and as-applied in both that manner, and to the extent it has been used as a justification for banning even mentioning RSU22 employees.

## REQUEST FOR ORAL ARGUMENT

Plaintiff believes that oral argument may assist the court. This matter involved significant Constitutional issues that oral argument will help to address. However, if oral argument cannot be scheduled with enough time to rule prior to the April 26, 2023 RSU22 meeting, then resolution without oral argument will be necessary.

Dated: March 24, 2023

Respectfully Submitted,

*/s/ Brett D. Baber*
Brett D. Baber, Bar No. 3143
Lanham Blackwell & Baber, PA
133 Broadway
Bangor, ME 04401
Tel: (207) 942-2898
Email: bbaber@lanhamblackwell.com

Marc J. Randazza (*pro hac vice forthcoming*)
 *Lead Counsel*
Robert J. Morris II (*pro hac vice forthcoming*)
RANDAZZA LEGAL GROUP, PLLC
30 Western Avenue
Gloucester, MA 01930
Tel: (888) 887-1776
Email: ecf@randazza.com

*Attorneys for Plaintiff,*
*Shawn McBreairty*