# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MAINE

| | |
|---|---|
| SHAWN MCBREAIRTY | )<br>)<br>) |
| Plaintiff | )<br>)<br>) |
| v. | )     **Case No. 1:23-cv-00143-NT** |
| HEATH MILLER AND SCHOOL BOARD OF RSU 22 | )<br>)<br>)<br>)<br>) |
| Defendants | ) |

## MEMORANDUM OF LAW IN OPPOSITION TO EMERGENCY MOTION FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION OF DEFENDANTS SCHOOL BOARD OF REGIONAL SCHOOL UNIT 22 AND HEATH MILLER

## INTRODUCTION

At the March 15, 2023 meeting of the School Board of Regional School Unit 22 (the "School Board" or "Board"), Plaintiff Shawn McBreairty told the Board "I can speak about anyone employed by RSU 22, and I can say anything I want about them, and I will." Because the School Board Chair, Heath Miller, enforced the School Board's public participation policy and refused to allow Plaintiff to make allegations against individual employees at its public meeting, Plaintiff now comes to this Court asking that it order the School Board to do just that – allow him to say whatever he wants about school employees at a publicly televised meeting of the Board. Contrary to Plaintiff's claims, Plaintiff's new allegations do not represent "repeat circumstances" of the issues preliminarily decided by this Court in his prior lawsuit against RSU 22. *See McBreairty v. School Board of RSU 22*, No. 1:22-cv-00206, 2022 WL 2835458, at *9 n.14 (D.

1

Me. July 20, 2022) (noting that the Court was *not* deciding this very issue). And more importantly, there is nothing in First Amendment jurisprudence that guaranties individuals the right to harass, disparage and defame school employees at a public meeting of a school board. School board meetings are not meetings of the public; they are meetings that are open to the public and include a public comment period for comment on specifically school or education matters. *See, e.g., id*. at *7 (holding that school board meetings are limited public forums); *see also* 20-A M.R.S. § 1001(20) (expressly allowing school boards to establish "reasonable standards for the public comment period" at school board meetings). The School Board policy challenged by Plaintiff here establishes such reasonable standards and Plaintiff's claims under 42 U.S.C. § 1983 and 5 M.R.S. § 4682 will fail because he has not alleged the denial of his First Amendment rights. Plaintiff's motion for a temporary restraining order should be denied.

## FACTUAL BACKGROUND

### A. RSU 22

Regional School Unit 22 ("RSU 22") educates approximately 2,270 students in the communities of Hampden, Newburgh, Winterport, and Frankfurt, Maine. Miller Decl. ¶ 2. Defendant Heath Miller has served as a member of the School Board since he was elected to the Board in 2013, and he was voted to his current position of Board Chair in April 2020. Miller Decl. ¶ 1.

RSU 22 permits public participation at its regularly scheduled Board meetings pursuant to Maine law, which provides:

> School board meeting public comment period. A school Board shall provide the opportunity for the public to comment on school and education matters at a school board meeting. Nothing in this subchapter restricts the school board from establishing reasonable standards for the public comment period, including time limits and conduct standards. For the purposes of this subsection, "school board meeting" means a full meeting of the school board and does not include meetings of subcommittees.

20-A M.R.S. § 1001(20).

## B. The Public Participation Policy

RSU 22 Board Policy BEDH "Public Participation in Board Meetings" ("Policy") provides eight rules of conduct that are "designed to promote public participation at our meetings and ensure that the public commentary takes place in an orderly fashion, complies with applicable law, and respects the privacy rights of our employees."  Miller Decl. ¶ 7; Miller Decl. Ex. A. Plaintiff challenges only Rule 2 of the Policy:

> Confidential personnel information will not be shared in a public session.  No complaints or allegations will be allowed at Board meetings concerning any person employed by the school system or against particular students.  Personnel matters or complaints concerning student or staff issues will not be considered in a public meeting but will be referred through established policies and procedures.

Miller Decl. Ex. A; *see* Pl. Br. at 1; Complaint (ECF No. 1).

## C. February 15, 2023 School Board Meeting

Plaintiff provided remarks at the February 15, 2023 Board meeting by playing pre-recorded audio into the microphone that is provided to speakers during the public comment period. *See* Video Recording of Meeting February 15, 2022, Complaint Exhibit C (ECF No. 1-3). Plaintiff's pre-recorded remarks started by stating, "We won a federal First Amendment lawsuit against you, Mr. Chair, galvanizing my right to say whatever I want about whomever I want in whatever medium I want." (ECF No. 1-3 at :14.) Plaintiff went on to communicate a wide range of views about and on behalf of anonymous, unnamed students and teachers before turning to the topic of "sexual grooming," (ECF No. 1-3 at 1:55). Plaintiff then stated, "In an article recently I believe the Superintendent was quoted as saying that RSU 22 is proud of all [named employee] accomplished in her 2022 groomer, I mean, teacher of the year." (ECF No. 1-3 at 2:12-2:21). Mr. Miller stated to Plaintiff after the teacher was named, "Sir, we're not going to mention names. Your recording mentioned names. If it does that again, I'll ask you to sit down." (ECF No. 1-3 at

