## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MAINE

|  |  |  |
|---|---|---|
| SHAWN MCBREAIRTY | ) | |
| | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | **Case No. 1:23-cv-00143-NT** |
| | ) | |
| HEATH MILLER AND SCHOOL | ) | |
| BOARD OF RSU 22 | ) | |
| | ) | |
| | ) | |
| Defendants | ) | |

## DEFENDANTS' MOTION TO DISMISS THE COMPLAINT WITH INCORPORATED MEMORANDUM OF LAW

Defendants School Board of Regional School Unit 22 (the "School Board" or "Board") and Heath Miller move this Court, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, for an order dismissing Plaintiff's Complaint (ECF No. 1) ("Complaint") because it fails to state a claim upon which relief can be granted.

## INTRODUCTION

Plaintiff Shawn McBreairty brings this civil action, alleging violations of his First Amendment rights based on two instances in which he was interrupted by the Chair of the School Board, pursuant to Board policy, when Plaintiff made allegations against specifically named RSU 22 employees in the third minute of remarks he provided during the School Board's public comment period. Because school board meetings are limited public forums, such interruptions were permissible under the Board's policy and the First Amendment, and the Complaint therefore must be dismissed for failure to state a claim upon which relief can be granted.

## STATEMENT OF FACTS

The Complaint and the exhibits attached thereto support the following well-pleaded facts. *See Trans-Spec Truck Service, Inc. v. Caterpillar Inc.*, 524 F.3d 315, 320 (1st Cir. 2008) (explaining that "facts and documents that are part of or incorporated into the complaint" can be properly considered under Rule 12(b)(6), including exhibits attached to the complaint because they are "considered part of the pleading").

### A. The Public Participation Policy

All School Board meetings at Regional School Unit 22 ("RSU 22") are open to the public, and the public is given time to provide public comment. Complaint ¶¶ 6-7. The Board has a Public Participation Policy ("Policy"), which provides in Rule 2 that:

> Confidential personnel information will not be shared in a public session. No complaints or allegations will be allowed at Board meetings concerning any person employed by the school system or against particular students. Personnel matters or complaints concerning student or staff issues will not be considered in a public meeting but will be referred through established policies and procedures.

Complaint ¶ 8; BEDH Public Participation Policy Rule 2, Complaint Exhibit A (ECF No. 1-1) ("Policy").

### B. February 15, 2023 School Board Meeting

Plaintiff provided remarks at the February 15, 2023 Board meeting by playing pre-recorded audio into the microphone that is provided to speakers during the public comment period. Complaint ¶ 13; Video Recording of Meeting February 15, 2022, Complaint Exhibit C (ECF No. 1-3). Plaintiff's pre-recorded remarks started by stating, "We won a federal First Amendment lawsuit against you, Mr. Chair, galvanizing my right to say whatever I want about whomever I want in whatever medium I want." (ECF No. 1-3 at :14.) Plaintiff went on to communicate a wide range of views about and on behalf of anonymous, unnamed students and teachers before turning

to the topic of "sexual grooming," (ECF No. 1-3 at 1:55). Plaintiff then stated, "In an article recently I believe the Superintendent was quoted as saying that RSU 22 is proud of all [named employee] accomplished in her 2022 groomer, I mean, teacher of the year." (ECF No. 1-3 at 2:12-2:21); Complaint ¶ 14. Mr. Miller stated to Plaintiff after the teacher was named, "Sir, we're not going to mention names. Your recording mentioned names. If it does that again, I'll ask you to sit down." (ECF No. 1-3 at 2:20-2:24); Complaint ¶ 14. Plaintiff's recording then went on to state, "the fact is that [named employee] should be locked up and not allowed within 500 feet of the school because she participated with [second named employee] in giving . . . ." (ECF No. 1-3 at 2:22-2:27); Complaint ¶ 15. Mr. Miller then stated, "I'm going to ask you to sit down." (ECF No. 1-3 at 2:27); Complaint ¶ 16. The Hampden Police Department had to be contacted in order for Mr. McBreairty to leave, Complaint ¶ 17, and Mr. Miller, the Chair of the School Board, informed police that Plaintiff had violated Rule 2 of the Policy when he mentioned a teachers name and an allegation towards that teacher, Complaint ¶ 17.

### C. March 15, 2023 School Board Meeting

Plaintiff also provided remarks during the public comment period of the March 15 Board meeting. Complaint ¶ 19; Video Recording of Meeting March 15, 2023, Complaint Exhibit E (ECF No. 1-5). Plaintiff began by stating, "As a reminder, this 28-page federal law suit, which you lost, the only thing you can control is place, this library filled with kitty porn; time, three minutes, which you did not give me last time; and manner, as it has to be school-related. That ruling was from a federal judge." (ECF No. 1-5 at :24-:41.) Plaintiff then stated, "As long as I do not incite violence or use real obscenities, you can't restrict my free speech. I can speak about anyone employed by RSU 22, and I can say anything I want about them, and I will." (ECF No. 1-5 at :54-1:04.)

