# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MAINE

| | |
|---|---|
| SHAWN MCBREAIRTY,<br><br>Plaintiff,<br><br>v.<br><br>HEATH MILLER, in his personal and official capacities; SCHOOL BOARD OF RSU22,<br><br>Defendants. | Case No. 1:23-cv-00143-NT<br><br>**PLAINTIFF'S MOTION FOR INJUNCTION PENDING APPEAL**<br><br>**EXPEDITED RELIEF SOUGHT** |

Plaintiff, Shawn McBreairty, respectfully moves this Court for an injunction pending appeal pursuant to Fed. R. Civ. P 62(d) that enjoins Defendants from prohibiting Mr. McBreairty from public comment based on viewpoint discrimination. Plaintiff further moves this Court to enjoin Defendants from enforcing BEDH Public Participation Policy Rule 2, until the appeal of the Order of April 26, 2023 (ECF No. 17) on Plaintiff's Emergency Motion for a Temporary Restraining Order and for a Preliminary Injunction (ECF No. 3, "Motion") is resolved.

This is sought on an expedited basis, or Plaintiff will seek injunction pending appeal before the First Circuit. Thus, pursuant to Fed. R. App. P. 8(a)(1), Plaintiff is seeking relief before this Court first. Moreover, out of respect for the First Circuit's case load, and the fact that the next School Committee meeting is May 17, 2023, Plaintiff will seek relief before the First Circuit in five days.

# MEMORANDUM OF POINTS AND AUTHORITIES

## 1.0 FACTUAL BACKGROUND

On March 24, 2023, Plaintiff filed his Emergency Motion for a Temporary Restraining Order and for a Preliminary Injunction (ECF No. 3). After a hearing was held on April 25, 2023, this Court entered an Order denying Plaintiff's Motion (ECF No. 17).

Respecting the Court's time, McBreairty briefly summarizes the factual background from his Motion. ECF No. 3.

BEDH Public Participation Policy Rule 2 provides as follows:

> Confidential personnel information will not be shared in a public session. **No complaints or allegations will be allowed at Board meetings concerning any person employed by the school system or against particular students**. Personnel matters or complaints concerning student or staff issues will not be considered in a public meeting but will be referred through established policies and procedures. ECF No. 1-1. (emphasis added)

Plaintiff challenges the bolded portion of this rule, which permits praise of Defendants' employees at school board meetings, but do not allow criticism of the same government employees. During an October 2022 Board meeting, third party Dolly Sullivan was allowed to praise government employees and identify them by name. *See* ECF No. 1 at ¶¶ 10-12 and ECF No. 1-2. Then, during a February 2023 Board meeting where Plaintiff criticized a government employee, Defendants stopped Plaintiff from speaking, told him he had violated Rule 2, and called the police to escort him off the premises. ECF No. 1 at ¶¶ 13-17 and ECF Nos. 1-3 and 1-4. Defendants did the same thing to Plaintiff during a Board meeting the following month, as well. ECF No. 1 at ¶¶ 18-21 and ECF No. 1-5.

Defendants enforced a policy that is viewpoint discriminatory on its face, and further enforced it in a viewpoint discriminatory manner. Defendants have ensured that naming any

RSU22 employee for the purpose of offering criticism is forbidden, in violation of the First Amendment.

## 2.0 LEGAL ARGUMENT

To be entitled to an injunction pending appeal, a party must "make a strong showing that they are likely to succeed on the merits, that they will be irreparably injured absent emergency relief, that the balance of the equities favors them, and that an injunction is in the public interest." *Together Emples v. Mass Gen. Brigham Inc.*, 19 F.4th 1, 7 (1st Cir. 2021). The test is nearly identical to the standard test for a preliminary injunction. *See Winter v. NRDC, Inc.*, 555 U.S. 7, 20 (2008). The Court of Appeals will review the district court's factual findings for clear error, its legal conclusions *de novo*, and its ultimate decision to deny the preliminary injunction for abuse of discretion. *See Norris ex rel. A.M. v. Cape Elizabeth Sch. Dist.*, 969 F.3d 12, 21 (1st Cir. 2020). As set forth below, the Court abused its discretion in denying the preliminary injunction and the First Circuit, on appeal, determining the legal issues *de novo*, will find in favor of Plaintiff, because of this Court's legal errors.

