# United States Court of Appeals
## For the First Circuit

No. 23-1389

SHAWN MCBREAIRTY,

Plaintiff, Appellant,

v.

HEATH MILLER, in his personal and official capacities; SCHOOL BOARD OF RSU 22,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

[Hon. Nancy Torresen, U.S. District Judge]

Before

Barron, Chief Judge,
Selya and Howard, Circuit Judges.

Marc J. Randazza, with whom Jay M. Wolman, Robert J. Morris, II and Randazza Legal Group PLLC were on the brief, for appellant Shawn McBreairty.
Melissa A. Hewey, with whom Susan M. Weidner and Drummond Woodsum were on the brief, for appellees Heath Miller and School Board of RSU 22.
J. Michael Connolly, with whom Consovoy McCarthy PLLC, Anastasia P. Boden and Laura A. Bondank were on the brief, for The Cato Institute, amicus curiae.
Brett R. Nolan for Institute for Free Speech, amicus curiae.
Jason Walta, with whom Benjamin K. Gant, Alice O'Brien, Philip A. Hostak and Nicole Carroll were on the brief, for the National Education Association and the Maine Education Association, amici curiae.

- 2 -

February 21, 2024

**BARRON, Chief Judge**. In this interlocutory appeal from the District of Maine, Shawn McBreairty challenges the denial of his request for a temporary restraining order and preliminary injunction against a local school-board policy that he contends violates the First Amendment by restricting him from saying certain things at the board's public meetings. We vacate the decision below because the record fails to show that McBreairty has standing to seek the injunctive relief at issue.

I.

McBreairty filed the underlying suit in the United States District Court for the District of Maine on March 24, 2023. The defendants are the School Board of Regional School Unit 22 in Maine and Heath Miller, who is the Board's chair.

The complaint set forth four counts, which sought, respectively: (1) damages for a "[v]iolation of the First Amendment to the United States Constitution: Retaliation"; (2) a declaratory judgment and injunctive relief for a "[v]iolation of the First Amendment to the United States Constitution"; (3) "relief" for a "[v]iolation of the Article I Section 4 and Section 15 of the Maine Constitution"; and (4) declaratory and injunctive relief for a "[v]iolation of the Article I Section 4 and Section 15 of the Maine Constitution."

The complaint alleged that the RSU 22 School Board holds meetings at which members of the public may speak during a

designated public-comment period. The complaint quoted from the RSU 22 School Board's Public Participation Policy ("2020 Policy"), which was attached as an exhibit.

The 2020 Policy states, in relevant part, that:

> Confidential personnel information will not be shared in a public session. **No complaints or allegations will be allowed at Board meetings concerning any person employed by the school system or against particular students**. Personnel matters or complaints concerning student or staff issues will not be considered in a public meeting but will be referred through established policies and procedures.

Compl. ¶ 8 (emphasis in complaint). The 2020 Policy also states that "[t]he Chair may interrupt or terminate an individual's statement when it is too lengthy, personally directed, abusive, obscene, or irrelevant," and that "[t]he Chair has the authority to stop any presentation that violates these guidelines or the privacy rights of others." The 2020 Policy further provides that "[a] speaker in violation of these rules may be required to leave in order to permit the orderly consideration of the matters for which the meeting was called" and that "the Chair may request law enforcement assistance as necessary to restore order."

According to the complaint, McBreairty was not permitted under the 2020 Policy "to even mention a teacher's name, unless it is to praise that employee. Praise is allowed, but criticism is not." In addition, the complaint alleged, McBreairty was stopped from criticizing RSU 22 employees during his public comments at

- 4 -

two separate RSU 22 School Board meetings that were held in early 2023.

The complaint alleged that the first of the two meetings was held on February 15 and that McBreairty played an audio recording of himself during the public-comment session of that meeting "where he twice mentioned" the name of an RSU 22 teacher. McBreairty attached as an exhibit to the complaint a video of the meeting's public comment session during which he played the audio recording.

