## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MAINE

| | |
|---|---|
| SHAWN MCBREAIRTY,<br><br>   Plaintiff,<br><br>v.<br><br>HEATH MILLER, in his personal and official capacities; SCHOOL BOARD OF RSU22,<br><br>   Defendants. | Case No. 1:23-cv-00143-NT<br><br><br>**PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION** |

Plaintiff Shawn McBreairty seeks to enjoin Defendants from unconstitutionally barring him from public comment based on viewpoint discrimination and from enforcing BEDH Public Participation Policy Rules 3(b) and 3(c).  He has been removed from two prior meetings, under threat of arrest, for criticizing RSU22 employees – and he intends to do so again at the next meeting on April 24, 2024.  This motion is based on all pleadings and papers on file herein and the attached Memorandum of Points and Authorities, and any further argument and evidence as may be presented at a hearing.

### MEMORANDUM OF LAW

## 1.0    INTRODUCTION

The State of Maine created a public forum for the discussion of education matters. Defendants, however, wish to disobey this directive and preclude criticism of its officials.  Initially, they had a rule that permitted praise of employees of RSU22, but explicitly forbade criticism of them. When McBreairty sued, Defendants changed it to forbid all discussion of "personnel matters." Defendants assert this rule forbids naming any RSU22 employees. The new rule constitutes content and viewpoint-base discrimination, it is an unreasonable content-based restriction on speech, and it is unconstitutionally vague.

The public must be free to debate the relative merits of government employees, including those of the public schools. Connecticut addressed this First Amendment issue with great clarity:

> Robust and wide open debate concerning the conduct of the teachers in the schools of this state is a matter of great public importance . . . [T]eachers' positions, if abused, potentially might cause serious psychological or physical injury to school aged children. Unquestionably, members of society are profoundly interested in the qualifications and performance of the teachers who are responsible for educating and caring for the children in their classrooms. Further, teachers exercise almost unlimited responsibility for the daily implementation of the governmental interest in educating young people. In the classroom, teachers are not mere functionaries. Rather, they conceive and apply both policy and procedure.

*Kelley v. Bonney*, 606 A.2d 693, 710 (Conn. 1992).  There is no reason this court should view the matter differently.

## 2.0   FACTS

All meetings of the RSU22 School Board are open to the public. Doc. No. 34 at ¶ 8. All actions of the School Board are to be taken openly and the deliberations leading to action likewise must be conducted openly. *Id*. at ¶ 9. The public comment period is a forum created and mandated by Maine Legislature in 20-A M.R.S. § 1001(20), which states, in relevant part: "A school board shall provide the opportunity for the public to comment on school and education matters at a school board meeting. Nothing in this subsection restricts the school board from establishing reasonable standards for the public comment period, including time limits and conduct standards." *Id*. at ¶ 10.

Defendants invite the public to attend all meetings and to voice opinions or problems unless those problems involve teachers. *Id*. at ¶ 11. Prior to June 16, 2023, BEDH Public Participation Policy Rule 2 ("Prior Rule 2") provided as follows:

> Confidential personnel information will not be shared in a public session. **No complaints or allegations will be allowed at Board meetings concerning any person employed by the school system or against particular students.** Personnel matters or complaints concerning student or staff issues will not be considered in a public meeting but will be referred through established policies and procedures.

*Id.* at ¶ 12; Doc. No. 34-1 (emphasis added). Praising teachers had been strongly encouraged, but raising concerns about teachers was not tolerated. *Id.*

RSU22 did not permit McBreairty to speak, invoking Prior Rule 2. Defendants called police on McBreairty in February and March 2023 when he criticized RSU22 employees by name during school board meetings, yet they allowed a different individual to provide effusive praise to a named employee in October 2022. Doc. No. 34 at ¶¶ 14-29.

After McBreairty filed this suit, RSU22 adopted a new BEDH Public Participation Policy (the "New Policy"). Doc. No. 34 at ¶¶ 31-32; Doc. No. 34-6. Section 3 of the New Policy contains certain "rules of order" to be enforced by the Board Chair (Miller). Doc. No. 34-6. To wit:

(a).    Speakers will be recognized by the Board Chair, and comments should be addressed to the Board Chair. Requests for information or concerns that require further research may be referred to the superintendent for further action, if necessary;

(b).    Speakers are expected to follow rules of common etiquette and decorum and refrain from engaging in disruptive conduct, including, but not limited to using vulgar and/or obscene language, yelling, threatening others using words or by other actions, making defamatory comments, exceeding the allotted time limits, talking over or interrupting others, offering repetitive comments, and offering comment on matters unrelated to the school unit's programs, policies, or operations;

(c).    Discussion of personnel matters is not permitted during the public comment period due to the privacy, confidentiality[1] and due process rights of school unit employees. For purposes of this policy, 'discussion of a personnel matter' means any discussion, whether positive or negative, of job performance or conduct of a school unit employee;

(d).    Discussion of matters involving individual students are also not permitted during the public comment period due to the privacy, confidentiality, and due process rights of the school unit's students;

---

[1] Under the Freedom of Access Act (FOAA), the Maine legislature determines what qualifies as confidential personnel information and personnel matters for government school employees. 20-A M.R.S. § 6101(2). Because the public comment portions of school board meetings are public forums, a school board cannot limit public comment during school board meetings about government school employees beyond what qualifies as confidential under 20-A M.R.S. § 6101.