3

2:20-2:24). Plaintiff's recording then went on to state, "the fact is that [named employee] should be locked up and not allowed within 500 feet of the school because she participated with [second named employee] in giving . . . ." (ECF No. 1-3 at 2:22-2:27). Mr. Miller then stated, "I'm going to ask you to sit down." (ECF No. 1-3 at 2:27). Plaintiff's speech was never interrupted up to this point because his audio recording continued to play during this entire exchange.

### D. March 15, 2023 School Board Meeting

Plaintiff also provided remarks during the public comment period of the March 15 Board meeting. *See* Video Recording of Meeting March 15, 2023, Complaint Exhibit E (ECF No. 1-5). He began by stating, "As a reminder, this 28-page federal law suit, which you lost, the only thing you can control is place, this library filled with kitty porn; time, three minutes, which you did not give me last time; and manner, as it has to be school-related. That ruling was from a federal judge." (ECF No. 1-5 at :24-:41.) Plaintiff then stated, "As long as I do not incite violence or use real obscenities, you can't restrict my free speech. I can speak about anyone employed by RSU 22, and I can say anything I want about them, and I will." (ECF No. 1-5 at :54-1:04.)

In the third minute of his remarks, Plaintiff stated, "Recently, Hampden Academy students alerted me to a high school Spanish teacher, [named employee], who has an LGBTQ cult war flag on the classroom wall." (ECF No. 1-5 at 2:00-2:09). Mr. Miller interrupted and warned, "Mr. McBreairty, we are not going to speak about employees, this is your one warning." (ECF No. 1-5 at 2:09-2:11). As he was being warned, Plaintiff called that employee an indiscernible or otherwise unknowable name. (ECF No. 1-5 at 2:11-2:12.) Plaintiff went on to remark that "Parents may not know there is a gay-sexuality trans-alliance, a nationally sponsored group of groomers in this very high school. It is a tax-payer paid after-school cult pushing sex and enabling mental illness in our youth. Soccer, band, chorus, or talk sex with [named former employee] after school?" (ECF No. 1-5 at 2:15-2:32). Mr. Miller then stated "I gave you your one warning, I am

4

going to ask you to step down." (ECF No. 1-5 at 2:33-2:36.) Plaintiff nonetheless continued to speak for at least fifteen seconds. The Board meeting was then adjourned and Plaintiff refused to leave. Ultimately, two police officers arrived and Plaintiff falsely told them that this court had ruled that the only restrictions the Board could place on his speech are restrictions on time, place, and manner. Contrary to Plaintiff's contention, there was no threat of arrest made. Miller Decl. Ex. G.

## ARGUMENT

I. **THE STANDARD FOR INJUNCTIVE RELIEF**

This Court considers four factors when considering a request for a temporary restraining order and a preliminary injunction:

> (1) the likelihood of success on the merits; (2) the potential for irreparable harm [to the movant] if the injunction is denied; (3) the balance of relevant impositions, i.e., the hardship to the nonmovant if enjoined as contrasted with the hardship to the movant if no injunction issues; and (4) the effect (if any) of the court's ruling on the public interest.

*Calvary Chapel of Bangor v. Mills*, 459 F.Supp.3d 273, 282 (D. Me. 2020). Although the School Board bears some of the burden as to Plaintiff's First Amendment claim, Plaintiff, as the movant, nonetheless bears the burden of "establishing that a temporary restraining order should issue." *McBreairty*, 2022 WL 2835458, at *5. Indeed, "[i]njunctive relief is an extraordinary and drastic remedy that is never awarded as of right." *Calvary Chapel*, 459 F.Supp.3d at 282 (alterations and quotations omitted); *see also Munaf v. Geren*, 553 U.S. 674, 689 (2008) ("A preliminary injunction is an extraordinary and drastic remedy." (internal quotations omitted)). "[I]t is well established general law with respect to equitable injunctive relief that the Court is to bear constantly in mind that an injunction is an equitable remedy which should not be lightly indulged in, but used sparingly and only in a clear and plain case." *Saco Defense Sys. Div. Maremont Corp. v. Weinberger*, 606 F.Supp. 446, 450 (D. Me. 1985).