In the third minute of his remarks, Plaintiff stated, "Recently, Hampden Academy students alerted me to a high school Spanish teacher, [named employee], who has an LGBTQ cult war flag on the classroom wall." (ECF No. 1-5 at 2:00-2:09); Complaint ¶ 20. Mr. Miller interrupted and warned, "Mr. McBreairty, we are not going to speak about employees, this is your one warning." (ECF No. 1-5 at 2:09-2:11); Complaint ¶ 20. As he was being warned, Plaintiff called that employee an indiscernible or otherwise unknowable name. (ECF No. 1-5 at 2:11-2:12); Complaint ¶ 20. Plaintiff went on to remark that "Parents may not know there is a gay-sexuality trans-alliance, a nationally sponsored group of groomers in this very high school. It is a tax-payer paid after-school cult pushing sex and enabling mental illness in our youth. Soccer, band, chorus, or talk sex with [named former employee] after school?" (ECF No. 1-5 at 2:15-2:32); Complaint ¶ 21 (referring to these remarks as "critici[sm]" of the "practices engaged in by" the former employee). Mr. Miller then stated "I gave you your one warning, I am going to ask you to step down." (ECF No. 1-5 at 2:33-2:36); Complaint ¶ 21. Plaintiff nonetheless continued to speak for at least fifteen seconds. (ECF No. 1-5 at 2:36-2:52.) The Police once again had to be contacted to remove Plaintiff from the school premises. Complaint ¶ 21.

Plaintiff alleges that these interruptions constitute viewpoint discrimination, pointing to one instance over four months prior to his February 2023 remarks in which the Program Director for Educate Maine was not interrupted when the Director mentioned an RSU 22 employee by name while providing a report on that employee's role as Maine Teacher of the Year, referring to the teacher of the year employee as "thoughtful," "intentional," "brave," and "brilliant." Complaint ¶¶ 9-11; Video Recording of Meeting October 19, 2022, Complaint Exhibit B (ECF No. 1-2).

4

# ARGUMENT

## I.  Standard of Review

"To survive a motion to dismiss for failure to state a claim under Rule 12(b)(6), the plaintiff must set forth facts sufficient to state a legal claim on which relief could be granted." *Giragosian v. Bettencourt*, 614 F.3d 25, 28-29 (1st Cir. 2010).  In evaluating the sufficiency of the Complaint, this Court must first separate the Complaint's factual allegations, which are taken as true, from its conclusory legal allegations, which need not be credited.  *See, e.g.*, *Guadalupe-Báez v. Pesquera*, 819 F.3d 509, 514 (1st Cir. 2016); *see also Alston v. Spiegel*, 988 F.3d 564, 571 (1st Cir. 2021) (explaining that a court "need not credit a plaintiff's '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements'").  Second, this Court determines "whether the well-pleaded facts, taken in their entirety, permit 'the reasonable inference that the defendant is liable for the misconduct alleged.'"  *Guadalupe-Báez*, 819 F.3d at 514.  "This plausibility standard is 'not akin to a "probability requirement"' and instead "'demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation.'"  *Cebollero-Bertran v. P.R. Aqueduct & Sewer Auth.*, 4 F.4th 63, 70 (1st Cir. 2021) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

Dismissal is therefore proper when, as here, "the factual allegations in the complaint are too meager, vague, or conclusory to remove the possibility of relief from the realm of mere conjecture.'"  *Alston*, 988 F.3d at 571.  In fact, Plaintiff's meager allegations need not even be left to conjecture in light of the videos attached to the Complaint, and Plaintiff's failure to plausibly plead free speech violations under either the Federal or Maine Constitutions is readily discernible at this early stage in light of the video portions of Plaintiff's pleading.

## II.     Plaintiff Has Failed to Plausibly Plead a Violation of 42 U.S.C. § 1983 or 5 M.R.S. § 4682

In Counts 1 and 3 of the Complaint, Plaintiff has failed to plausibly plead his "as applied claims," which allege that the Defendants deprived Plaintiff of his right to free speech and to petition based on the School Board's decisions that he should not be permitted to provide further comment during the time remaining in his three-minute comment period.[1]   In fact, the videos put forth by Plaintiff show that the School Board permitted Plaintiff to speak about a wide range of issues and criticisms and that Plaintiff was only interrupted upon making allegations against specifically named employees.   Counts 2 and 4 of the Complaint also fail to plausibly allege facial challenges against the School Board's Public Participation Policy because the Policy does not restrict speech based on the speaker's viewpoint nor is it unconstitutionally vague.   Indeed, Plaintiff does not allege, nor do the videos show, that the Policy was enforced in a discriminatory manner or that Plaintiff lacked notice of the Policy, which establishes reasonable standards for public comment by restricting allegations against specifically named employees, *see* 20-A M.R.S. § 1001(20) (expressly allowing school boards to establish "reasonable standards for the public comment period" at school board meetings).