### 2.1 Plaintiff Demonstrated a Likelihood of Success

"In the First Amendment context, the likelihood of success on the merits is the linchpin of the preliminary injunction analysis." *Sindicato Puertorriqueño de Trabajadores v. Fortuño*, 699 F.3d 1, 10 (1st Cir. 2012) (*per curiam*). At this stage, the "court need not conclusively determine the merits of the movant's claim; it is enough for the court simply to evaluate the likelihood . . . that the movant ultimately will prevail on the merits." *Ryan v. U.S. Immigr. & Customs Enf't*, 974 F.3d 9, 18 (1st Cir. 2020).

### 2.2 Defendants' Restrictions are Facially Invalid[1]

On its face, Rule 2 prohibits "complaints" and "allegations," but does not prohibit laudatory comments and compliments. The Court erred when it determined that this was not viewpoint discrimination, a determination substantially likely to be reversed on appeal. Rule 2 is an unconstitutional prior restraint. "The term 'prior restraint' is used to describe administrative and judicial orders forbidding certain communications when issued in advance of the time that such communications are to occur." *Alexander v. United States*, 509 U.S. 544, 550 (1993) (internal quotation marks and citation omitted; emphasis in original). "When government targets not subject matter, but particular views taken by speakers on a subject, the violation of the First Amendment is … blatant." *Rosenberger v. Univ. of Va.*, 515 U.S. 819, 829-30 (1995). Rule 2 is viewpoint discrimination. "[D]isfavoring ideas that offend discriminates based on viewpoint, in violation of the First Amendment." *Iancu v. Brunetti*, 139 S. Ct. 2294, 2301 (2019) (internal quotation marks omitted). "A viewpoint need not be political; any form of support or opposition to an idea could be considered a viewpoint." *Marshall v. Amuso*, 571 F. Supp. 3d 412, 421 (E.D. Pa. 2021) (quoting *Matal v. Tam*, 137 S. Ct. 1744, 1766 (2017) (Kennedy, J., concurring in part) ("The First Amendment's viewpoint neutrality principle protects more than the right to identify with a particular side. It protects the right to create and present arguments for particular positions in particular ways, as the speaker chooses.")). Viewpoint discrimination occurs when there is a "governmental intent to intervene in a way that prefers one particular viewpoint in speech over other perspectives on the same topic." *Ridley v. M.B.T.A.,* 390 F.3d 65, 82 (1st Cir. 2004).

---

[1] Plaintiff also argued that the restrictions are unconstitutional as applied. Plaintiff does not waive these arguments on appeal, but instead has chosen to focus on the clearer issue of facial invalidity for purposes of this Motion.

Rule 2 is not merely a content-based restriction, which may be permissible in limited public forums.[2] Rather, speakers are allowed to discuss an employee's job performance, but *only* if that discussion is complimentary. Defendants prohibited McBreairty from criticizing RSU22 employees, rendering Rule 2 viewpoint-based.

In *Marshall*, the court found unconstitutional viewpoint discrimination in an as-applied challenge to a school board's policy that permitted "positive and complementary personally-directed comments supportive of Board and school employees" but prohibited "negative, challenging, or critical personally-directed comments." 571 F. Supp. 3d at 422. "Public speech at school board meetings is in fact protected by the First Amendment." *Id.* (citation omitted). Here, as in *Marshall,* Rule 2 expressly prohibits "complaints and allegations . . . concerning any person employed by the school system[.]" ECF No. 1-1. On its face, Rule 2 bans a viewpoint. Rule 2 permits praising employees while prohibiting complaints. Rule 2 is facially unconstitutional.

Unlike *Fairchild*, here, the Defendants' policy does not define personnel matter.[3] The Court impermissibly rewrote Rule 2 in its Order to ignore the specific viewpoint-based language. ECF No. 17 at 11. Rather than looking at the plain language of the Rule, which only addresses complaints and allegations, the Court determined that the Rule only prohibited discussion of "personnel matters," asserting Plaintiff took too "myopic" a view. *Id.* But the plain language of Rule 2 is much broader than what the Court imagines. Not every complaint is a personnel matter. Curriculum is not a personnel matter. A teacher's political views are not a personnel matter. A

---

[2] As the Court noted in its Order denying McBreairty's Motion, the parties agree that the public comment portion of the School Board meeting is a limited public forum. ECF No. 17 at 9.