The complaint alleged that the first time that McBreairty mentioned the teacher's name during the audio recording Miller "immediately warned Mr. McBreairty that 'we are not going to mention names.'" The complaint alleged that the second time McBreairty did so "Miller immediately ordered Mr. McBreairty to stop his public comment and sit down. The School Board cut the video feed, and the Hampden Police Department was contacted to remove Mr. McBreairty from the school premises."

In addition to the video, the complaint also attached as an exhibit the official report from the Hampden Police Department of the call that was made to it to remove McBreairty from the Board meeting. The report states that two officers responded and that McBreairty agreed to leave the meeting with them but that he was not arrested or charged with any crime.

With respect to the second of the two meetings, which

was held on March 15, 2023, the complaint alleged as follows. During the public comment session of that meeting, McBreairty mentioned an RSU 22 teacher by name and "criticized her practices." "Immediately after" McBreairty mentioned the teacher's name, "Defendant Miller warned Mr. McBreairty stating, 'We are not going to speak about school employees.  This is your one warning.'" McBreairty then also "criticized practices engaged in by" a different teacher and "[i]mmediately after Mr. McBreairty mentioned [the second teacher's] name, Defendant Miller ordered Mr. McBreairty to stop speaking and sit down.  The School Board cut the video feed, and the police were contacted to remove Mr. McBreairty from the school premises."

A video recording of the March 15 meeting that included McBreairty's comments was attached as an exhibit to the complaint. The complaint did not allege that McBreairty was arrested or charged with any crime following his speech at the March 15 meeting.

On the same day that McBreairty filed the complaint, he also filed an emergency motion for a temporary restraining order ("TRO") and preliminary injunction.  The motion sought "the entry of an injunction prior to the next RSU22 meeting on April 26, 2023."  McBreairty did not attach any exhibits to this motion.

After receiving briefing from both sides, the District Court held a hearing on McBreairty's motion on April 25, 2023.  At

this hearing, the only exhibit McBreairty submitted was a copy of the public agenda for the RSU 22 School Board meeting that was to take place on April 26, 2023.

The next day, the District Court denied the motion, treating McBreairty's request for a TRO as merged with his request for a preliminary injunction.  See McBreairty v. Miller, No. 23-00143, 2023 WL 3096787, at *12 (D. Me. Apr. 26, 2023).  McBreairty timely appealed that decision.  See 28 U.S.C. § 1292(a)(1).

While this appeal was pending, the RSU 22 School Board amended the 2020 Policy.  We refer to the new policy as the 2023 Policy.  It states, in relevant part, that:

> 3(c) Discussion of personnel matters is not permitted during the public comment period due to the privacy, confidentiality and due process rights of school unit employees.  For purposes of this policy, "discussion of a personnel matter" means any discussion, whether positive or negative, of job performance or conduct of a school unit employee.
> (d) Discussion of matters involving individual students are also not permitted during the public comment period due to the privacy, confidentiality, and due process rights of the school unit's students.
> (e) Any concerns about personnel matters and/or student matters should be directed to the Superintendent or another appropriate administrator outside of Board meetings so that they can be addressed through an alternative channel and in a manner consistent with privacy, confidentiality, and due process rights of the individuals involved.
> (f) The Board Chair will stop any public comment that is contrary to these rules.

According to a sworn declaration by Miller, which was

attached as an exhibit to the defendants' briefing in opposition to McBreairty's motion for injunctive relief, the RSU 22 School Board initiated the process of amending its public participation policy at the suggestion of one of the members of the board who "went to a presentation concerning various board policies," and "came back . . . with the recommendation that the District change its policy . . . such that the prohibition on discussion of personnel matters relates not only to negative discussion but also positive discussion."  According to Miller's declaration, at this member's urging, the RSU 22 School Board "reached out to the Maine School Management Association and learned that a new policy would be distributed for all districts to consider very soon.  On March 15, 2023, [the Board] obtained a copy of the newly drafted" model public participation policy, which the RSU 22 School Board adopted, with some amendments, on June 16, 2023.