(e).   Any concerns about personnel matters and/or student matters should be directed to the Superintendent or another appropriate administrator outside of Board meetings so that they can be addressed through an alternative channel and in a manner consistent with privacy, confidentiality, and due process rights of the individuals involved;

(f).   The Board Chair will stop any public comment that is contrary to these rules;

(g).   Individuals who disrupt a Board meeting may be asked to leave in order to allow the Board to conduct its business in an orderly manner. The Board Chair may request the assistance of law enforcement if necessary to address disruptions or safety concerns.

*Id*. McBreairty intends to return to RSU22 Board meetings and speak during the public comment period, again and again, at every meeting. Doc. No. 34 at ¶ 35. He intends to name and criticize government officials and actors, when appropriate, on account of what they do in the RSU22 schools and how they educate children in RSU22. *Id*. at ¶ 36. Despite these statements being truthful and related to the school unit's programs, policies, and/or operations, they would violate New Rule 3(c) and potentially 3(b), as they would criticize and discuss the job performance and/or conduct of named individuals. *Id*. at ¶¶ 38-39. In addition to this written policy, Miller has created and enforced an unwritten rule that forbids anyone from mentioning an RSU22 employee by name. *Id*. at ¶¶ 16-20 & 24-26; Doc. No. 34-4 at 3-4. Defendants only enforce this unwritten rule, however, against people critical of RSU22 employees. Doc. No. 34 at ¶¶ 14-29. And, while McBreairty has no concrete intent to criticize any individual student, his remarks may allude to the students of RSU22, which could implicate New Rule 3(d). New Rules 3(f) and 3(g) would purport to permit Defendant Miller to stop McBreairty from speaking and cause him to be removed by law enforcement.

McBreairty reasonably fears that Miller would stop him and cause him to be removed by armed law enforcement for purported violation of one or more of the New Policy rules. Doc. No.

34 at ¶ 45. After all, that is what he has done every other time.  McBreairty intends to return to speak at RSU22 meetings, but he does not do so because he fears government action, from another unconstitutional trespass order as RSU22 previously imposed,[2] or other action, up to and including criminal charges, would be taken against him under the New Policy rules, as written and/or as interpreted and enforced by Miller. *Id*. at ¶ 46.

## 3.0    LEGAL STANDARD

Injunctive relief should be issued if: (1) the plaintiff is likely to succeed on the merits; (2) the plaintiff is likely to suffer irreparable harm if the injunction did not issue; (3) the balance of equities tips in plaintiff's favor; and (4) the injunction is in the public interest.  *Winter v. NRDC, Inc.*, 555 U.S. 7, 20 (2008).

## 4.0    LEGAL ARGUMENT

### 4.1    Plaintiff Has Standing

In the First Amendment context, two types of injuries provide standing without the challenger having undergone criminal prosecution: (1) when "the plaintiff has alleged an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by [the] statute, and there exists a credible threat of prosecution." *Mangual v. Rotger-Sabat*, 317 F.3d 45, 56-57 (1st Cir. 2003); and (2) when a plaintiff "is chilled from exercising her right to free expression or forgoes expression in order to avoid enforcement consequences he also demonstrates constitutional standing."  *Id.* at 57 (collecting cases). Twice, Defendants prevented McBreairty from completing his public comment and had him removed by law enforcement under threat of arrest because he expressed a disfavored viewpoint. Defendants have now enacted a new rule that would prohibit McBreairty from making the same kind of comments. McBreairty has an actual

---

[2] *McBreairty v. Sch. Bd. of RSU22*, 616 F. Supp. 3d 79 (D. Me. 2022).

fear of being subject to arrest or other action for violating RSU22's rules, which has made him afraid of making further public comments at School Board meetings. *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 165 (2014) ("[A]dministrative action, like arrest or prosecution, may give rise to harm sufficient to justify pre-enforcement review.") Facing a credible threat the next time he exercises his First Amendment right to criticize a public employee, McBreairty has standing.

### 4.2    McBreairty May Bring a Claim Under 20-A M.R.S. § 1001(20)

In their Answer, Defendants assert that "Plaintiff has no private cause of action under 20-A M.R.S. § 1001(20)." Doc. No. 37.  While the statute does not expressly create a private right, this omission is not determinative, as one may be implied. Courts consider four factors in deciding whether a statute implicitly creates a private cause of action:

> (1) whether the plaintiff is a member of the class for whose benefit the statute was enacted; (2) whether there is any indication of legislative intent, explicit or implicit, either to create such a remedy or deny one; (3) whether it is consistent with the underlying legislative scheme to imply such a remedy; and (4) whether the cause of action is one traditionally relegated to one jurisdiction rather than another.