If Plaintiff "cannot demonstrate that he is likely to succeed on his quest, the remaining factors become matters of idle curiosity." *New Comm. Wireless Serv., Inc. v. SprintCom, Inc.*, 287 F.3d 1, 9 (1st Cir. 2002). Here, Plaintiff cannot show a substantial likelihood of success on the merits of his First Amendment contentions and he is accordingly not entitled to relief. Further, even if Plaintiff did have such a substantial likelihood—which he does not—he is still not entitled to the "drastic" relief sought because none of the remaining factors tip in Plaintiff's favor. *See Benisek v. Lamone*, 138 S. Ct. 1942, 1944-45 (2018) ("As a matter of equitable discretion, a preliminary injunction does not follow as a matter of course from a plaintiff's showing of a likelihood of success on the merits."). Plaintiff's motion for a preliminary injunction or temporary restraining order therefore must be denied.

## II. **PLAINTIFF CANNOT SUCCEED ON THE MERITS OF HIS FEDERAL OR STATE CONSTITUTIONAL CLAIMS**

In Counts 1 and 3 of the Complaint are "as applied claims," alleging that the Defendants deprived Plaintiff of his right to free speech and to petition based on the School Board's decisions that he should not be permitted to provide further comment during the time remaining in his three-minute comment period.[1] Counts 2 and 4 of the Complaint allege facial challenges to the School Board's Public Participation Policy, claiming that it is unconstitutional viewpoint discrimination and vague. Plaintiff has not shown a substantial likelihood of success on the merits of any of these claims; in fact, the videos put forth by Plaintiff show that the School Board permitted Plaintiff to speak about a wide range of issues and criticisms pursuant to its public participation policy.

---

[1] To the extent Plaintiff also alleges in Count 1 that he was "retaliated against" for exercising his First Amendment right, he proffers no factual or legal basis for any First Amendment retaliation claim and the Defendants can discern none. Indeed, Plaintiff simultaneously asserts in his Complaint that a non-retaliatory ground—the Public Participation Policy—was the reason for the School Board interrupting his comments. *See Nieves v. Bartlett*, 139 S. Ct. 1715, 1722 (2019) (explaining that "non-retaliatory grounds" must "in fact" be insufficient to provoke the adverse consequences in order for a Plaintiff to seek relief based on a First Amendment retaliation claim); *see also D.B. ex rel. Elizabeth B v. Esposito*, 675 F.3d 26, 43 (1st Cir. 2012) (explaining that a defendant is not liable for retaliation when "it would have reached the same decision even in the absence of the protected conduct" (alterations omitted)).

## A. Plaintiff's Facial Challenges Will Fail on the Merits

   i.   The Public Participation Policy in Place at the February and March Board Meetings is Viewpoint Neutral and Reasonable

Plaintiff's statement at the outset of his March 15 remarks that the only "thing" that can be controlled is "time, place, and manner" is inaccurate as a matter of law. "[P]rotected speech is not equally permissible in all places and at all times. Nothing in the Constitution requires the Government freely to grant access to all who wish to exercise their right to free speech on every type of Government property without regard to the nature of the property or to the disruption that might be caused by the speaker's activities." *Cornelius v. NAACP Legal Defense and Educ. Fund, Inc.*, 473 U.S. 788, 799-800 (1985). The nature of the business conducted by school boards make school board meetings one such place and time where not all speech is equally permissible, and indeed School Board meetings are limited public forums. *See, e.g.*, McBreairty, 2022 WL 2835458, at *7. When the State establishes a limited public forum, "the State is not required to and does not allow persons to engage in every type of speech." *Good News Club v. Milford Cent. Sch.*, 533 U.S. 98, 106 (2001); *Rosenberger v. Rector & Visitors of the Univ. of Va.*, 515 U.S. 819, 830 (1995) (explaining that, in a limited public forum, content discrimination is permissible if it "preserves the purposes of that limited forum"); *see also Shurtleff v. City of Boston*, 337 F.Supp.3d 66, 75 n.3 (D. Mass. 2018) (citing *Rosenberger* to explain that a prior restraint on content discrimination is permissible if it preserves the purposes of the limited forum).

Because the public comment period at School Board meetings provides only a limited public forum confined to the discussion of school and education matters, the School Board may restrict expression so long as such restrictions are viewpoint neutral and are "reasonable in light of the purpose served by the forum." *Good News Club*, 533 U.S at 106-07. "The essence of a viewpoint discrimination claim is that the government has preferred the message of one speaker

7

over another." *Mar v. Frey*, 458 F. Supp. 3d 16, 31 (D. Me. 2020) (quoting *McGuire v. Reilly*, 386 F.3d 45, 62 (1st Cir. 2004)). Thus, in order to avoid unconstitutional viewpoint discrimination, "[t]he government must abstain from regulating speech when the specific motivating ideology or the opinion or perspective of the speaker is the rationale for the restriction." *Rosenberger*, 515 U.S. at 829. Viewpoint discrimination does not occur, however, when "the government incidentally prevents certain viewpoints from being heard in the course of suppressing certain general topics of speech." *Ridley v. Mass. Bay Transp. Auth.*, 390 F.3d 65, 81 (1st Cir. 2004).