Because Plaintiff has failed to show the violation of a federal or state constitutional right, his complaint must be dismissed. *See, e.g., Berry v. RSU 13 Sch. Bd.*, No. 2:15-CV-00146, 2016

---

[1]  Plaintiff's rights to free speech and to petition are subject to the same analysis.  *Wayte v. United States*, 470 U.S. 598, 610 n.11 (1985) ("[T]he right to petition and the right to free speech . . . are related and generally subject to the same constitutional analysis.").  Further, to the extent Plaintiff also alleges in Count 1 that he was "retaliated against" for exercising his First Amendment right, this Court need not consider such a conclusory allegation, for which Plaintiff proffers no factual or legal basis and the Defendants can discern none.  Indeed, Plaintiff simultaneously asserts in his Complaint that a non-retaliatory ground—the Public Participation Policy—was the reason for the School Board interrupting his comments.  *See Nieves v. Bartlett*, 139 S. Ct. 1715, 1722 (2019) (explaining that "non-retaliatory grounds" must "in fact" be insufficient to provoke the adverse consequences in order for a Plaintiff to seek relief based on a First Amendment retaliation claim); *see also D.B. ex rel. Elizabeth B v. Esposito*, 675 F.3d 26, 43 (1st Cir. 2012) (explaining that a defendant is not liable for retaliation when "it would have reached the same decision even in the absence of the protected conduct" (alterations omitted)).

WL 742901, at *17 (D. Me. Feb. 24, 2016) ("If a § 1983 complaint fails to state a constitutional

claim, it is subject to dismissal under Rule 12(b)(6)."); *see also Berube v. Conley*, 506 F.3d 79, 85

(1st Cir. 2007) ("The disposition of a 42 U.S.C. § 1983 claim also controls a claim under the

[Maine Civil Rights Act]."); *see also, e.g.*, *City of Bangor v. Diva's Inc.*, 2003 ME 51, ¶¶ 17, 20,

830 A.2d 898 (applying federal law to determine free speech claims under both the Federal and

Maine Constitutions).

### A.  **Plaintiff's Facial Challenges to the Board's Public Participation Policy Fail to State a Claim**

i.   The Public Participation Policy in Place at the February and March Board Meetings is Viewpoint Neutral and Reasonable

Plaintiff's statement at the outset of his March 15 remarks that the only "thing" that can be

controlled is "time, place, and manner" is inaccurate as a matter of law.  "[P]rotected speech is not

equally permissible in all places and at all times.   Nothing in the Constitution requires the

Government freely to grant access to all who wish to exercise their right to free speech on every

type of Government property without regard to the nature of the property or to the disruption that

might be caused by the speaker's activities."  *Cornelius v. NAACP Legal Defense and Educ. Fund,*

*Inc.*, 473 U.S. 788, 799-800 (1985).  The nature of the business conducted by school boards make

school board meetings one such place and time where not all speech is equally permissible, and

indeed School Board meetings are limited public forums.  *See, e.g.*, *McBreairty v. School Board*

*of RSU 22*, No. 1:22-cv-00206, 2022 WL 2835458, at *7 (D. Me. July 20, 2022) (holding that

school board meetings are limited public forums).  When the State establishes a limited public

forum, "the State is not required to and does not allow persons to engage in every type of speech."

*Good News Club v. Milford Cent. Sch.*, 533 U.S. 98, 106 (2001); *Rosenberger v. Rector & Visitors*

*of the Univ. of Va.*, 515 U.S. 819, 830 (1995) (explaining that, in a limited public forum, content

discrimination is permissible if it "preserves the purposes of that limited forum"); *see also Shurtleff v. City of Boston*, 337 F.Supp.3d 66, 75 n.3 (D. Mass. 2018) (citing *Rosenberger* to explain that a prior restraint on content discrimination is permissible if it preserves the purposes of the limited forum).

Because the public comment period at School Board meetings provides only a limited public forum confined to the discussion of school and education matters, the School Board may restrict expression so long as such restrictions are viewpoint neutral and are "reasonable in light of the purpose served by the forum." *Good News Club*, 533 U.S at 106-07. "The essence of a viewpoint discrimination claim is that the government has preferred the message of one speaker over another." *Mar v. Frey*, 458 F. Supp. 3d 16, 31 (D. Me. 2020) (quoting *McGuire v. Reilly*, 386 F.3d 45, 62 (1st Cir. 2004)). Thus, in order to avoid unconstitutional viewpoint discrimination, "[t]he government must abstain from regulating speech when the specific motivating ideology or the opinion or perspective of the speaker is the rationale for the restriction." *Rosenberger*, 515 U.S. at 829. Viewpoint discrimination does not occur, however, when "the government incidentally prevents certain viewpoints from being heard in the course of suppressing certain general topics of speech." *Ridley v. Mass. Bay Transp. Auth.*, 390 F.3d 65, 81 (1st Cir. 2004).