[3] *Fairchild v. Liberty Indep. Sch. Dist.,* 597 F.3d 747, 760 n.47 (5th Cir. 2010) (Fairchild's examples of publically [*sic*] spoken "praise" at Board meetings do not alter the analysis of the facial attack. Indeed, the cited laudatory comments -- which included thanking certain people for painting a gym (R. at 1775) -- did not deal with personnel matters such as "appointment, employment, evaluation, reassignment, duties, discipline, or dismissal" -- and so did not fall under a District policy. They do not contemplate further action by the Board and hint of no focused dispute to be resolved.).

teacher's syllabus is not a personnel matter. A teacher's gender identity is not a personnel matter. Books a teacher hands out is not a personnel matter. For the Court's redefined version of Rule 2 to be plausible, it would have to consider all such subjects to be personnel matters, and would also have to ban all mention of such matters.[4] Yet, criticism of a teacher is prohibited under Rule 2, while praise of a teacher is not. Defendants do not dispute this.

Moreover, one cannot seriously expect that the Rule would be interpreted as prohibiting praising a teacher for winning Teacher of the Year, but it is expected that it would be interpreted as prohibiting awarding someone "Worst Teacher of the Year" in their remarks, even though both can be viewed as "personnel matters." Courts only apply the canon of constitutional avoidance, imposing a "limiting construction," if it is "readily susceptible to such a construction;" courts "will not rewrite a law to conform it to constitutional requirements, for doing so would constitute a serious invasion of the legislative domain and sharply diminish [the legislative] incentive to draft a narrowly tailored law in the first place." *United States v. Stevens*, 559 U.S. 460, 481 (2010) (cleaned up). The canon of constitutional avoidance does not permit the courts to avoid the plain language of a regulation or rewrite a rule. Yet, this is precisely what this Court impermissibly did, lumping all criticism of a teacher into the broader "personnel matter" category.

---

[4] While at the same time, this Court accepted Defendants' new interpretation of personnel matters to prohibit even the utterance of a staff member's name in the as-applied challenge. (Order at 22-23). This Court found that the Chair never specified which provision he was relying on to prevent McBreairty from mentioning staff member names. (*Id.* at 22) But, Defendant Miller said that until the new policy is adopted he was "warning and interrupting speakers as soon as they mention an employee's name" and the new policy "makes the blanket prohibition against speaking about personnel matters[.]" ECF No. 9-1 at ¶¶ 18-19. Miller's comment was in the context of discussing "[o]ur current policy" about "personnel matters." *Id.* at ¶ 17. In other words, Defendant Miller was discussing the personnel-matter rule. Nowhere did Defendants ever claim to use the "personally directed" rule. Defendants discussed the personnel-matter rule, and only the personnel-matter rule. When meeting with police officers during the meeting, Miller told officers that McBreairty violated the personnel-matter rule. ECF No. 1-4 at 4-5 ("Heath read one that says in substance no confidential personal information wont [*sic*] be shared about persons employed at the school . . . . [Heath] let him do it until he mentioned a teachers [*sic*] name and an allegation towards that teacher."). This definition for personnel matters is overbroad. *Pollak v. Wilson*, No. 22-8017, 2022 U.S. App. LEXIS 35636, at *30 (10th Cir. Dec. 27, 2022) ("[T]o the extent that the mere mention of an administrator's name is deemed "personnel" and barred under the policy, the policy is overbroad.")

In fact, by lumping the "complaint" provision in with the "personnel matter" provision, the Court impermissibly made the former superfluous, thereby "violat[ing] the cardinal rule that, if possible, effect shall be given to every clause and part of a statute." *D. Ginsberg & Sons, Inc. v. Popkin*, 285 U.S. 204, 208 (1932). More recently, the Supreme Court quoted *Ginsberg* favorably, reaffirming that "[g]eneral language of a statutory provision, although broad enough to include it, will not be held to apply to a matter specifically dealt with in another part of the same enactment." *Id.* (as quoted in *RadLAX Gateway Hotel, LLC v. Amalgamated Bank*, 566 U.S. 639, 646 (2012)). The prohibition on complaints and accusations is not merely an example of a personnel matter—it is its own separate prohibition. This is the obvious plain reading—that same provision prohibits complaints and accusations against students, who are not employees and not subject to personnel action. And, notably, complaints about staff before the existence of a "personnel matter" that may never come to bear, are nonetheless prohibited.