## II.

The parties recognize that there is a potential jurisdictional obstacle to our reaching the merits of the dispute underlying this appeal because of the change to the 2020 Policy that was made in 2023.  They agree, however, that this change does not moot this appeal, although the defendants contend that the change does moot certain aspects of the appeal, given that the 2020 Policy itself is no longer in place.

We need not take on the mootness issue because it turns

out that there is also another potential jurisdictional obstacle to our reaching the merits of their dispute that we similarly are not free to ignore.  See Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 95 (1998) ("Every federal appellate court has a special obligation to satisfy itself not only of its own jurisdiction, but also that of the lower courts in a cause under review, even though the parties are prepared to concede it." (cleaned up)).  And, as we will explain, this jurisdictional obstacle, which concerns McBreairty's standing under Article III of the U.S. Constitution to seek the injunctive relief at issue, is an insurmountable one, even on de novo review.  See Ramírez v. Sánchez Ramos, 438 F.3d 92, 97 (1st Cir. 2006).  We thus begin and end our analysis with the standing question, which the parties did not address in their briefing to us but which they have addressed at our request in post-argument submissions.  See Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp., 549 U.S. 422, 431 (2007) (holding that there is no required sequencing of jurisdictional issues).

**A.**

Article III only permits federal courts to hear "Cases" or "Controversies."  See U.S. Const. art. III, § 2.  To establish that there is a case or controversy, a plaintiff must have standing to obtain the relief sought.  See Lujan v. Defs. of Wildlife, 504 U.S. 555, 560 (1992).  For there to be standing, the plaintiff

must have suffered an injury in fact, that is fairly traceable to the challenged conduct, and that may be redressed by the requested relief. See id. at 560-61. The component of Article III standing that is in play here concerns injury in fact.

We have held that a plaintiff who, like McBreairty, also was seeking injunctive relief from the enforcement of a limitation on speech that allegedly violated the First Amendment lacked Article III standing because she "never stated an intention to engage in any activity that . . . fall[s] within the [challenged rule]." Ramírez, 438 F.3d at 99; see also Babbitt v. United Farm Workers Nat'l Union, 442 U.S. 289, 297-98 (1979) (requiring a plaintiff seeking injunctive relief under the First Amendment to "allege[] an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by [the policy]," and that there "exists a credible threat of prosecution").[1] To be sure, one might wonder why a plaintiff who seeks an injunction for a claimed First Amendment violation would seek such relief absent a desire to engage in the future conduct that the injunction would make possible. For that reason, one

---

[1] A plaintiff can also assert First Amendment standing to seek injunctive relief by plausibly alleging that he "is chilled from exercising [his] right to free expression or forgoes expression in order to avoid enforcement consequences." See New Hampshire Right to Life Pol. Action Comm. v. Gardner, 99 F.3d 8, 13 (1st Cir. 1996). Neither the District Court nor McBreairty argue that he has adequately alleged standing on this theory, and we see no basis in the record for concluding that he did.

might wonder whether there is any sense in requiring that a plaintiff seeking that relief for such a violation manifest somewhere in the record an intent to engage in the speech on a going forward basis. Why not simply infer that intention from the request for the relief itself?

But Ramírez rightly recognizes the problem with our relying on such surmise. Article III's "Case" or "Controversy" requirement exists to ensure that we resolve only concrete, live disputes and so do not end up rendering advisory opinions in what are merely hypothetical disputes. And, as Ramírez recognizes, we can be sure that a request for injunctive relief to permit future speech presents a dispute of the former rather than latter kind only if the one who seeks that relief has made manifest their intention to engage in the speech in the future. See 438 F.3d at 98-99. For, otherwise, even plaintiffs with no such intention could obtain a First Amendment ruling from a federal court merely by asking for an injunction.

Accordingly, for McBreairty to have standing to seek the injunctive relief at issue here, he must have made the requisite showing for this stage of the litigation that he has an intention to engage in the speech in question at a future meeting of the RSU 22 School Board.[2] As we will explain, he has not done so.