*Goodwin v. School Admin. Dist. No. 35*, 1998 ME 263, ¶ 12, 721 A.2d 642 (Me. 1998). These factors favor Plaintiff.

First, 20-A M.R.S. § 1001 contains a list of duties that school boards "shall perform." They are statutorily obligated to create a public forum in the form of public comment periods during school board meetings. *Id*. at § 1001(20). The creation of this public forum is for the benefit of the general public, not merely school employees or students. This factor weighs in favor of a private cause of action.

As for the second and third factors, there are no explicit indicators of legislative intent as to whether a private cause of action exists. Maine looks to legislative history when implying a private right of action. *Charlton v. Town of Oxford*, 2001 ME 104, ¶ 15, 774 A.2d 366, 372 (Me.

2001).  Rep. Cuddy, introducing LD 721 (which was enacted and codified at § 1001(20)) sought to ensure a "right" of the public to speak.[4]  The testimony of the Maine Education Association pursued a "right."[5]  As it is a right, the violation thereof is a "wrong" and such would be "in derogation of the general principle that there should be no wrong without a remedy." *Black v. Solmitz*, 409 A.2d 634, 635 (Me. 1979); *Guardians Ass'n v. Civil Serv. Comm'n,* 463 U.S. 582, 626 (1983) (stating that "a right without an effective remedy has little meaning");  *see also* Me. Const. art. I, § 19: "Every person, for an injury done him in his person . . . shall have remedy by due course of law . . ."  Moreover, the context requires it.  Subsection (8-A) establishes due process standards for expulsion proceedings. Subsection (13) requires non-discriminatory hiring practices. To say McBreairty has no right of action means no student can compel due process in expulsion and employees can be discriminated against.  These factors weigh in McBreairty's favor.

For the fourth factor, the cause of action premised on violation of 20-A M.R.S. § 1001(20) is closely intertwined with claims for violation of McBreairty's constitutional rights. Moreover, there is no indication that claims for violation of the statute are "traditionally related" to any particular jurisdiction. Thus, all four factors weigh in McBreairty's favor.  And, McBreairty is likely to succeed on this claim in much the same way his constitutional claims are likely to succeed.

---

[4]*See*  https://legislature.maine.gov/legis/bills/getTestimonyDoc.asp?id=126524  Ironically,  Rep. Cuddy was inspired by the voluntary public comment period of RSU22. *Id.* However, at the time, the rules did not restrict any discussion of staff except as to "confidential personnel information". *See* https://legislature.maine.gov/legis/bills/getTestimonyDoc.asp?id=126526 .
[5]Such was to countermand a School Law Advisory from Drummond Woodsum asserting that "residents       have       no       right       to       speak       at       school       board       meetings". https://legislature.maine.gov/legis/bills/getTestimonyDoc.asp?id=126525 .  However, when it now comes to criticizing teachers, the MEA now backs restricting speech.

### 4.3     Plaintiff is Likely to Prevail on the Merits of His Claims

As previously found, "Mr. McBreairty's expression of his school-related concerns at the podium during the public comment period of School Board meetings constitutes speech that is protected under the First Amendment." *McBreairty v. RSU22* at \*14.  The RSU22 meetings are a limited public forum.  *Id*. at \*20. In deciding McBreairty's prior motion for a temporary restraining order, this Court found (as the parties agreed) that the public comment period constitutes a limited public forum. Doc. No. 17 at 9. Defendants cannot engage in viewpoint discrimination, nor can they engage in content-based discrimination unless doing so is reasonable under the forum analysis. While RSU22 changed its rules in response to this suit, the new rules are just as constitutionally infirm as RSU22's prior rules and directly conflict with 20-A M.R.S. § 1001(2), which creates the public forum in which school board meetings take place.  Accordingly, even if the Court declines to recognize a claim under 20-A M.R.S. § 1001(20), the Court will be abusing its discretion if it does not recognize that 20-A M.R.S. § 1001(20) creates the contours of the public forum where McBreairty wishes to exercise his First Amendment rights.

RSU22's new rules, as well as Defendant Miller's unwritten ban on naming employees, violate McBreairty's constitutional rights. Specifically, (1) Defendants are engaging in viewpoint discrimination by preventing Mr. McBreairty from engaging in public comment before a public body and by using these rules; (2) the ban on discussing "personnel matters," as defined in New Rule 3(c), combined with the ban on naming specific employees, are content-based restrictions that are not reasonable given the purpose of the public forum; and (3) New Rules 3(b) and 3(c) are unconstitutionally vague. The burden is now upon the government to provide a constitutionally permissible reason for doing so.  It cannot.

### 4.3.1   Free Speech Claim

Plaintiff is likely to prevail on his First Amendment claim.  Defendants' rules are facially invalid, and the way they have been applied in the past and would be applied to McBreairty's intended future speech is at odds with the contours of the limited public forum, created by Maine law.  As this Court found in the prior matter, "it is hard to shake the sense that the School Board is restricting the speech because the Board disagrees with both Mr. McBreairty's opinions and the unpleasantness that accompanies them." *Id*. at *26.  This is still the case.