In his motion, Plaintiff challenges only a portion of the Policy, which he refers to as Rule 2, which prohibits complaints or allegations only if made against specifically named employees of RSU 22. This prohibition permissibly restricts speech given that the School Board (i) is statutorily obligated to protect school employees from harassment and keep personnel information confidential, *see* 20-A M.R.S. §§ 6101, 1001(22); (ii) could be exposed to liability as an employer or otherwise for allowing defamatory comments at its meeting, which is open to the public and live-streamed on the internet, *see, e.g.*, *Pan Am Sys., Inc. v. Atl. Ne. Rails and Ports, Inc.*, 804 F.3d 59, 64 (1st Cir. 2015) (explaining that, under Maine law, "one who repeats a defamatory statement may be as liable as the original defamer"); *see also Loe v. Town of Thomaston*, 600 A.2d 1090, 1092 (Me. 1991) (discussing Maine common law regarding an action for disclosure of private facts);[2] and (iii) has a responsibility "to conduct the business of the district in an orderly and efficient manner, *see* Miller Decl. Ex. A; *see also* 20-A M.R.S. § 1001(20) (authorizing school boards to establish "conduct standards" that govern the public comment period at a school board meeting).

---

[2] The separate provision in the Policy prohibiting "defamatory comments"—which Plaintiff does not here challenge—is insufficient by itself to protect the School Board from such liability given that the Board has no way of knowing in real time whether a comment is defamatory.

This proscription on an entire class of speech—personnel complaints—in a limited public forum for a publically televised school board meeting is unequivocally permissible under the First Amendment. *See Prestopnik v. Whelan*, 83 F. App'x 363, 365 (2d Cir. 2003) (upholding a school board policy that excluded speech about personnel decisions because the "First Amendment generally permits the government to exclude a topic from discussion in such a limited public forum"); *Pollack v. Wilson*, No. 22-8017, 2022 WL 17958787, at *2, *8 (10th Cir. 2022) (affirming the denial of a request for a preliminary injunction against a school board policy that restricted speech on all "personnel matters").

Contrary to Plaintiff's contention, the challenged portion of the Policy is not discriminatory on the basis of viewpoint. *See McBreairty*, 2022 WL 2835458, at *8 ("Viewpoint discrimination is treated differently from content discrimination in a limited public forum"). It restricts allegations of wrongdoing, personal attacks, and criticisms of, on, or against specifically named educators without regard to the content of that allegation or the speaker's perspective which might animate such an allegation. For example, under the current Policy, a speaker offering remarks during the public comment period at Board meetings cannot criticize the fact that a specifically named teacher is teaching LGBTQ topics in the classroom and a speaker likewise cannot criticize that a specifically named teacher is *not* teaching LGBTQ topics. In this regard, the Policy does not restrict one side of any particular debate; instead, it restricts any kind of complaint or allegation levied against a specifically named employee. The policy is therefore viewpoint neutral because neither the identity, ideology, nor motivation of the speaker is considered as part of the Policy's restriction on speech.[3] These complaints could, of course, be communicated to the Board pursuant to board Policy KE.

---

[3] The videos before the Court illustrate this. For example, the clip of the Board's September 21, 2022 meeting depicts both Plaintiff and another speaker, Katherine Collins, speaking without interruption about their views concerning the

The strong weight of authority supports this position of the School Board. *See Davison v. Rose*, 19 F.4th 626, 635-36 (4th Cir. 2021) (affirming summary judgment that a school board's public participation policy, which did not permit comments "that are harassing or amount to a personal attack against any identifiable individual," was viewpoint neutral), *cert. denied*, 143 S. Ct. 106 (2022); *Fairchild v. Liberty Ind. Sch. Dist.*, 597 F.3d 747, 753, 755-60 (5th Cir. 2010) (deeming a school board policy viewpoint neutral when the policy did not permit discussion of individualized complaints because, among other reasons, it "dovetailed" with the school board's policy of not permitting personnel matters); *Moms for Liberty – Brevard Cnty. v. Brevard Pub. Sch.*, 582 F.Supp.3d 1214, 1217-19 (M.D. Fl. 2022) (denying request for a temporary restraining order against a school board's policy, which restricted "personally directed" and "abusive" speech, because it was viewpoint neutral), *aff'd* No.22-10297, 2022 WL 17091924 (11th Cir. 2022) (finding the district court's denial "well-reasoned").