In his Complaint, Plaintiff challenges only a portion of the Policy, which he refers to as Rule 2, which prohibits complaints or allegations only if made against specifically named employees of RSU 22. Complaint ¶¶ 8, 29, 38. This prohibition permissibly restricts speech given that the School Board (i) is statutorily obligated to protect school employees from harassment and keep personnel information confidential, *see* 20-A M.R.S. §§ 6101, 1001(22); (ii) could be exposed to liability as an employer or otherwise for allowing defamatory comments at its meeting, which is open to the public and live-streamed on the internet, *see, e.g.*, *Pan Am Sys., Inc. v. Atl.*

*Ne. Rails and Ports, Inc.*, 804 F.3d 59, 64 (1st Cir. 2015) (explaining that, under Maine law, "one who repeats a defamatory statement may be as liable as the original defamer"); *see also Loe v. Town of Thomaston*, 600 A.2d 1090, 1092 (Me. 1991) (discussing Maine common law regarding an action for disclosure of private facts);[2] and (iii) has a responsibility to conduct the business of the district in an orderly and efficient manner, *see* 20-A M.R.S. § 1001(20) (authorizing school boards to establish "conduct standards" that govern the public comment period at a school board meeting).

This proscription on an entire class of speech—personnel complaints—in a limited public forum for a publically televised school board meeting is unequivocally permissible under the First Amendment. *See Prestopnik v. Whelan*, 83 F. App'x 363, 365 (2d Cir. 2003) (upholding a school board policy that excluded speech about personnel decisions because the "First Amendment generally permits the government to exclude a topic from discussion in such a limited public forum"); *Pollak v. Wilson*, No. 22-8017, 2022 WL 17958787, at *2, *8 (10th Cir. 2022) (affirming the denial of a request for a preliminary injunction against a school board policy that restricted speech on all "personnel matters").

Contrary to Plaintiff's contention, the challenged portion of the Policy is not discriminatory on the basis of viewpoint. *See McBreairty*, 2022 WL 2835458, at *8 ("Viewpoint discrimination is treated differently from content discrimination in a limited public forum"). It restricts allegations of wrongdoing, personal attacks, and criticisms of, on, or against specifically named educators without regard to the content of that allegation or the speaker's perspective which might animate such an allegation. For example, under the current Policy, a speaker offering remarks

---

[2] The separate provision in the Policy prohibiting "defamatory comments"—which Plaintiff does not here challenge— is insufficient by itself to protect the School Board from such liability given that the Board has no way of knowing in real time whether a comment is defamatory.

during the public comment period at Board meetings cannot criticize the fact that a specifically named teacher is teaching LGBTQ topics in the classroom and a speaker likewise cannot criticize that a specifically named teacher is *not* teaching LGBTQ topics.  In this regard, the Policy does not restrict one side of any particular debate; instead, it restricts any kind of complaint or allegation levied against a specifically named employee.  The policy is therefore viewpoint neutral because neither the identity, ideology, nor motivation of the speaker is considered as part of the Policy's restriction on speech.[3]  These complaints about specific employees could, of course, be communicated to the Board pursuant to board Policy KE.

The strong weight of authority supports this position of the School Board.  *See Davison v. Rose*, 19 F.4th 626, 635-36 (4th Cir. 2021) (affirming summary judgment that a school board's public participation policy, which did not permit comments "that are harassing or amount to a personal attack against any identifiable individual," was viewpoint neutral), *cert. denied*, 143 S. Ct. 106 (2022); *Fairchild v. Liberty Ind. Sch. Dist.*, 597 F.3d 747, 753, 755-60 (5th Cir. 2010) (deeming a school board policy viewpoint neutral when the policy did not permit discussion of individualized complaints because, among other reasons, it "dovetailed" with the school board's policy of not permitting personnel matters); *Moms for Liberty – Brevard Cnty. v. Brevard Pub. Sch.*, 582 F.Supp.3d 1214, 1217-19 (M.D. Fl. 2022) (denying request for a temporary restraining

---

[3]  In addition to the video exhibits submitted by Plaintiff, public comment at the September 21, 2022 School Board meeting further demonstrates viewpoint neutrality.  At that meeting, both Plaintiff and another speaker, Katherine Collins, spoke without interruption about their views concerning the effects of allegedly oversexualized material in schools.  *See* https://www.youtube.com/watch?v=LHil6ihfH3E at 11:00-17:54.  Similarly, at both the February and March 2023 meetings, Plaintiff was allowed to express his *views* without interruption.  It was only when Plaintiff said the names of individual employees that he was asked to stop.  In deciding the motion to dismiss, this Court can consider these September 2022 comments, which are available on the RSU 22 School Board's YouTube channel and are a matter of public record.  *Watterson v. Page*, 987 F.2d 1, 3 (1st Cir. 1993) (recognizing exceptions whereby "official public records" and "documents the authenticity of which are not disputed by the parties" can be considered on a motion to dismiss); *see also Calvary Chapel of Bangor v. Mills*, 542 F.Supp.3d 24, 28 n.4 (D. Me. 2021) (explaining that this Court "may take judicial notice of matters appearing on an official government website, which are not subject to reasonable dispute.").

order against a school board's policy, which restricted "personally directed" and "abusive" speech, because it was viewpoint neutral), *aff'd* No.22-10297, 2022 WL 17091924 (11th Cir. 2022) (finding the district court's denial "well-reasoned").