The Court's construction of Rule 2 also flies in the face of 20-A.M.R.S. § 1001(20), which *requires* that the public can speak freely about "school and education matters" subject to "reasonable standards." Critiquing school employees, including by name, is a "school and education matter." There is nothing *reasonable* about prohibiting criticism of school employees in a limited public forum created for "school and education matters." If there is criticism about a dangerous building condition, could Defendants avoid criticism about it by decreeing "building operation matters" are outside the rules? Can they just eliminate budget matters from the forum if they receive flak for wasteful spending? Can they just narrow the forum to exclude any potential for criticism? It would be convenient indeed if the government were allowed to retroactively narrow the scope of their public forums in response to litigation, but neither the First Amendment nor 20-A.M.R.S. § 1001(20) abide that. This Court, erroneously, has abided that, thus clearing the

Plaintiff's Motion for Injunction Pending Appeal

way for all public meetings to be reduced to sessions of city government-approved praise for the government.

Because the Court rewrote the Rule to avoid addressing its facial distinction between complaints and praises, the remainder of the Court's analysis, based on that revision, is flawed. The Court cited to a series of cases regarding "personnel" matter prohibitions, asserting that since those cases deemed there to be no viewpoint issue, there was none here and the Rule was not facially unconstitutional. But, the entire reasoning of the Court is flawed because its premise, based on an impermissible revision, was flawed, and the Order is, therefore, substantially likely to be reversed on appeal.

### 2.3 Defendants' Restrictions are Unconstitutionally Vague

A policy is impermissibly vague if (1) "it fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits" or (2) "it authorizes or even encourages arbitrary and discriminatory enforcement." *Hill v. Colorado,* 530 U.S. 703, 732 (2000). Because of the potential for arbitrary suppression of free speech, "the Constitution requires a 'greater degree of specificity' in cases involving First Amendment rights." *Nat'l Org. for Marriage v. McKee,* 649 F.3d 34, 62 (1st Cir. 2011).

The Defendants have silenced Mr. McBreairty by using unconstitutionally vague criteria. By Defendant Miller's own admissions, Rule 2 is vague and we must guess at its meaning. *See* Miller Decl., ECF. No. 9-1 at ¶ 17. Miller has served on the School Board since 2013. *Id.* at ¶ 1. Yet, it took him ten years to figure out that positive comments "would be included in the prohibition of 'personnel matters.'" *Id.* at ¶ 17. If the rule fails to provide the School Board Chair reasonable notice as to its meaning, it must be vague for the average citizen.

Even with the revised interpretation that the policy merely prohibits stating the name of an employee to be "personally directed," it remains vague. At what point does a statement critical of

RSU22 educational policy and practices become "personally directed?" Using a hypothetical example of corporal punishment, can Mr. McBreairty say "Corporal punishment in our schools is bad?" What about "Teachers should not use corporal punishment in our schools, because that is bad?" Or, "Some teachers in this district use corporal punishment, and that is bad?" Or, "The Fourth Grade teachers in XYZ school use corporal punishment, and I disapprove?" Can he say "The Teacher in Class 123 at XYZ school uses corporal punishment, and I disapprove?" Or, is it only "Mr. Smith uses corporal punishment, and that is bad?" Notably, as in the case at bar, Mr. McBreairty is not asking for disciplinary action to be taken, rather he is lodging his displeasure at what one or more teachers do in the classroom. No person of ordinary intelligence can tell where the line is, since it is far from clear from the text of Rule 2 that it is a mere prohibition on "naming names."

### 2.4 Remaining Injunction Factors

The "loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976). When a plaintiff seeks injunctive relief for "an alleged violation of First Amendment rights, a plaintiff's irreparable harm is inseparably linked to the likelihood of success on the merits of plaintiff's First Amendment claim." *WV Assn'n of Club Owners and Fraternal Srvs., Inc. v. Musgrave*, 553 F.3d 292, 298 (4th Cir. 2009). Thus, if the plaintiff demonstrates a likelihood of success on the merits of its First Amendment claim, they necessarily also establish irreparable harm. *Fortuño, 699 F.3d at 15*. Twice, Defendants deprived Mr. McBreairty of his First Amendment rights by shutting him down prior to the expiration of his allotted 3-minutes of public comment and calling the police to remove him from the school grounds. Compl. at ¶¶ 17, 21. Defendants' decision to prevent Mr. McBreairty from completing his public comment two months in a row is a pattern that will continue without this Court's intervention. While Defendants have not banned McBreairty from attending meetings,

as in the prior case, they have enacted a *de facto* ban and a prior restraint on his speech. Their intent is to only allow praise. When they are criticized, Defendants use the police force to remove McBreairty.