---

[2] We assume, favorably to McBreairty, that a plaintiff's standing to seek a preliminary injunction "should be judged on the

**1.**

In a Rule 28(j) letter that McBreairty submitted after the issue of standing had been raised at oral argument on appeal, McBreairty argues that the allegations in his complaint sufficiently show that he has the requisite intention. He rests this contention in part on the fact that his complaint uses the present tense in setting forth certain allegations regarding the conduct that he is challenging, as he maintains that this usage impliedly reveals that he is alleging an intention to speak in the future and not merely that he has so spoken in the past.

The complaint does use the present tense in setting forth the allegations at various points, such as in passages that state "McBreairty is not permitted to even mention a teacher's name," Compl. ¶ 9, or "Defendants' conduct of shutting down Mr. McBreairty's speech and contacting the police to remove him from RSU22 school premises . . . is unconstitutional and violates his

---

sufficiency of the allegations of the complaint, with any preliminary hearing evidence favorable to the plaintiffs on standing treated as additional allegations of the complaint," see Church v. City of Huntsville, 30 F.3d 1332, 1336 (11th Cir. 1994), rather than by the higher standard that would be required for a plaintiff to show standing at the summary-judgment stage, see Food & Water Watch, Inc. v. Vilsack, 808 F.3d 905, 912 (D.C. Cir. 2015) (requiring this higher showing to establish standing to seek a preliminary injunction); see also Lujan, 504 U.S. at 561 ("[E]ach element [of the standing inquiry] must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, i.e., with the manner and degree of evidence required at the successive stages of the litigation.").

First Amendment rights," Compl. ¶ 23.  But the former passage appears only in the "Factual Background" section of the complaint, while the latter passage appears only in the count that seeks relief for retaliation.  And, consistent with where each passage appears in the complaint, each merely provides a description of <u>past</u> events and makes no representations about what McBreairty intends to do in the future.

Meanwhile, the present-tense passages that appear in the only First Amendment-based claim for which McBreairty seeks injunctive relief read merely as statements about the rule's continued operation, <u>see, e.g.</u>, Compl. ¶ 31 ("Rule 2 is a facially unconstitutional viewpoint-based restriction that prohibits any comments about RSU22 employees or students that the Chair deems is negative."), or that refer to a past occurrence, <u>see, e.g.</u>, Compl. ¶ 32 ("Other members of the public are permitted to address their opinions about teachers while Mr. McBreairty's speech is silenced, and he is ordered to leave."), without referring to what McBreairty intends to do.  Thus, those passages also fail to provide a basis on which we could conclude that McBreairty's complaint alleges that he has the requisite intention.

McBreairty does include a present-tense allegation in Count III of the complaint, which concerns only his state constitutional claim.  There, the complaint states that McBreairty "reasonably fears imminent injury."  Compl. ¶ 36.  But that

allegation does little to enable McBreairty to show what he must for present purposes, as it merely sets forth a legal conclusion, not a factual representation about his future intentions.[3] See Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009) ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.").

Of course, the complaint also contains a request for injunctive relief. But, as we explained above, that request cannot, in and of itself, suffice to show McBreairty has stated the intention to engage in the speech for which he is requesting injunctive relief. Otherwise, a plaintiff with no intention of speaking in the future at all could call upon a federal court to decide a constitutional question merely by, in effect, asking it to do so, thereby securing the very kind of advisory opinion in a hypothetical dispute that Article III exists to prevent. See Babbitt, 442 U.S. at 297. Indeed, the plaintiff in Ramírez requested injunctive relief and yet we held there was no standing because she did not allege "an intention to engage in [an] activity" that would subject her to sanctions under the challenged law. 438 F.3d at 99.

---

[3] Nor is this allegation sufficient to show that McBreairty's future speech has been chilled, see Gardner, 99 F.3d at 13, which, in any event, is not a theory of standing he presses to us or pressed before the District Court.

2.

Notwithstanding the limitations of the complaint's allegations, McBreairty contends in his 28(j) letter that precedent shows that we should infer the required intention from those allegations.