This Court previously recited the relevant public forum standards:

> A limited public forum is what it sounds like—a forum that has been opened to the public but is "limited to use by certain groups or dedicated solely to the discussion of certain subjects." *Christian Legal Soc'y Chapter of the Univ. of Cal., Hastings Coll. of the L. v. Martinez,* 561 U.S. 661, 679 n.11 (2010) (citation omitted). A restriction based on subject matter "may be permissible if it preserves the purposes of that limited forum." *Rosenberger v. Rector & Visitors of Univ. of Va.,* 515 U.S. 819, 830 (1995). But "viewpoint discrimination . . . is presumed impermissible when directed against speech otherwise within the forum's limitations." *Id*.; *see Perry Educ. Ass'n v. Perry Loc. Educators' Ass'n,* 460 U.S. 37, 46 (1983) ("In addition to time, place, and manner regulations, the state may reserve the forum for its intended purposes, communicative or otherwise, as long as the regulation on speech is reasonable and not an effort to suppress expression merely because public officials oppose the speaker's view.").

Doc. No. 17 at 9. "When government targets not subject matter, but particular views taken by speakers on a subject, the violation of the First Amendment is … blatant." *Rosenberger*, 515 U.S. at 829-30.  "A viewpoint need not be political; any form of support or opposition to an idea could be considered a viewpoint." *Marshall v. Amuso*, 571 F. Supp. 3d 412, 421 (E.D. Pa. 2021) (quoting *Matal v. Tam*, 582 U.S. 218, 249 (2017) (Kennedy, J., concurring in part) ("The First Amendment's viewpoint neutrality principle protects more than the right to identify with a particular side. It protects the right to create and present arguments for particular positions in particular ways, as the speaker chooses")).

Viewpoint discrimination occurs when there is a "governmental intent to intervene in a way that prefers one particular viewpoint in speech over other perspectives on the same topic." *Ridley v. M.B.T.A.,* 390 F.3d 65, 82 (1st Cir. 2004). Dictating how a speaker may present a criticism during public comment is viewpoint discrimination. *Morse v. Frederick*, 551 U.S. 393, 436 (2007) ("The government must abstain from regulating speech when the specific motivating ideology or the opinion or perspective of the speaker is the rationale for the restriction") (quoting *Rosenberger*, 515 U.S. at 828-829); *Clark v. Community for Creative Non-Violence,* 468 U.S. 288, 293 (1984) (a restriction is content neutral if it is "justified without reference to the content of the regulated speech"). It is dictating viewpoint when a speaker is prohibited from criticizing a teacher by name, or even uttering a teacher's name, especially in this forum that *requires* Defendants to allow the public to speak on school and education matters. *See* 20-A M.R.S. § 1001(20).[6]

Defendants' New Rule 3(c) is both viewpoint-based and is not a reasonable content-based restriction. The rule, combined with the unwritten rule banning any mention of an employee, means that *any* mention of an RSU22 employee is forbidden. This is unsupportable and incompatible with Maine law. Maine's FOAA statutes provide guidance on what qualifies as confidential personnel information and personnel matters subject to referral. The BEDH Policy refers to the FOAA statutes. Doc. No. 34-6. Under 20-A M.R.S. § 6101, the scope of government school employment information that must remain confidential is defined. "Complaints, charges of

---

[6]    New Rule 3(c) provides that a person may not make positive or negative comments about an employee's job performance, and so Defendants are likely to argue this language makes the rule viewpoint-neutral. The rule does not exist in a vacuum, however, as it was created specifically in response to McBreairty suing Defendants for their viewpoint-based discrimination. Nor should the Court ignore the ease with which the rule can be selectively enforced to punish only criticism, just as Defendants did with the prior rule.

Since New Rule 3(c) was adopted, recordings of meeting show only one public comment speaker, none of whose statements address any particular school, thus providing no evidence as to the application of the rule or absence thereof.

misconduct, replies to complaints and charges of misconduct and memoranda and other materials *pertaining to disciplinary action*" must be kept confidential. 20-A M.R.S. § 6101(b)(6) (emphasis added). "Personnel matters" generally mean "appointment, employment, evaluation, reassignment, duties, discipline, or dismissal." *See Fairchild v. Liberty Indep. Sch. Dist.*, 597 F.3d 747, 760 n.47 (5th Cir. 2010). The definition of "personnel matters" contained in New Rule 3(c) directly contradicts the incorporated statutes and is much broader, encompassing "any discussion . . . of job performance or conduct of a school unit employee."