By contrast, Plaintiff cites only one case, *Marshall v. Amuso*, 571 F.Supp.3d 412 (E.D. Pa. 2021), in support of his assertion of viewpoint discrimination.[4] Yet *Marshall*, which did not decide a facial challenge based on viewpoint discrimination, is entirely different from the circumstances and record now before this Court on Plaintiff's motion for a preliminary injunction and temporary restraining order. The policy at issue in *Marshall* gave the board chair the right to interrupt or terminate comments deemed "too lengthy, personal directed, abusive, obscene, or irrelevant." *Id.* at 418. That policy was deemed not to be viewpoint neutral *as applied* given that the presiding officers were only interrupting select comments, deeming them irrelevant, and the evidence

---

effects of allegedly oversexualized material in schools. *See* Miller Decl. Ex. F. Similarly, at both the February and March 2023 meetings, Plaintiff was allowed to express his *views* without interruption. It was only when he said the names of individual employees that he was asked to stop.

[4] To the extent it is considered support for Plaintiff's argument, the Connecticut Supreme Court case cited by Plaintiff in the introduction to his argument addresses a defamation claim brought by a teacher against a school board, among others, and it is therefore completely inapposite to Plaintiff's request for a preliminary injunction.

showed that comments were being interrupted on the basis of the *idea* that those comments expressed and not simply because they were personally directed. *See id*. at 418-19, 422-23. Here, the Policy only restricts complaints and allegations as to specifically named employees; it does not restrict such complaints based on any ideas that motivate such complaints, nor has Plaintiff proffered any evidence that his ideas were the basis for his speech being interrupted at either the February or March board meeting.

Furthermore, the RSU 22 School Board provides speakers with alternative channels for such complaints, with the language of the Policy specifically referring such individualized allegations and criticisms through the Board's established policies and procedures. *See Christian Legal Soc. Chapter v. Martinez*, 561 U.S. 661, 690 (2010) (explaining that the availability of other avenues to express restricted speech "lessen the burden" of viewpoint neutral barriers and make a limited forum's policy "more creditworthy"); *Fairchild*, 597 F.3d at 760 (explaining that the School Board left "ample opportunity to be heard" when it channeled any issues that arose in public comment into its grievance processes); *see also* Miller Decl. Exhibits A, E.

The challenged section of the Policy thus satisfies a limited forum analysis because, in addition to being viewpoint neutral, it is also reasonable in light of the purpose and interests served by School Board meetings. The purpose of the public comment period at school board meetings is to provide opportunity for comment on "school and education matters." 20-A M.R.S. § 1001(20). Such matters are broad and wide-ranging in light of the myriad issues that touch on education, and RSU 22 does not shy away from the criticisms that can and often do accompany the breadth of educational issues—indeed, the Policy broadly permits public comments on the voicing of "opinions or problems." At the same time, a school board's "most basic obligation is to maintain order in the schools and to create a stable environment for the education of its students." *Solmitz v. Maine Sch. Admin. Dist. No. 59*, 495 A.2d 812, 817 (Me. 1985). Part and

parcel to that obligation is the Maine Legislature's directive that school boards must "ensure the safety of employees," which includes the school board's statutory duty to "address the negative effects of bullying of school employees" by any "individuals associated with the public school." 20-A M.R.S. § 1001(22). The Policy's restrictions on speech, including the particular challenged restriction here, also work to further the Board's interest in encouraging citizen participation, which is not mutually exclusive from the Board's additional interests in conducting meetings in an efficient and orderly manner.

In light of these interests and purposes, the challenged restriction is reasonable. *See Davidson*, 19 F. 4th at 635-36 (deeming the school board's policy restricting personal comments regarding identifiable individuals to be reasonable in light of the forum's purpose of conducting "good business" in an orderly, effective, efficient, and dignified manner); *Fairchild*, 597 F.3d at 760 (holding that the school board restriction on complaints involving the naming of employees was reasonable because "[t]he Board has a legitimate interest, if not state-law duty, to protect student and teacher privacy and to avoid naming or shaming as potential frustration of its conduct of business"); *see also Solmitz*, 495 A.2d at 816-17 (holding that the cancellation of a school program at which a homosexual individual was scheduled to speak was reasonable when the School Board's decision was motivated by concerns for the safety, order, and security of students rather than the suppression of ideas).

Underscoring the reasonableness of the challenged restriction in light of these purposes is the fact that the Policy only prohibits complaints about personnel when such complaints are associated with a specifically named employee. *See Fairchild*, 597 F.3d at 756, 760 (explaining that the policy still allows complaints, "just not if the complaint involves naming of people") (alterations omitted)). Speakers, including Plaintiff, remain free to—and do—offer criticism on a variety of matters.

ii. The Public Participation Policy is Not Unconstitutionally Vague

In Count 2, Plaintiff claims in cursory fashion that the Policy's restriction on "complaints and allegations" is unconstitutionally vague. This Court need not and should not address this argument because Plaintiff has waived it for failure to develop any argument on this issue, nor does Plaintiff proffer any evidence regarding the Board's arbitrary application of the Policy. *See, e.g.*, *Water Keeper Aliance v. U.S. Dept. of Defense*, 152 F.Supp.2d 155, 158 n.5 (D. P.R. 2001) (declining to address an argument in plaintiff's motion for a preliminary injunction because "[a]rguments that are merely adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived" (internal quotations omitted)).