Furthermore, the RSU 22 School Board provides speakers with alternative channels for complaints against specifically named employees, with the language of the Policy itself referring such individualized allegations and criticisms to the Board's established alternative procedures. *See Christian Legal Soc. Chapter v. Martinez*, 561 U.S. 661, 690 (2010) (explaining that the availability of other avenues to express restricted speech "lessen the burden" of viewpoint neutral barriers and make a limited forum's policy "more creditworthy"); *Fairchild*, 597 F.3d at 760 (explaining that the School Board left "ample opportunity to be heard" when it channeled any issues that arose in public comment into its grievance processes).

The challenged section of the Policy thus satisfies a limited forum analysis because, in addition to being viewpoint neutral, it is also reasonable in light of the purpose and interests served by School Board meetings.   The purpose of the public comment period at school board meetings is to provide opportunity for comment on "school and education matters." 20-A M.R.S. § 1001(20).   Such matters are broad and wide-ranging in light of the myriad issues that touch on education, and RSU 22 does not shy away from the criticisms that can and often do accompany the breadth of educational issues—indeed, the Policy broadly permits public comments on the voicing of "opinions or problems."   At the same time, a school board's "most basic obligation is to maintain order in the schools and to create a stable environment for the education of its students."  *Solmitz v. Maine Sch. Admin. Dist. No. 59*, 495 A.2d 812, 817 (Me. 1985).  Part and parcel to that obligation is the Maine Legislature's directive that school boards must "ensure the safety of employees," which includes the school board's statutory duty to "address the negative

effects of bullying of school employees" by any "individuals associated with the public school." 20-A M.R.S. § 1001(22). The Policy's restrictions on speech, including the particular challenged restriction here, also work to further the Board's interest in encouraging citizen participation, which is not mutually exclusive from the Board's additional interests in conducting meetings in an efficient and orderly manner.

In light of these interests and purposes, the challenged restriction is reasonable. *See Davidson*, 19 F. 4th at 635-36 (deeming the school board's policy restricting personal comments regarding identifiable individuals to be reasonable in light of the forum's purpose of conducting "good business" in an orderly, effective, efficient, and dignified manner); *Fairchild*, 597 F.3d at 760 (holding that the school board restriction on complaints involving the naming of employees was reasonable because "[t]he Board has a legitimate interest, if not state-law duty, to protect student and teacher privacy and to avoid naming or shaming as potential frustration of its conduct of business"); *see also Solmitz*, 495 A.2d at 816-17 (holding that the cancellation of a school program at which a homosexual individual was scheduled to speak was reasonable when the School Board's decision was motivated by concerns for the safety, order, and security of students rather than the suppression of ideas).

Underscoring the reasonableness of the challenged restriction in light of these purposes is the fact that the Policy only prohibits complaints when such complaints are associated with a specifically named employee. *See Fairchild*, 597 F.3d at 756, 760 (explaining that the policy still allows complaints, "just not if the complaint involves naming of people") (alterations omitted)). Speakers, including Plaintiff, remain free to—and do—offer criticism on a variety of matters.

ii.     The Public Participation Policy is Not Unconstitutionally Vague

In Count 2, Plaintiff claims in conclusory fashion that the Policy's restriction on "complaints and allegations" is unconstitutionally vague.  Complaint ¶ 30.  This Court should ignore such a conclusory allegation, for which Plaintiff does not allege—nor do the video exhibits support—any facts demonstrating the Board's arbitrary application of the Policy.

In any case, Plaintiff's assertion of vagueness fails because it ignores the remaining portion of that sentence in the policy, which modifies "complaints and allegations."  In fact, a common thread throughout all of Plaintiff's constitutional claims is his attempt to have this Court view certain words in Rule 2 of the Policy in isolation.  But to do so goes against the rules of construction.  *See, e.g.*, *Food and Drug Admin. v. Brown and Williamson Tobacco Corp.*, 529 U.S. 120, 132 (2000) ("The meaning . . . of certain words or phrases may only become evident when placed in context."); *Ardente v. Standard Fire Ins. Co.*, 744 F.3d 815, 817 (1st Cir. 2014) ("a policy is not to be described as ambiguous because a word is viewed in isolation or a phrase is taken out of context.") (citing *McGowan v. Conn. Gen. Life. Ins. Co.*, 289 A.2d 428, 429 (R.I. 1972)).

"The void-for-vagueness doctrine . . . is concerned with circumstances in which a law is so vague that it does not provide fair notice of what conduct it prohibits and creates a risk of arbitrary enforcement."  *Doe v. Hopkinton Pub. Sch.*, 19 F.4th 493, 509 (1st Cir. 2021).  Yet vagueness lies only if the Policy is such that persons of "average intelligence would have no choice but to guess at its meaning."  *Nt'l Org. for Marriage v. McKee*, 649 F.3d 34, 62 (1st Cir. 2011).  Indeed, the government is permitted "considerable discretion," *see Ward v. Rock Against Racism*, 491 U.S. 781, 794 (1989), and "perfect clarity and precise guidance have never been required even of regulations that restrict expressive activity," *Minnesota Voters Alliance v. Mansky*, 138 S. Ct. 1876, 1891 (citing *Ward*, 491 U.S. at 794).