As for the balance of equities, when the government restricts protected speech, the balance of hardships weighs heavily in a plaintiff's favor. *See Firecross Ministries v. Municipality of Ponce*, 204 F. Supp. 2d 244, 251 (D.P.R. 2002) ("insofar as hardship goes, the balance weighs heavily against Defendants, since they have effectively silenced Plaintiffs' constitutionally protected speech.") Here, the balance of equities tips in McBreairty's favor. Failing to grant the requested injunction will continue to deprive McBreairty of his constitutional rights pursuant to the First Amendment of the Constitution and Article I Sections 4 and 15 of the Maine Constitution. Defendants will suffer no harm if McBreairty is granted the requested injunctive relief. Rather, an injunction will merely restore the rights guaranteed by the U.S. and Maine Constitutions.[5]

As for the public interest, "[p]rotecting rights to free speech is *ipso facto* in the interest of the general public." *McBreairty v. Sch. Bd. of RSU22*, No. 1:22-cv-00206-NT, 2022 U.S. Dist. LEXIS 128353, *31-32 (D. Me. July 20, 2022). Moreover, the unconstitutional regulation being enforced by Defendants in this case has the potential to harm nonparties to the case because it will limit or infringe upon their rights as well. *See Wolfe Fin. Inc. v. Rodgeres*, 2018 U.S. Dist. LEXIS 64335, at *49 (M.D. N.C. April 17, 2018) (*citing McCarthy v. Fuller*, 810 F.3d 456, 461 (7th Cir. 2015). Other members of the public are chilled from speaking their minds as well. They see McBreairty shut down and hustled out of the meeting by armed police for merely mentioning

---

[5] Defendants argued previously that they have an obligation to protect their employees from bullying and there is possible legal liability in allowing citizens to voice criticisms. This is nonsensical. As discussed above, Rule 2 prohibits *any* criticism of RSU22 employees, not just bullying or harassing behavior. Only by completely rewriting Rule 2 is it possible to create a regulation consistent with this alleged purpose. There is also no support whatsoever for the contention that a School Board allowing citizens to speak during an open comment section could result in the Board being liable for defamation. It is rank speculation that cannot tip the scales in Defendants' favor.

government employees, much less criticizing them. Which citizen of ordinary firmness would risk speaking critically at a government meeting if such criticism means ejection by armed guards?

Further, even members of the public who are too shy to speak have a right to hear McBreairty's criticisms. Even the government is harmed if it cannot hear critiques of how its employees are performing. How can a government operate effectively if it never hears criticism? The government will create the illusion that it is operating with a unanimous mandate, and perhaps even fool itself into continuing negative policies, because nobody would dare to criticize them. Enjoining that self-inflicted harm is in the public interest. It is a poor example of representative democracy if the government is shielded from even knowing that citizens may have criticisms of employees. There has been no disruption, except when Defendants have disrupted their own meetings instead of simply letting McBreairty express his disapproval. The public interest favors the issuance of the injunction, just as it did in *McBreairty v. RSU22*.

Defendants argued that the public has a countervailing interest in protecting the safety of RSU22's educators and running board meetings in an orderly fashion, but there is not a scintilla of evidence that allowing criticism of RSU22 employees during Board meetings would harm either purported interest. If a patently unconstitutional rule is required to further a purported government interest, then that interest is not valid.

### 3.0 CONCLUSION

For the foregoing reasons, the Court should grant an injunction pending appeal pursuant to Fed. R. Civ. P. 62(d) that enjoins Defendants from prohibiting Mr. McBreairty from public comment based on viewpoint discrimination. Further, the Court should grant an injunction pending appeal that enjoins Defendants from enforcing BEDH Public Participation Policy Rule 2, until Plaintiff's Emergency Motion for a Temporary Restraining Order and for a Preliminary Injunction ("The Motion") is resolved on appeal. ECF No. 3.

Dated: April 27, 2023.                                    Respectfully Submitted,

/s/ Marc J. Randazza                           Brett D. Baber, Bar No. 3143
Marc J. Randazza (*pro hac vice*)              Lanham Blackwell & Baber, PA
    *Lead Counsel*                    133 Broadway
Robert J. Morris II (*pro hac vice*)           Bangor, ME 04401
RANDAZZA LEGAL GROUP, PLLC                     Tel: (207) 942-2898
30 Western Avenue                              Email: bbaber@lanhamblackwell.com
Gloucester, MA 01930
Tel: (888) 887-1776
Email: ecf@randazza.com


                                        *Attorneys for Plaintiff,*
                                        *Shawn McBreairty*

## CERTIFICATE OF SERVICE

I hereby certify that, on this 27th day of April, 2023, a copy of the foregoing was filed electronically. Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the court's CM/ECF System.

/s/ Marc J. Randazza
Marc J. Randazza