His strongest case in that regard is a district court ruling from within our Circuit, Frese v. MacDonald, 425 F. Supp. 3d 64 (D.N.H. 2019), which held that the plaintiff there had adequately alleged the necessary intention because the complaint included an allegation that read: "[B]ased on his two prior arrests under the statute, Mr. Frese reasonably fears future prosecution under RSA 644:11 for his speech.  He especially fears that he will be arrested and/or prosecuted for speech criticizing law enforcement and other public officials." Compl. ¶ 27, Frese v. MacDonald, 425 F. Supp. 3d 64 (D.N.H. 2019) (No. 18-1180).  The case then later came to us on appeal after the district court denied the defendant's motion to dismiss the plaintiff's amended complaint, see Frese v. MacDonald (Frese II), 512 F. Supp. 3d 273 (D.N.H. 2021), aff'd sub nom. Frese v. Formella (Frese III), 53 F.4th 1 (1st Cir. 2022), and we affirmed while noting that the parties had not addressed standing but that we saw "no error" in the district court's standing analysis, see Frese III, 53 F.4th at 5 n.2.

McBreairty's complaint, however, does not itself contain

allegations regarding his future plans of even the sort that, as we have seen, the plaintiff in Frese had made.  McBreairty's most analogous allegation, which we described above, appears only in an allegation that is pertinent to one of his state law claims and reads: "Plaintiff has been injured, or reasonably fears imminent injury, by these constitutional violations, and Plaintiff is entitled to relief."  Compl. ¶ 36.  That allegation does not refer, however, to the type of speech that McBreairty would engage in and instead is a purely conclusory legal assertion.

The other cases that McBreairty cites are of even less help to him.  The complaint underlying the Sixth Circuit decision that McBreairty cites, Kiser v. Reitz, 765 F.3d 601 (6th Cir. 2014), contained an express allegation that the plaintiff had engaged in the prohibited speech before "and that he intends to do so in the future," id. at 608, while the out-of-circuit district court cases McBreairty cites are similar, see Messina v. City of Fort Lauderdale, 546 F. Supp. 3d 1227, 1233 (S.D. Fla. 2021) (plaintiff alleged, among other things, that he "panhandles a few times a week and would like to do so more often, but he doesn't because of his fear of arrest"); Foothills Christian Church v. Johnson, No. 22-0950, 2023 WL 4042580, at *16 (S.D. Cal. June 15, 2023) ("Plaintiffs allege they plan to open and operate preschools, which indisputably will be subject to the Act.").

Perhaps in some case a request for injunctive relief

- 16 -

could combine with the allegations in a complaint, which on their own would not be enough to make out the requisite intention by implication, to nudge the allegations across the line.  Perhaps Frese may be such a case.  But McBreairty's complaint is simply too bare to warrant that conclusion, as, for the reasons we have explained, it does not even allege what the complaint in Frese did.

### 3.

In denying McBreairty's motion for a temporary restraining order and preliminary injunction, the District Court did note that "McBreairty has expressed that he would like to speak at the next School Board meeting . . . scheduled for April 26, 2023."  McBreairty, 2023 WL 3096787, at *3.  But the sole support the District Court offered for this statement was the first page of McBreairty's memorandum in support of his motion, which stated that he "ha[d] been removed from two prior meetings, under threat of arrest, for criticizing RSU22 employees -- and he intend[ed] to do so again at the next meeting."  An allegation in a pleading, however, is not itself evidence that we may consider for these purposes.  Barrett v. Lombardi, 239 F.3d 23, 27 (1st Cir. 2001).  Indeed, McBreairty does not rely on this statement to contend that he has shown what Ramírez requires.

### B.

In sum, McBreairty has failed to make the showing that,

under Ramírez, he must make to establish that he has standing to seek the injunctive relief at issue.  Accordingly, he cannot show that this dispute over the denial of his request for that relief presents a "Case" or "Controversy" within the meaning of Article III, such that it is one over which a federal court has jurisdiction.

### III.

For the foregoing reasons we vacate the decision below and remand to the District Court.  No costs are awarded.