McBreairty never discussed, nor does he plan to discuss, any personnel matter, let alone a confidential one, as defined by Maine law, yet Defendants' New Rule 3(c) forbids his anticipated statements.[7] This rule discriminates on the basis of viewpoint.  It allows one to say 'I support the pedagogy of the teachers of RSU22,' but stops the speaker from adding 'except Teacher X, whose pedagogy I oppose.'  New Rule 3(c), under the pretext of permitting comment as to a group of school unit employees, discriminates on the basis of viewpoint whenever a singular school unit employee distinguishes themselves from the rest.

---

[7]    The Court previously cited *Fairchild v. Liberty Indep. Sch. Dist.*, 597 F.3d 747, 760 n.47 (5th Cir. 2010) as an example of a constitutionally permissible school board policy that prohibited discussion of "personnel matters." This case was distinguishable regarding the prior Rule 2, as the policy in *Fairchild* defined the term "personnel matters," while Rule 2 did not. New Rule 3(c), in contrast, does define "personnel matters" as "any discussion, whether positive or negative, of job performance or conduct of a school unit employee." But *Fairchild* does not support Defendants' position. The policy at issue in *Fairchild* stated that complaints about specific educators "shall be referred" to a different process. 597 F.3d at 756 n.24. The court noted that nothing on the face of the policy "says that parents cannot at the comment session air their concerns and then subsequently pursue" the different process. *Id*. The policy in *Fairchild*, then, prevented the school board from *acting* on complaints made during an open comment session, rather than forbidding participants from *making* those complaints during the session. As the court found, "the Board can 'listen' to complaints during the comment session, but it cannot 'deliberate on' or 'consider' them." *Id*. Defendants, instead of following what really happened in *Fairchild*, take the position that they can now use New Rule 3(c) to forbid statements about job performance or conduct or criticism of anyone who works for the District, entirely.  That is not what *Fairchild* stands for.

New Rule 3(c) is not reasonable for the purpose of the forum, either. The public is forced to raise issues in a theoretical context rather than through providing concrete examples. It is fundamentally different to say that 'math is not being taught properly in school' as compared to 'there is a certain teacher who is not teaching math properly in school.' It takes little imagination to see how New Rule 3(c) can completely prohibit criticism of not only a school district employee, but even education policies and practices. If there is only one high school physics teacher at RSU22, can the public comment about the physics instruction? This restriction on speech effectively prohibits criticism and is not reasonable (or workable) in the forum designated by the Maine Legislature pursuant to 20-A M.R.S. § 1001(20) and 20-A M.R.S. § 6101.

The scope of the rule is not consistent with its alleged purpose, either. New Rule 3(c) states that "discussion of personnel matters" is prohibited "due to the privacy, confidentiality and due process rights of school unit employees." The obvious reading of this language is that the public may not comment on formal disciplinary proceedings, which may be consistent with Maine law. That is very different from simply voicing criticism of an RSU22 employee, which does not necessarily implicate any of these concerns. 20-A M.R.S. § 6101 defines permissible restrictions on discussion of actually confidential personnel matters, while New Rule 3(c)'s restrictions on speech go far beyond what is reasonable to achieve these goals. The government cannot cite unrelated concerns to justify restrictions on speech.

As the court in *McBreairty*, 2022 U.S. Dist. LEXIS 128353 at *19-20, noted, the "primary purpose of the meeting is for the Board to conduct its business as charged by law," the law "allows the public limited time 'to voice opinions or problems,' and gives the Chair discretion to limit 'irrelevant' speech." Maine law *mandates* a right to speak about "school and education matters" subject to "reasonable standards." Restricting irrelevant comments is *reasonable*. Restricting

actionable defamatory statements might be reasonable (not that anyone should trust Defendants to accurately determine on the spot whether a comment is defamatory). Prohibiting criticism is not.

While New Rule 3(c) is viewpoint-based, this lack of reasonableness would exist even if it truly did apply with equal force to both critical and laudatory comments. The public has as much a First Amendment right to praise teachers as it does to criticize them and it is, thus, an unreasonable content-based restriction.  Statements about what a public school employee does on the job is a "school and education matter" at the heart of the forum's very purpose, as created by state law. There is nothing *reasonable* about prohibiting statements about school employees in a limited public forum created for "school and education matters." If there is criticism about a dangerous building condition, could Defendants avoid criticism by decreeing "building operation matters" as outside the rules? Can they eliminate budget matters when engaged in wasteful spending? Can they narrow the forum to exclude *all* potential for criticism?

Neither the First Amendment nor 20-A M.R.S. § 1001(20) abide this outcome. The Maine Legislature defined the forum. While Defendants may place limits on the length of time a person can speak and guidelines for conduct, they cannot restrict the content further than the limits established by the legislature. New Rule 3(c) restricts the forum beyond what is permissible.

### 4.3.2   Rule 3(c) is Unconstitutional, Both Facially and As-Applied

Plaintiff is faced with arrest for violation of Defendants' unconstitutional New Rule 3(c). "Public speech at school board meetings is in fact protected by the First Amendment." *Marshall*, 571 F. Supp. 3d at 422 (citation omitted). "[P]ublic bodies may confine their meetings to specified subject matter . . . " *Madison Joint Sch. Dist. v. Wis. Emp't Relations Comm'n*, 429 U.S. 167, 175 n.8 (1976). But, such confinement must be reasonable, viewpoint neutral, and clear. New Rule 3(c) is not, particularly given Defendants' unwritten policy of outright banning the mere mention

of any employee names. While the New Rules have not yet been applied, McBreairty knows what statements he plans to make, and those statements would violate the New Rules.