In any case, Plaintiff's assertion of vagueness will fail on the merits because it ignores the remaining portion of that sentence in the policy, which modifies "complaints and allegations." In fact, a common thread throughout all of Plaintiff's constitutional claims is his attempt to have this Court view certain words in Rule 2 of the Policy in isolation. But to do so goes against the rules of construction. *See, e.g.*, *Food and Drug Admin. v. Brown and Williamson Tobacco Corp.*, 529 U.S. 120, 132 (2000) ("The meaning . . . of certain words or phrases may only become evident when placed in context."); *Ardente v. Standard Fire Ins. Co.*, 744 F.3d 815, 817 (1st Cir. 2014) ("a policy is not to be described as ambiguous because a word is viewed in isolation or a phrase is taken out of context.") (citing *McGowan v. Conn. Gen. Life. Ins. Co.*, 289 A.2d 428, 429 (R.I. 1972)).

"The void-for-vagueness doctrine . . . is concerned with circumstances in which a law is so vague that it does not provide fair notice of what conduct it prohibits and creates a risk of arbitrary enforcement." *Doe v. Hopkinton Pub. Sch.*, 19 F.4th 493, 509 (1st Cir. 2021). Yet vagueness lies only if the Policy is such that persons of "average intelligence would have no choice but to guess at its meaning." *Nt'l Org. for Marriage v. McKee*, 649 F.3d 34, 62 (1st Cir. 2011). Indeed, the

13

government is permitted "considerable discretion," *see Ward v. Rock Against Racism*, 491 U.S. 781, 794 (1989), and "perfect clarity and precise guidance have never been required even of regulations that restrict expressive activity," *Minnesota Voters Alliance v. Mansky*, 138 S. Ct. 1876, 1891 (citing *Ward*, 491 U.S. at 794).

Here, the Policy is not unconstitutionally vague because it does not broadly restrict "complaints and allegations" but rather "complaints or allegations . . . *at Board meetings concerning any person employed by the school system*." Miller Decl. Ex. A (emphasis supplied). First, the Policy—which was read allowed in advance of the February and March 2023 Board meetings—provides adequate notice to a "person of ordinary intelligence" that speakers are not permitted to make allegations of wrongdoing or make complaints when they are directed at a specifically named school employee. Second, the specificity of the Policy leaves no room for the Board to restrict speech based on its agreement or disagreement with the particular complaint or allegation; so long as the complaint or allegation is made against a specifically named employee, the speech is impermissible and should be made instead through the Board's alternative procedures.[5] *See Moms for Liberty – Brevard Cnty. v. Brevard Pub. Sch.*, 582 F.Supp.3d 1214, 1221 (M.D. Fl. 2022) (finding that a policy which permitted the school board chair to restrict statements that are "too lengthy, personally directed, abusive, obscene, or irrelevant" provided a "precise list" of expectations for the speakers as well as "fixed standards" and "concrete reasons" for which the Chair could interrupt speakers), *aff'd* No.22-10297, 2022 WL 17091924 (11th Cir. 2022).[6]

---

[5] Board Policy KE, which is referenced by the Public Participation Policy and permits the public to bring "complaints or concerns" regarding an employee of RSU 22, confirms the Board's interpretation and application of the Public Participation Policy's restriction against public comments that raise "complaints or allegations" against specifically named RSU 22 employees. *See* Miller Decl. Ex. E.

[6] Although the court in *Marshall* found the policy at issue in that case to be unconstitutionally vague, it did so on the basis of restrictions in that policy which Plaintiff does not similarly challenge here, and the facial challenge in *Marshall*

14

Furthermore, Plaintiff does not and cannot argue in either a facial or as-applied challenge that he lacked notice of the Policy's parameters for speech: the Policy, which unequivocally prohibits the discussion of personnel matters, was read out loud before the February and March meetings; Mr. Miller gave Plaintiff a warning, before asking him to sit down, in each instance that Plaintiff mentioned a specific employee's name; and, upon mentioning individual employee's names again, Plaintiff made remarks associated with those individuals that, as discussed below, must be interpreted by RSU 22 as personnel matters.