Here, the Policy is not unconstitutionally vague because it does not broadly restrict "complaints and allegations" but rather "complaints or allegations . . . *at Board meetings concerning any person employed by the school system*." (ECF No. 1-1). First, the Policy provides adequate notice to a "person of ordinary intelligence" that speakers are not permitted to make allegations of wrongdoing or make complaints when they are directed at a specifically named school employee. Second, the specificity of the Policy leaves no room for the Board to restrict speech based on its agreement or disagreement with the particular complaint or allegation; so long as the complaint or allegation is made against a specifically named employee, the speech is impermissible and should be made instead through the Board's alternative procedures. *See Moms for Liberty – Brevard Cnty. v. Brevard Pub. Sch.*, 582 F.Supp.3d 1214, 1221 (M.D. Fl. 2022) (finding that a policy, which permitted the school board chair to restrict statements that are "too lengthy, personally directed, abusive, obscene, or irrelevant," provided a "precise list" of expectations for the speakers as well as "fixed standards" and "concrete reasons" for which the Chair could interrupt speakers), *aff'd* No.22-10297, 2022 WL 17091924 (11th Cir. 2022); *see also Fairchild v. Liberty Ind. Sch. Dist.*, 597 F.3d 747, 761 (5th Cir. 2010) (noting that plaintiff, who challenged a school board policy that did not permit discussion of individual personnel matters and complaints, "wisely [did] not push the vagueness" argument because it lacked merit).[4]

Furthermore, Plaintiff does not and cannot argue in either a facial or as-applied challenge that he lacked notice of the Policy's parameters for speech: the Policy unequivocally prohibits the discussion of personnel allegations when associated with a named employee; Mr. Miller gave

---

[4] Although the court in *Marshall v. Amuso*, 571 F.Supp.3d 412 (E.D. Pa. 2021) found the policy at issue in that case to be unconstitutionally vague, it did so on the basis of restrictions in that policy which Plaintiff does not similarly challenge here, and the facial challenge in *Marshall* is therefore inapposite. Further, at least one court has disagreed with *Marshall*, *see Moms for Liberty – Brevard Cnty. v. Brevard Pub. Sch.*, 582 F.Supp.3d 1214, 1221 (M.D. Fl. 2022), and circuit courts have expressed no concern for any ambiguity in restrictions such as the one challenged by Plaintiff here, *see Pollak v. Wilson*, No. 22-8017, 2022 WL 17958787, at *2, *8 (10th Cir. 2022); *Fairchild v. Liberty Ind. Sch. Dist.*, 597 F.3d 747, 761 (5th Cir. 2010).

Plaintiff a warning, before asking him to sit down, in each instance that Plaintiff mentioned a specific employee's name; and, upon mentioning individual employee's names again, Plaintiff made remarks associated with those individuals that, as discussed below, must be interpreted by RSU 22 as personnel matters.

**B. Plaintiff's As-Applied Challenges Also Fail to State a Claim Because Plaintiff's Comments at the February 15, 2023 and March 15, 2023 School Board Meetings Were Not Interrupted Based on Plaintiff's Viewpoint**

The video recordings of Plaintiff's remarks at the February 15 and March 15 Board meetings bear out the fact that the Policy in place at the time of those meetings was not applied unconstitutionally as to Plaintiff.  Indeed, in both instances Plaintiff mentioned specific employees of RSU 22 and made personnel complaints as to those specific individuals.  On February 15, Plaintiff stated, in the context of discussing "sexual grooming," that a specifically named teacher was a "groomer" and should be "locked up and not allowed 500 feet from a school."  On March 15, Plaintiff mentioned a specific name in the context of suggesting that such an individual was involved in an "after-school cult pushing sex and enabling mental illness."   RSU 22 must interpret these remarks as personnel allegations and, pursuant to the Board's Policy, such allegations should instead be reported to the Board through the Board's separate procedures for doing so.

In each instance, Plaintiff was given a warning upon mentioning specific names.  However, Plaintiff was asked to stop speaking after making personnel complaints and allegations associated with those individuals.  Plaintiff's remarks evolved quickly from the naming of an employee to a substantive allegation being associated with that name.  This is particularly true in the case of the February 15 remarks given the speed of the pre-recorded comments.

Although Plaintiff contends that one other individual was permitted in October 2022—four months prior to the February meeting—to offer remarks regarding a teacher's role as Maine

15

Teacher of the Year, the allowance of those remarks does not imply an unconstitutional application of the Policy.  It offers no evidence that the School Board has discriminated on the basis of the view or identity of the speaker; rather, it represents an application of the Policy.  Indeed, Plaintiff's comments constituted an allegation or personnel complaint made against a specifically named individual; whereas the remarks regarding the Maine Teacher of the Year were not such an allegation.