New Rule 3(c) is an unconstitutional prior restraint. "The term 'prior restraint' is used to describe administrative and judicial orders forbidding certain communications when issued in advance of the time that such communications are to occur." *Alexander v. United States*, 509 U.S. 544, 550 (1993) (internal quotation marks and citation omitted; emphasis in original). Importantly:

> The danger of censorship and of abridgment of our precious First Amendment freedoms is too great where officials have unbridled discretion over a forum's use. Our distaste for censorship -- reflecting the natural distaste of a free people -- is deep-written in our law.

*Southeastern Promotions, Ltd. v. Conrad*, 420 U.S. 546, 553 (1975). Systems that give public officials the power to deny use of a forum in advance of actual expression are unconstitutional prior restraints. *Id.; see generally Near v. Minnesota*, 283 U.S. 697, 703, 706, 713-23 (1931).  New Rule 3(c) unconstitutionally restrains McBreairty's speech before he attempts to make it.

In a limited public forum, the government may impose some content-based restrictions, but not without limitation.  It may only do so "if it preserves the purposes of that limited forum." *Rosenberger,* 515 U.S. at 829-30.  A government body cannot be "preserving the purposes of that limited public forum" when that forum exists to discuss RSU22 business, but RSU22 uses the rule to prohibit even *mentioning* the names of RSU22 employees.  Discussions of government actions and policies necessarily implicates the public employees and officials behind them, and the scope of New Rule 3(c) cuts off this entire category of speech.

As this Court found, "the primary purpose of the meeting is for the Board to conduct its business as charged by the law, [and it] allows the public limited time 'to voice opinions or problems.'"  *McBreairty v. RSU22* at *19. Maine Law requires RSU22 to provide the opportunity to comment on "school and education matters," though "irrelevant" speech can be excluded.  There

is nothing irrelevant about *talking about* the body's employees, and the stated purpose of the public forum is to give the public the opportunity to discuss "opinions or problems." *Id.* There is neither authority nor justification to prohibit McBreairty from talking about employees of the government body he is before. This is the core purpose of the forum created by Maine law and by RSU22 policies. "The law and the Policy show that the School Board opened up a limited public forum for the purpose of inviting public comment on school-related matters." *Id.* at *20.

Defendants also have a history of enforcing their rules in a selective manner against McBreairty, both regarding this case and prior litigation. This establishes a "pattern of unlawful favoritism." *McGuire v. Reilly,* 386 F.3d 45, 61 (1st Cir. 2004) (quoting *Thomas v. Chi. Park Dist.,* 534 U.S. 316, 325 (2002)). RSU22 must be enjoined from selective enforcement of the rule. McBreairty is and will continue to be singled out and silenced "because of [his] political activities related to educational and other school-related issues." *Baca v. Moreno Valley Unified Sch. Dist.*, 936 F. Supp. 719, 726 (C.D. Cal. 1996). As in the previous case between the parties, "it is hard to shake the sense that the School Board is restricting the speech because the Board disagrees with both Mr. McBreairty's opinions and the unpleasantness that accompanies them." *McBreairty v. Sch. Bd. of RSU22*, 616 F. Supp. 3d at 96. Defendants enforced their prior Rule 2 and the unwritten ban on naming employees selectively against McBreairty, permitting praise of a named employee while calling the police on McBreairty for criticizing an employee, because Defendants are hostile to McBreairty and his expressed ideology. There is thus a significant danger that McBreairty will be subject to further selective enforcement, particularly given the vagueness of the rules, discussed below. New Rule 3(c) is unconstitutional both facially and as-applied, and its enforcement must be enjoined.

### 4.3.3   New Rules 3(b) and 3(c) are Unconstitutionally Vague

The full scope of New Rules 3(b) and 3(c) is unclear. Earlier in this litigation, Defendants claimed that they have the authority to stop any speaker during the public comment period the moment they utter an RSU22 employee's name, despite this ability appearing nowhere in Defendants' rules. Now with New Rule 3(c) in place, this unwritten silencing power is combined with a prohibition on "any discussion . . . of job performance or conduct of a school unit employee," with no mention of whether the employee must be identified for speech to be forbidden. Furthermore, New Rule 3(b) empowers Defendants to silence a speaker who does not "follow rules of common etiquette and decorum" or who engages in "disruptive conduct," with no attempt to define these terms aside from a non-exclusive list of behaviors. Particularly given the unintuitive and selective manner in which Defendants have interpreted their own rules in the past, these rules are unconstitutionally vague.