**B. Plaintiff's Comments Offered at the February 15, 2023 and March 15, 2023 School Board Meetings Were Not Interrupted Based on Plaintiff's Viewpoint**

The video recordings of Plaintiff's remarks at the February 15 and March 15 Board meetings bear out the fact that the Policy in place at the time of those meetings was not applied unconstitutionally as to Plaintiff. Indeed, in both instances Plaintiff mentioned specific employees of RSU 22 and made personnel complaints as to those specific individuals. On February 15, Plaintiff stated, in the context of discussing "sexual grooming," that a specifically named teacher was a "groomer" and should be "locked up and not allowed 500 feet from a school." On March 15, Plaintiff mentioned a specific name in the context of suggesting that such an individual was involved in an "after-school cult pushing sex and enabling mental illness." RSU 22 must interpret these remarks as personnel complaints—and, thus, personnel matters—and, pursuant to the Board's Policy, such complaints should instead be reported to the Board through the Board's other procedures for doing so.

---

is therefore inapposite. Further, at least one court has disagreed with *Marshall*, *see Moms for Liberty – Brevard Cnty. v. Brevard Pub. Sch.*, 582 F.Supp.3d 1214, 1221 (M.D. Fl. 2022), and circuit courts have expressed no concern for any ambiguity in restrictions such as the one challenged by Plaintiff here, *see Pollack v. Wilson*, No. 22-8017, 2022 WL 17958787, at *2, *8 (10th Cir. 2022); *Fairchild v. Liberty Ind. Sch. Dist.*, 597 F.3d 747, 761 (5th Cir. 2010) (noting that plaintiff, who challenged a school board policy that did not permit discussion of individual personnel matters and complaints, "wisely [did] not push the vagueness" argument because it lacked merit).

In each instance, Plaintiff was given a warning upon mentioning specific names—and indeed Mr. Miller's declaration acknowledges that there were conversations happening at this time regarding the Board's desire to adopt a new policy that will restrict any mention of employees' names, regardless of whether those names are associated with a complaint or allegation. However, Plaintiff was asked to stop speaking after making personnel complaints and allegations associated with those individuals. Plaintiff's remarks evolved quickly from the naming of an employee to a substantive allegation being associated with that name. This is particularly true in the case of the February 15 remarks given the speed of the pre-recorded comments. The Board looks forward to the fact that the new policy, which will restrict any naming of individual employees, will account for the fact that complaints and allegations can be attributed to an individual either before or after naming them.

Although Plaintiff contends that one other individual was permitted in October—four months prior to the February meeting—to offer remarks regarding a teacher's role as Maine Teacher of the Year, the allowance of those remarks does not imply an unconstitutional application of the Policy. It offers no evidence that the School Board has discriminated on the basis of the view or identity of the speaker; rather, it represents an application of the Policy, which only prevents personnel complaints, allegations and personal attacks on specifically named individuals. Further, Mr. Miller acknowledges that it was not until the winter that he began to interrupt speakers as soon as they mention an employee's name, Miller Decl. ¶ 20, and, notwithstanding that change in the Board's application of the Policy, Mr. Miller still provided only a warning to Plaintiff each initial time that Plaintiff mentioned an individual name in both February and March.

Mr. Miller's decision to interrupt Plaintiff's speech must also be viewed in light of the context of Plaintiff's pronouncement at the outset of his remarks in both February and March that he could say whatever he wanted and that he intended to speak about RSU 22 employees. *See*

16

(ECF No. 1-3 at :14 ("We won a federal First Amendment lawsuit against you, Mr. Chair, galvanizing my right to say whatever I want about whomever I want in whatever medium I want.")); (ECF No. 1-5 at :54-1:04 ("As long as I do not incite violence or use real obscenities, you can't restrict my free speech. I can speak about anyone employed by RSU 22, and I can say anything I want about them, and I will.")).

The recordings of Plaintiff's remarks demonstrate that the Board unequivocally did not interrupt Plaintiff's speech on the basis of viewpoint; indeed, the Board listened to Plaintiff's recording and verbal remarks, which expressed a wide range of viewpoints, for over two minutes and fifteen seconds in each instance, before only interrupting him to warn him upon the mentioning of specific names and ultimately stopping his speech after personnel complaints were attributed to those names. Because Plaintiff's speech was not disrupted on the basis of viewpoint, he has not shown—nor can the videos show—a substantial likelihood of success on the merits.

### C. Plaintiff's Facial Challenges Will Be Moot Regardless

Although the Board maintains—and case law from other Circuits supports—that its current Policy is viewpoint neutral, the Board nonetheless has been planning and still plans to amend the Policy to make crystal clear that the restriction on comments relating to "personnel matters" prohibits any public comments related to named RSU 22 employees. Miller Decl. ¶ 19. In order to avoid the possibility that a complaint or allegation will be made against a specifically named employee, Mr. Miller will be interrupting speakers as soon as they mention an employee's name during the public comment period. Miller Decl. ¶ 20. This practice and policy is unequivocally constitutional. *See Pollack v. Wilson*, No. 22-8017, 2022 WL 17958787, at *2, *8 (10th Cir. 2022) (affirming the denial of a request for a preliminary injunction against a school board policy that restricted speech on all "personnel matters"); *Davison*, 19 F.4th at 635-36.