Mr. Miller's decision to interrupt Plaintiff's speech must also be viewed in light of the context of Plaintiff's pronouncement at the outset of his remarks in both February and March that he could say whatever he wanted and that he intended to speak about RSU 22 employees.  *See* (ECF No. 1-3 at :14 ("We won a federal First Amendment lawsuit against you, Mr. Chair, galvanizing my right to say whatever I want about whomever I want in whatever medium I want.")); (ECF No. 1-5 at :54-1:04 ("As long as I do not incite violence or use real obscenities, you can't restrict my free speech.  I can speak about anyone employed by RSU 22, and I can say anything I want about them, and I will.")).

The recordings of Plaintiff's remarks demonstrate that Mr. Miller unequivocally did not interrupt Plaintiff's speech on the basis of viewpoint; indeed, the Board listened to Plaintiff's recording and verbal remarks, which expressed a wide range of viewpoints, for over two minutes and fifteen seconds in each instance, before only interrupting him to warn him upon the mentioning of specific names and ultimately stopping his speech after personnel complaints were attributed to those names.  Because Plaintiff's speech was not disrupted on the basis of viewpoint, he has failed to plausibly plead a violation of his right to free speech under either the federal or state constitutions, and Counts 1 and 3 must be dismissed accordingly.

C. **Plaintiff has Failed to Plausibly Plead Facial or As-Applied Challenges Regardless of This Court's Interpretation of the Remarks Offered at the October 19, 2022 Meeting**

"Plaintiff's claim against the . . . School Board . . . constitutes a claim against [a] public entit[y] and as such, the scope of permissible legal action is limited." *Berry v. RSU 13 Sch. Bd.*, No. 2:15-CV-00146, 2016 WL 742901, at *17 (D. Me. Feb. 24, 2016); *see also Monell v. Dep't of Soc. Serv. of City of New York*, 436 U.S. 658, 691 (1978). Here, Plaintiff has failed to state a claim against either the School Board or Mr. Miller because he has failed to plausibly plead that an unconstitutional policy was the basis for any alleged unconstitutional restriction of speech. *See Monell*, 436 U.S. at 694. Indeed, as already discussed, the Policy permissibly restricts "complaints or allegations" against specifically named individuals, and the videos demonstrate that Plaintiff's speech was only interrupted after allegations were made against individual RSU 22 employees.

But even assuming that this Court were to consider the October 2022 remarks commending the Maine Teacher of the Year to be a "personnel matter" that should have been restricted under the Policy, Plaintiff nonetheless fails to plausibly state a facial challenge against the Policy because this Court must interpret the language of the Policy as written, *see Pollak*, 2022 WL 17958787, at *7-8 (evaluating the text of the school board public participation policy, which restricted personnel matters, "as written" and determining that it was constitutional because the school board chair's comments that such a restriction allowed favorable speech could not and did not unilaterally modify the policy); *Gaspee Project v. Mederos*, 13 F.4th 79, 92 (1st Cir. 2021) ("[F]acial challenges leave no room for particularized considerations and must fail as long as the challenged regulation has any legitimate application."), and a school board's restriction of public comment on personnel matters is unequivocally permissible in the limited public forum of a school board meeting, *see Pollak*, 2022 WL 17958787, at *2, *8 (affirming the denial of a request for a

preliminary injunction against a school board policy that restricted speech on all "personnel matters"); *Davison*, 19 F.4th at 635-36; *see also Fairchild*, 597 F.3d at 755-60 (noting that the school board also had a policy of not permitting discussion personnel matters).

Plaintiff's as-applied challenges against the School Board would likewise fail under this assumption regarding the October 2022 remarks because, where the Board permissibly restricts speech regarding personnel matters pursuant to its policy, proof of a single incident of a purportedly unconstitutional application of that restriction is otherwise insufficient to impose liability against the School Board.  *See Oklahoma City v. Tuttle*, 471 U.S. 808, 323-24 (1985) ("Proof of a single incident of unconstitutional activity is not sufficient to impose liability under *Monell*, unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy."); *see also Moms for Liberty*, 582 F.Supp.3d at 1220 (rejecting the as-applied challenge to a policy that restricted "personally directed" speech when the plaintiff's had only identified four instances in which the school board chair interrupted the plaintiffs, yet the plaintiffs were permitted to speak uninterrupted on other occasions, including uninterrupted occasions that conveyed the viewpoints that Plaintiffs alleged were being restricted).

Plaintiff's as-applied claims against Mr. Miller fail regardless for this same reason: one instance in which a speaker was not interrupted upon providing favorable remarks about a named employee with regard to that employee's role as Maine Teacher of the Year does not demonstrate that Mr. Miller interrupted Plaintiff on the basis of viewpoint four months later.  *See id*.; *Moms for Liberty – Brevard County v. Brevard Public Schools*, No. 6:21-cv-1849, 2023 WL 2454754, at *4 n.6 (M.D. Fl., Feb. 13, 2023) (finding summary judgment for school on plaintiffs' as-applied challenges because, even if the Chair strayed from "evenhanded application" of the public participation policy in a few instances, "an erroneous judgment call on the part of a presiding

officer does not automatically give rise to liability for a constitutional tort." (quoting *Jones v. Heyman*, 888 F.2d 1328, 1334 (11th Cir. 1989)).