A law is unconstitutionally vague where "it does not provide fair notice of what conduct it prohibits and creates a risk of arbitrary enforcement." *Doe v. Hopkinton Pub. Schs*, 19 F.4th 493, 509 (1st Cir. 2021). It must give "a person of ordinary intelligence fair notice of what is prohibited" and must not be "so standardless that it authorizes or encourages seriously discriminatory enforcement." *Williams*, 553 U.S. 285, 304 (2008). A law allows an impermissible amount of enforcement discretion "where it fails to set reasonably clear guidelines for law enforcement officials and triers of fact in order to prevent arbitrary and discriminatory enforcement." *Frese v. Formella*, 53 F.4th 1, 7 (1st Cir. 2022).   In cases involving laws that restrict speech, courts use a heightened standard that requires greater specificity in such laws. *Id*. at 6. Where a law lacks a scienter requirement, it is likely to warrant greater scrutiny, as well. *Local 8027 v. Edelblut*, 651 F. Supp. 3d 444, 460 (D.N.H. 2023) (citing *United States v. Nieves-Castano*, 480 F.3d 597, 603

(1st Cir. 2007)); *Colautti v. Franklin*, 439 U.S. 379, 395 (1979) (abrogated on other grounds in *Dobbs v. Jackson Women's Health Org.*, 142 S. Ct. 2228 (2022)).

Defendants' New Rules 3(b) and 3(c) are both specifically targeted at speech, and neither one contains a scienter requirement, meaning a greater degree of scrutiny is warranted. New Rule 3(b)'s forbiddance of "disruptive conduct" and statements and conduct that do not comport with "common etiquette and decorum" is excessively vague. There are some conceivable examples of conduct that this language is concerned with, such as loudly shouting over a speaker during public comment, but the imprecision in the language here makes it impossible for a person of ordinary intelligence to determine whether broad categories of statements may run afoul of this rule— especially not to the speaker at the podium. For example, is it against "common etiquette and decorum" or "vulgar" to read sexually explicit passages from reading material in an RSU22 school's curriculum to point out that the curriculum is not age-appropriate?[9] And what is to stop Defendants from labeling criticism of School Board members or RSU22 employees (whether or not related to job performance) as defamatory, and thus in violation of this rule? Sometimes criticism of the government can be uncomfortable for others to hear, but with such a sweeping category of prohibited conduct, it is impossible for the average person to know whether their intended criticism will be allowed.

New Rule 3(c) fares no better. It forbids any discussion of "job performance or conduct" of RSU22 employees, without limiting such forbidden discussions to those that name employees. It is unclear, then, whether people are allowed to provide criticism even in the abstract. Does the

---

[9]   The court in *McBreairty v. RSU22*, 616 F. Supp. 3d at 95, considered whether McBreairty's reference to school reading materials containing depictions of "hardcore anal sex" was legally obscene, even though the relevant school board regulation forbade "vulgar" speech, and found McBreairty's speech was protected.

rule allow criticism of teachers collectively at a school, such as saying 'the teachers at this school don't know how to do their jobs?' Can one say 'whoever came up with this curriculum is bad at their job and should be fired?' And, what of statements that do not name an employee, but provide sufficient information for others to identify them? There is a tremendous degree of ambiguity, and a person of ordinary intelligence cannot divine when the School Board may feel this line has been crossed. New Rules 3(b) and 3(c) are thus unconstitutionally vague.

### 4.4    Plaintiff Is Irreparably Harmed; the Harm Must be Enjoined

The "loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976).  When a plaintiff seeks injunctive relief for "an alleged violation of First Amendment rights, a plaintiff's irreparable harm is inseparably linked to the likelihood of success on the merits of plaintiff's First Amendment claim." *WV Assn'n of Club Owners and Fraternal Srvs., Inc. v. Musgrave*, 553 F.3d 292, 298 (4th Cir. 2009).  Thus, if the plaintiff demonstrates a likelihood of success on the merits of its First Amendment claim, they necessarily also establish irreparable harm.  *Fortuño, 699 F.3d at 15*.

Twice, Defendants deprived McBreairty of his First Amendment rights by shutting him down prior to the expiration of his allotted 3-minutes of public comment and calling the police to remove him from the school grounds.   Doc. No. 34 at ¶¶ 19 & 26. This pattern of silencing McBreairty will continue if not enjoined, as McBreairty wishes to attend and speak at future School Board meetings and make statements that will likely violate the new Rule 3(c), as interpreted by Defendants. *Id*. at ¶¶ 35-43. While Defendants have not banned McBreairty from attending meetings, they have enacted a prior restraint on his speech. This restraint makes it impossible for McBreairty to provide meaningful commentary regarding RSU22 employees, as he can only speak about matters for which the public forum was specifically designated in the abstract.