The Board's amended Policy, which it expects to be finally adopted in May 2023, will moot Plaintiff's argument that the Policy discriminates based on viewpoint because it allows complements to be shared about specifically named individual employees. Given that the purpose of injunctive relief is to prevent future violations, Plaintiff simply cannot satisfy his burden to show that injunctive relief is necessary.

### III. PLAINTIFF HAS NOT DEMONSTRATED AN 'UNEQUIVOCAL' RIGHT TO RELIEF BASED ON THE REMAINING FACTORS

#### A. Plaintiff Has Not Established that He Will be Irreparably Harmed if a Restraining Order is Not Issued

This Court has explained that "a showing of irreparable harm must be 'grounded on something more than conjecture, surmise, or a party's unsubstantiated fears of what the future may have in store.'" *Maine Educ. Ass'n Benefits Tr. v. Cioppa*, 842 F. Supp. 2d 386, 387–88 (D. Me.), *aff'd,* 695 F.3d 145 (1st Cir. 2012) (quoting *Charlesbank Equity Fund II v. Blinds to Go,* 370 F.3d 151, 162 (1st Cir.2004)). "Thus, a preliminary injunction will not be issued simply to prevent the possibility of some remote future injury. A presently existing actual threat must be shown." Grounds for Granting or Denying a Preliminary Injunction—Irreparable Harm, 11A Fed. Prac. & Proc. Civ. § 2948.1 (3d ed.).

Plaintiff contends in his motion that injunctive relief is necessary here because he intends to criticize public employees at the next school board meeting. Pl. Br. at 1. Assuming such criticism is directed at individual employees, those comments are not permitted under the School Board's current public participation policy; nor will such comments be permitted under the Board's policy that will restrict all comments with regard to specific named employees. Finally, there are alternative means through which McBreairty can voice complaints about personnel.

## B. The Balance of Harms and Public Interest Weigh Against Injunctive Relief

Plaintiff has not and cannot show a level of hardship that will outweigh the hardship that the Board will incur if the purposes and interests underlying its Policy are frustrated by a preliminary injunction as requested by Plaintiff. The hardship to the School Board is much greater here: if Plaintiff – and others – are allowed to say *whatever they want* about school employees by name, members of the public would be permitted to accuse teachers of being "groomers" and "pedophiles," as Plaintiff has suggested he will do, or they may criticize teaching methods and personalities of teachers to the general public. By so doing, the School Board will be left powerless to protect its employees from harassment and provide its employees with a safe working environment. The School Board could also face liability or allegations thereof if it permits defamation. Importantly, the Board has no way of knowing in real time – as comments are made during the public comment period – whether comments are defamatory.

Hardship to the Plaintiff if he is not able to criticize RSU 22 employees at the April Board meeting is conversely not significant. Plaintiff is free to express his *ideas* without naming specific individuals, as he has been permitted to do repeatedly, and, to the extent he has complaints about individual employees, he is free to submit those complaints to the Board through its separate policy and procedure for such complaints and criticisms.

The effect that a preliminary injunction would have on the public interest also greatly weighs in favor of the School Board. Maine Law specifically authorizes school boards to establish reasonable standards for the public comment period at school board meetings. 20-A M.R.S. § 1001(20). It also requires school boards to protect school employees from harassment. *Id*. § 1001(22). The School Board has a significant interest in conducting orderly and efficient meetings, which helps support public participation and attention to the important issues discussed and heard by the Board at such meetings. Frustration of these statutory duties and interests by

virtue of a preliminary injunction that allows carte blanche criticism and personal attacks on individually named RSU 22 employees will have a significant effect on the public interest. Not only will RSU 22 be exposed to liability, but its inability to protect its employees from potentially defamatory or harassing comments will threaten the ability to maintain a safe working and learning environment in public schools. *See Epperson v. Arkansas*, 393 U.S, 97, 104 (1968) ("Judicial interposition in the operation of the public school system of the Nation raises problems requiring care and restraint.").

RSU 22 has deep respect for the importance of public comment on education—and indeed the videos of its board meetings bear out that fact—but the public harm at stake here cannot be overstated. Accordingly, neither the balance of harms nor the public interest support Plaintiff's request for a preliminary injunction. Because Plaintiff has failed to show a substantial likelihood of success on the merits and because all other remaining factors swing the pendulum towards a denial of Plaintiff's request for relief, this Court must deny Plaintiff's request for a preliminary injunction and temporary restraining order.

Dated: April 3, 2023  */s/ Melissa A. Hewey*
Melissa A. Hewey
Susan M. Weidner
Attorneys for Defendants
**DRUMMOND WOODSUM**
84 Marginal Way, Suite 600
Portland, Maine 04101-2480
(207) 772-1941
mhewey@dwmlaw.com