Because the Policy's restriction on personnel matters is unequivocally permissible in light of the context and purposes of the Board's limited public forum and because Plaintiff alleges only one instance in which favorable comments were permitted regarding a named individual employee, Plaintiff cannot state a claim for relief regardless of whether and how this Court considers the October 2022 remarks.

### III.    Heath Miller is Entitled to Qualified Immunity

Plaintiff fails to state a claim against Heath Miller individually because Mr. Miller is entitled to qualified immunity. Public officials "are entitled to qualified immunity under § 1983 unless (1) they violated a federal statutory or constitutional right, and (2) the unlawfulness of their conduct was 'clearly established at the time.'" *District of Columbia v. Wesby*, 138 S. Ct. 577, 590 (2018); *see also Susan Johnson v. City of Biddeford*, 2:17-cv-00264, 2023 WL 2712861, at *32 (D. Me., March 30, 2023) (explaining that the "same qualified immunity analysis applies under the Maine Civil Rights Act as under § 1983"). Further, qualified immunity should be determined at the earliest possible stage of litigation. *See, e.g.*, *Maldonado v. Fontanes*, 568 F.3d 263, 269 (1st Cir. 2009) (the "basic thrust of the qualified immunity doctrine is to free officials from the concerns of litigation") (alterations omitted).

Here, Mr. Miller did not violate Plaintiff's constitutional rights by interrupting Plaintiff's speech pursuant to the Board's public participation policy; however, even if he did, he is entitled to qualified immunity because the unlawfulness of such an interruption was not and is not at all clearly established. To the contrary, case law from other jurisdictions makes it clear that such an interruption pursuant to a policy restriction, such as Rule 2, was constitutionally permissible.

The "clearly established" step of the qualified immunity analysis has two aspects: "[t]he first sub-part requires the plaintiff to identify either controlling authority or a consensus of cases of persuasive authority sufficient to send a clear signal to a reasonable official that certain conduct falls short of the constitutional norm." *Adrianna Wadsworth v. Maine Sch. Admin. Dist. 40*, 2023 WL 2714028, at *32 (D. Me., March 30, 2023) (alterations omitted) (citing *Alfano v. Lynch*, 847 F.3d 71, 75 (1st Cir. 2017).  The second aspect of the "clearly established" inquiry requires the Court to ask whether, in the specific context of this case, "a reasonable defendant would have understood that his conduct violated the plaintiff's constitutional rights."  *Id.* (alterations and citations omitted).

Plaintiff has not and cannot identify controlling authority making it sufficiently clear that Plaintiff had a constitutional First Amendment right not to be interrupted when Plaintiff made allegations against individually named school employees during the publically televised public comment period of the school board meeting.  Plaintiff cites no cases where a school board's similar restriction on personnel allegations was deemed unconstitutional either facially or as-applied in similar circumstances to those here, and Defendants are aware of none.  In fact, the First Circuit has never addressed the limited public forum that is provided by public comment periods during school board meetings, and those circuits that have addressed policies similar to the restriction at issue in Rule 2 here have deemed such a restriction constitutionally permissible under the First Amendment.

Further, it is not at all clear that any reasonable school board chair would have known that interrupting Plaintiff would violate Plaintiff's First Amendment rights under the specific circumstances here—that is, where the Board had a policy of restricting personnel allegations and Plaintiff stated at the outset of publically televised remarks that he would be saying anything he

20

wanted about RSU 22 employees and then went on to suggest that certain named employees should not be allowed within 500 feet of a school or were part of an after-school sex cult.  Rather, it is clearer that a reasonable school board chair would fear that his or her failure to interrupt Plaintiff under such circumstances could violate the school board's state-law duty to protect employees from harassment.  *See Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011) ("Qualified immunity gives government breathing room to make reasonable but mistaken judgments.").

Because Mr. Miller is unquestionably entitled to qualified immunity, Plaintiff fails to state a claim for relief against Mr. Miller individually, and all claims against Mr. Miller should therefore be dismissed.  *See Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985) (explaining that official capacity suits should be "treated as a suit against the entity" because they "represent only another way of pleading an action against an entity of which an officer is an agent").

## CONCLUSION

For all of the foregoing reasons, this Court should dismiss Plaintiff's Complaint with prejudice for failure to state a claim.

Dated: April 13, 2023

/s/ Melissa A. Hewey
Melissa A. Hewey
Susan M. Weidner
Attorneys for Defendants
**DRUMMOND WOODSUM**
84 Marginal Way, Suite 600
Portland, Maine 04101-2480
(207) 772-1941
mhewey@dwmlaw.com
sweidner@dwmlaw.com