**4.5**     **The Balance of Equities Tips in Plaintiff's Favor**

When the government restricts protected speech, the balance of hardships weighs heavily in a plaintiff's favor. *See Firecross Ministries v. Municipality of Ponce*, 204 F. Supp. 2d 244, 251 (D.P.R. 2002) ("insofar as hardship goes, the balance weighs heavily against Defendants, since they have effectively silenced Plaintiffs' constitutionally protected speech.") Failing to grant the requested injunction will continue to deprive McBreairty of his constitutional rights pursuant to the First Amendment of the Constitution and Article I Sections 4 and 15 of the Maine Constitution. Defendants will suffer no harm if McBreairty is granted the requested injunctive relief. Rather, an injunction will merely restore the rights guaranteed by the U.S. and Maine Constitutions. A preliminary injunction must issue.

**4.6**     **Injunctive Relief is in the Public Interest**

"Protecting rights to free speech is *ipso facto* in the interest of the general public." *McBreairty v. RSU22* at *31-32. Moreover, the unconstitutional regulation being enforced by Defendants in this case has the potential to harm nonparties to the case because it will limit or infringe upon their rights as well. *See Wolfe Fin. Inc. v. Rodgeres*, 2018 U.S. Dist. LEXIS 64335, at *49 (M.D. N.C. April 17, 2018) (*citing McCarthy v. Fuller*, 810 F.3d 456, 461 (7th Cir. 2015)). Other members of the public are chilled from speaking their minds as well, to the detriment of the public forum's very purpose. The Maine Legislature has specified that School Board meetings are for "the public to comment on school and education matters." 20-A M.R.S. § 1001(20). Discussion on school and education matters is severely hampered when the public cannot even identify, much less discuss, any particular school district employees.

Further, even members of the public who are too shy to speak have a right to hear McBreairty's criticisms. Even the government is harmed if it cannot hear critiques of how its

employees are performing. How can a government operate effectively if it never hears criticism? The government will create the illusion that it is operating with a unanimous mandate, and perhaps even fool itself into continuing negative policies, because nobody would dare to criticize them. Enjoining that self-inflicted harm is in the public interest. It is a poor example of representative democracy if the government is shielded from even knowing that citizens may have criticisms of employees. There has been no disruption, except when the Defendants have disrupted their own meetings instead of simply letting McBreairty express his disapproval. The public interest favors the issuance of the injunction, just as it did in *McBreairty v. RSU22.*

### 4.7     At Most, a Minimal Bond Should Be Required

A bond should be required if the enjoined party will suffer harm from the issuance of the injunction. *See Scotts Co. v. United Indus. Corp.*, 315 F.3d 264, 285 (4th Cir. 2002).  In *McBreairty v. Sch. Bd. of RSU22*, no bond was required and no harm came to the Defendants. An injunction will repair the *status quo* and allow the First Amendment to flourish. McBreairty requests that the injunction issue with no bond required.

### 5.0     CONCLUSION

"Expression of . . . school-related concerns at the podium during the public comment period of School Board meetings constitutes speech that is protected under the First Amendment." *McBreairty v. RSU22* at *5. After the issuance of an injunction in his prior case, McBreairty returned to engage in his civic-minded activism. No one has alleged that McBreairty was ever, or in the future will ever be, disruptive or off-topic at any school board meeting. Despite this, Defendants have changed their School Board rules specifically in response to McBreairty's protected speech and this litigation to forbid any mention of any RSU22 employee. The Court should enter a preliminary injunction against the Defendants from enforcing Public Participation

Policy Rules 3(b) as unconstitutionally vague, and 3(c) as viewpoint-based, content-based with no reasonable justification, and unconstitutionally vague.

## REQUEST FOR ORAL ARGUMENT

Plaintiff believes that oral argument may assist the court. This matter involved significant Constitutional issues that oral argument will help to address. However, if oral argument cannot be scheduled with enough time to rule prior to the April 24, 2024, RSU22 meeting, then resolution without oral argument will be necessary.

Dated: April 9, 2024.                              Respectfully Submitted,

/s/ Robert J. Morris                              /s/ Marc J. Randazza
Robert J. Morris, II (ME Bar No. 010402)          Marc J. Randazza (*pro hac vice*)
HOUSER, LLP                                       *Lead Counsel*
400 TradeCenter, Suite 5900                       RANDAZZA LEGAL GROUP, PLLC
Woburn, MA 01801                                  30 Western Avenue
Tel: (339) 203-6498                               Gloucester, MA 01930
Email: rmorris@houser-law.com                     Tel: (888) 887-1776
                                                  Email: ecf@randazza.com

Brett D. Baber, Bar No. 3143
Lanham Blackwell & Baber, PA                       *Attorneys for Plaintiff,*
133 Broadway                                       *Shawn McBreairty*
Bangor, ME 04401
Tel: (207) 942-2898
Email: brett@bloomerrussell.com

Case No. 1:23-cv-00143-NT

## **CERTIFICATE OF SERVICE**

I hereby certify that, on this 9th day of April, 2024, a copy of the foregoing was filed electronically.  Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the court's CM/ECF System.

/s/ Robert J. Morris
Robert J. Morris

RANDAZZA | LEGAL GROUP

Plaintiff's Motion for a Preliminary Injunction