## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MAINE

| | |
|---|---|
| SHAWN MCBREAIRTY, | ) |
| | ) |
| | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )    **Case No. 1:23-cv-00143-NT** |
| | ) |
| HEATH MILLER AND SCHOOL | ) |
| BOARD OF RSU 22, | ) |
| | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION

## INTRODUCTION

For the second time in this case, Plaintiff Shawn McBreairty requests that this Court order the School Board of Regional School Unit 22 ("RSU 22") to allow him to pillory its employees[1] during the public comment period of its Board meetings.  The first time, this Court exhaustively analyzed each factor for injunctive relief and determined that all four factors weighed against such an extraordinary remedy.  *See* Order on Pl.'s Emergency Mot. for a Temporary Restraining Order and Preliminary Injunction (ECF Doc. No. 17) (hereinafter "2023 Order").  Specifically, this Court held that Plaintiff "is unlikely to succeed on the merits of his constitutional challenge to the personnel-matter rule and the way in which the School Board applied the Public Participation Policy to [him]," *id*. at 26, PageID#: 232; that any harm Plaintiff may suffer is mitigated because he is free "to continue to voice his concerns at School Board meetings in accordance with the Public Participation Policy . . . or to lodge his personally directed complaints in accordance with

---

[1] In his first motion, McBreairty proposed to criticize only named employees.  Now he suggests he may also target individual students.  Pl.'s Mot. for a Preliminary Injunction (ECF Doc. No. 39) ("Motion") at 4, PageID#: 366.

the Public Concerns & Complaints Policy," *id*. at 27, PageID#: 233; that the balance of harms inquiry "strongly favors the Defendants," *id*. at 28, PageID#: 234; and that granting any injunction would frustrate the public interest in "keeping RSU 22's educators safe," facilitating orderly public business, and promoting public participation and attention to the business of the Board, *id*.

Since the entry of that Order, McBreairty has amended his complaint to allege that he intends to go back to Board meetings and criticize employees of the District "again and again, at every meeting," First Amended Complaint ("FAC") ¶ 35, and the amendment to Policy BEDH, which was already in the works when Plaintiff filed his initial Complaint, has been enacted.  In addition, Plaintiff now advances a new legal theory—that he is entitled to relief under 20-A M.R.S. § 1001(20)—and attempts to embellish the vagueness argument that was deemed waived in his last motion.  None of these changes impact at all on the merits of this Court's prior decision, and it should deny Plaintiff's motion once again.

## **BACKGROUND**

Defendants adopt herein this Court's recitation of the record in its 2023 Order, *see* 2023 Order at 2-6, PageID#: 208-12, and additionally summarize and supplement it as follows.

RSU 22 holds monthly School Board meetings which are open for the public to attend and are broadcasted in real time via livestream on RSU 22's website.  The primary purpose of School Board meetings "is to conduct the business of the Board related to Board policies, programs, and operations."  Public Participation at School Board Meetings (June 16, 2023) (ECF Doc. No. 34-6) (hereinafter "2023 BEDH Policy"), PageID#: 345.  The job performance and conduct of public employees is separately discussed in executive sessions of the Board, which are governed by a statutory process for which teachers are constitutionally entitled to notice and an opportunity to be heard.  Declaration of Heath Miller, dated April 25, 2024 ("2024 Miller Declaration") ¶ 9. When

conducting its business, the Board is bound by Maine law, which requires the Board, among other things, to "ensure the safety of employees" and "address the negative effects of bullying of school employees" by any "individuals associated with the public school."  20-A M.R.S. § 1001(22). Remarks from the public on "school and education matters" are permitted at Board meetings during only the public comment period, for which Maine law expressly permits the Board to establish "reasonable standards for the public comment period, including time limit and conduct standards."  20-A M.R.S. § 1001(20).

In compliance with Section 1001(20), RSU 22 adopted Policy BEDH, which establishes general requirements for the public comment period in order "to permit fair and orderly expression of public comments at Board business meetings while still allowing the Board to conduct its business efficiently."  2023 BEDH Policy.  Policy BEDH was "designed to promote public participation at [Board] meetings and ensure that the public commentary takes place in an orderly fashion, complies with applicable law, and respects the privacy rights of [RSU 22] employees." Declaration of Heath Miller dated April 3, 2023, (ECF No. 9-1) ("2023 Miller Declaration") ¶ 7. To achieve these ends, the third rule (Rule 3) in the 2023 Policy lists seven rules of order.  In his Motion, Plaintiff challenges only two of those rules of order: Rule 3(b) and Rule 3(c).

Rule 3(b) provides that

> Speakers are expected to follow rules of common etiquette and decorum and refrain from engaging in disruptive conduct, including, but not limited to using vulgar and/or obscene language, yelling, threatening others using words or by other actions, making defamatory comments, exceeding the allotted time limits, talking over or interrupting others, offering repetitive comments, and offering comment on matters unrelated to the school unit's programs, policies, or operations.

2023 BEDH Policy.  Rule 3(c) (the current "Personnel Matter Rule") provides that

> Discussion of personnel matters is not permitted during the public comment period due to the privacy, confidentiality, and due process rights of school unit employees. For purposes of this policy, "discussion of personnel matter" means any discussion,

3

whether positive or negative, of job performance or conduct of a school unit employee.

2023 BEDH Policy.  And contrary to Plaintiff's persistent attempt to have this Court take a "myopic" view of Policy BEDH, *see* 2023 Order at 11, PageID#: 229, other requirements set forth in the Policy also bear mention.  Rule 3(d), which immediately follows Rule 3(c), similarly restricts discussion of individual students:

> Discussion of matters involving **individual** students are **also** not permitted during the public comment period due to the privacy, confidentiality, and due process rights of the school unit's students.

2023 BEDH Policy (emphasis supplied).  Rule 3(e) makes explicit that there are alternative means through which speakers can express concerns about personnel matters:

> Any concerns about personnel matters and/or student matters should be directed to the Superintendent or another appropriate administrator outside of Board meetings so that they can be addressed through an alternative channel and in a manner consistent with privacy, confidentiality, and due process rights **of the individuals involved**.

2023 Policy BEDH (emphasis supplied).  The Policy furthermore explains that these general requirements set out in Policy BEDH govern comments during the public comment period, and it expressly states that members of the public are alternatively "welcome to submit written comments on school and educational matters to the Board and Superintendent."  2023 Policy BEDH.

In addition to the meetings described in the FAC, McBreairty also attended the Board's April 26, 2023 meeting, shortly after this Court denied his initial motion for injunctive relief.  *See* 2024 Miller Declaration, Exhibit H ("April 2023 Meeting").  At that meeting, he described an unnamed RSU 22 teacher's beliefs about "grooming" being taught at the RSU 22 middle school. *See* April 2023 Meeting at 6:20-6:42.  And he also praised individuals without directing his praise to specific, named individuals.  *See id.* at 7:10-7:32 ("I'd like to praise the teachers of this District who refuse to sew racial division on our children; I'd like to praise the teachers of this District who

refuse to groom children for sexual perversions; I'd like to praise teachers who refuse to handout sexually explicit materials that teach minor children how to perform fellatio and sodomy.")  His presentation was not interrupted.  McBreairty has not gone to any meetings since and therefore has not spoken since the adoption of the 2023 BEDH Policy. 2024 Miller Declaration ¶ 8.

## ARGUMENT

### I.   THE STANDARD FOR INJUNCTIVE RELIEF

This Court considers four factors when considering a request for a preliminary injunction:

(1) whether the plaintiff is likely to succeed on the merits, (2) whether he is likely to suffer irreparable harm in the absence of immediate relief, (3) the balance of equities, and (4) whether granting the injunction is in the public interest.

*Norris ex rel. A.M. v. Cape Elizabeth Sch. Dist.*, 969 F.3d 12, 22 (1st Cir. 2020).  If Plaintiff "cannot demonstrate that he is likely to succeed on his quest, the remaining factors become matters of idle curiosity."  *New Comm. Wireless Serv., Inc. v. SprintCom, Inc.*, 287 F.3d 1, 9 (1st Cir. 2002).

### II.   PLAINTIFF CANNOT SUCCEED ON THE MERITS OF HIS CLAIMS

In Counts 1 and 3 of the Amended Complaint are "as applied claims," alleging that the Defendants retaliated against McBreairty and deprived him of his right to free speech and to petition based on the School Board's interruption of Plaintiff when he violated the *prior* version of the Personnel Matter Rule in Policy BEDH.[2]  Counts 2 and 4 of the Complaint allege facial challenges to the 2023 BEDH Policy, claiming that Rules 3(b) and 3(c) of the Policy are unconstitutional on the basis of viewpoint discrimination and vagueness.  Plaintiff remains unable to show a substantial likelihood of success on the merits of these claims.  McBreairty has been

---

[2] This Court need not address Plaintiff's retaliation or right-to-petition claims because Plaintiff does not raise either of these claims in his Motion for a Preliminary Injunction, *see United States v. Zannino*, 895 F.2d 1, 17 (1st Cir. 1990), nor could he, given that his as-applied challenges to a rule that is no longer in effect do nothing to demonstrate that he is entitled to the injunctive relief that he seeks.

permitted to speak at Board meetings about a wide range of issues and criticisms related to school or education matters, and it remains permissible for him to do so despite the fact that he has not spoken at a meeting since April 26, 2023.  Finally, Count 5 alleges a violation of 20-A M.R.S. § 1001(20), for which Plaintiff will not succeed on the merits because he has no private cause of action under that statute and, even if he did, the statute expressly authorizes the Board to establish reasonable standards for the public comment period at school board meetings.

## A.   McBreairty's Facial First Amendment Challenges Will Fail on the Merits[3]

Plaintiff challenges only Rules 3(b) and 3(c) of the Policy.[4]  In considering McBreairty's facial challenges to those portions of the Policy, this Court must consider any legitimate application of the Policy.   *See Gaspee Project v. Mederos*, 13 F.4th 79, 92 (1st Cir. 2021) ("[F]acial challenges leave no room for particularized considerations and must fail as long as the challenged regulation has any legitimate application.").  Moreover, this Court must consider the Policy as a whole when interpreting singular words or provisions therein.  *See, e.g.*, *Graham Cnty. Soil & Water Conservation Dist. v. U.S. ex rel. Wilson*, 559 U.S. 280, 290 (2010) (recognizing that words and phrases in a statute cannot be treated as "islands unto themselves"); *see also* 2023 Order at 11, PageID #: 217 (declining to adopt Plaintiff's "myopic" view of Policy BEDH).

### a.   The Personnel Matter Rule is Viewpoint Neutral and Reasonable[5]

---

[3] As before, this Court need not separately analyze Plaintiff's challenge under the Maine Constitution because its freedom of speech protections are no less restrictive than its federal counterpart.  *See* 2023 Order at 8, PageID #:214.

[4] Although Plaintiff vaguely alludes to his objections to Rule 3(d), he presents no developed argument in his Motion as to how Rule 3(d) is unconstitutional, and such an argument is therefore waived.  *See, e.g.*, *Water Keeper Alliance v. U.S. Dept. of Defense*, 152 F.Supp.2d 155, 158 n.5 (D. P.R. 2001).  Moreover, Plaintiff lacks standing to challenge Rule 3(d) because he acknowledges in the FAC that he "has no concrete intent to criticize or single out any individual student," and he surmises, based only on conjecture, that he might do so only in the event that he is informed of a student having committed sexual assault.  FAC ¶¶ 42-43; *see McBreairty v. Miller*, 93 F.4th 513, 518 (1st Cir. 2024) ("Article III's 'Case' or 'Controversy' requirement exists to ensure that we resolve only concrete, live disputes and so do not end up rendering advisory opinions in what are merely hypothetical disputes.").

[5] Plaintiff challenges only Rule 3(c) on the basis of viewpoint discrimination.  Although Plaintiff alleges in the FAC that Rule 3(b) constitutes viewpoint discrimination, he does not make that argument in his Motion and it is therefore waived.  *See, e.g.*, *Water Keeper Alliance*, 152 F.Supp.2d at 158 n.5.  He also lacks standing to challenge Rule 3(b), as discussed below.

Plaintiff's First Amendment challenge to Rule (c), the Personnel Matter Rule, will fail on the merits because of what he continues to readily admit: the public comment period at RSU 22 School Board meetings is a limited public forum. The Board can therefore restrict public comments so long as such restrictions are viewpoint-neutral and reasonable, *see*, *e.g.*, *Good News Club v. Milford Cent. Sch.*, 533 U.S. 98, 106 (2001), and, as this Court already determined in its 2023 Order, the Personnel Matter Rule is both.

"The essence of a viewpoint discrimination claim is that the government has preferred the message of one speaker over another." *McGuire v. Reilly*, 386 F.3d 45, 62 (1st Cir. 2004). The strong weight of authority continues to support this Court's prior conclusion that a restriction on discussing the job performance or conduct of individually named school employees in a limited public forum, such as the publicly televised comment period at RSU 22 Board meetings, is a viewpoint neutral restriction. *Pollak v. Wilson*, No. 22-8017, 2022 WL 17958787, at *2, *8 (10th Cir. Dec. 27, 2022) (unpublished); *Fairchild v. Liberty Indep. Sch. Dist.*, 597 F.3d 747, 753, 755-60 (5th Cir. 2010); *Prestopnik v. Whelan*, 83 F. App'x 363, 365 (2d Cir. 2003); *Moms for Liberty – Brevard Cnty., FL v. Brevard Pub. Sch.*, 582 F.Supp.3d 1214, 1217-19 (M.D. Fla. 2022), *aff'd* No.22-10297, 2022 WL 17091924 (11th Cir. Nov. 21, 2022); *see also Davison v. Rose*, 19 F.4th 626, 635-36 (4th Cir. 2021), *cert. denied*, 143 S. Ct. 106 (2022); *Cipolla-Dennis v. Cnty. of Tompkins*, No. 21-712, 2022 WL 1237960, at *1-2 & n.1 (2d Cir. Apr. 27, 2022) (unpublished).[6]

McBreairty does not cite case law in support of his position and instead merely attempts to distinguish *Fairchild*, by arguing that the policy there prohibited the Board from acting on

---

[6] The Personnel Matter Rule is not a prior restraint. *See, e.g.*, *Madsen v. Women's Health Ctr., Inc.*, 512 U.S. 753, 764 (1994) ("Not all injunctions that may incidentally affect expression . . . are prior restraints . . . petitioners are not prevented from expressing their message in any one of several different ways."); *see also Widmar v. Vincent*, 454 U.S. 263, 267 n.5 (1981) (obligation to justify prior restraint on speech arises from designation as public forum).

personnel matters but not from listening to them.  This is not so. The policy at issue in *Fairchild,* like the policy here, prohibited naming specific employees and students.  597 F.3d at 756.

Contrary to Plaintiff's argument that the Personnel Matter Rule "can be selectively enforced to punish only criticism," the 2023 BEDH Policy now makes it unequivocally clear that it prohibits both criticism and praise.  Moreover, Plaintiff's argument that the amended Policy is somehow now viewpoint-discrimination in disguise—intended to stifle specifically Plaintiff's criticism—finds no support in the record, which shows that (i) the amendment to the Policy was not done in response to Plaintiff, *see* 2023 Miller Declaration ¶¶ 18-20, 2024 Miller Declaration ¶ 2;  and (ii) Plaintiff and other speakers were in fact permitted to offer a wide range of criticism without violating the Policy, *see* 2023 Order at 19-20, PageID #: 225-26 (finding that two other speakers raised concerns similar to Plaintiff but that only Plaintiff was interrupted because only Plaintiff violated the Policy).

In addition to being viewpoint neutral, the Personnel Matter Rule is reasonable in light of the purpose of the limited public forum.  The purpose of RSU 22 Board meetings is for the School Board to conduct its business as charged by law, and all of the rules of order in Policy BEDH, including the Personnel Matter Rule in Rule 3(c), serve in furtherance of "ensuring the orderly conduct of Board meetings."   2023 BEDH Policy.  The Board also has a related interest in promoting public participation and attendance at its meetings, and, as this Court previously recognized, "[p]ermitting anyone with a comment about a particular individual at the school to voice it at a School Board meeting 'could derail the agenda for the meeting and risk unnecessary disclosure of private information about employees or students.'" 2023 Order at 18, PageID #: 224 (quoting *Fairchild*, 597 F.3d at 760); *see also Lowery v. Jefferson Cnty. Bd. of Educ.*, 586 F.3d

427, 433 (6th Cir. 2009) ("Unstructured, chaotic school board meetings not only would be inefficient but also could deny other citizens the chance to make their voices heard.").

The Personnel Matter Rule is also reasonable in light of the obligations that the Board has when conducting its business, including its obligations to the privacy, confidentiality, and due process rights of school employees.  The Maine Legislature has directed school boards to protect school employees from harassment and to "ensure the safety of employees," including by imposing a statutory duty on school boards to "address the negative effects of bullying of school employees" by any "individuals associated with the public school," 20-A M.R.S. § 1001(22), and the Board has a statutory obligation to keep confidential any personnel information pertaining to school employees, 20-A M.R.S. § 6101.  In addition, school employees are constitutionally entitled to due process when a school board contemplates any matters that implicate an employee's property or liberty interests.  *See, e.g.*, *Fairchild*, 597 F.3d at 752 (explaining that a restriction on any naming of individual employees served the school board's interest in "not hearing personnel . . . grievances in public absent the consent of the employee whose performance is questioned").

The restriction on any comments attributed to an individual employee is reasonable in light of the practical fact that the Board has no way of knowing in real time what will be said about an employee either before or after they are named during the course of one's public comments.  This practical concern implicates the "privacy, confidentiality, and due process rights of school unit employees," 2023 BEDH Policy, and it also implicates the school's liability for any infringement of those rights in addition to defamation.  Moreover, the ability of the Board to fulfill its obligations to these rights of employees in turn affects its ability and duty to protect and retain talented educators. *See Fairchild*, 597 F.3d at 760 ("The Board has a legitimate interest, if not state-law duty, to protect student and teacher privacy and to avoid naming or shaming as potential frustration

of its conduct of business.").  Finally, the Personnel Matter Rule is reasonable in light of the alternative channels that are available.  *See* 2023 Order at 18, PageID #: 224.

This Court should reject Plaintiff's argument that the Personnel Matter Rule sweeps too broadly by cutting off an "entire category of speech" in light of a so-called "unwritten policy" that prohibits any mention of an employee's name.  *See* Motion at 14.  As an initial matter, there is no unwritten policy; the Personnel Matter Rule in 3(c) makes clear that personnel matters constitute "any discussion . . . of job performance or conduct **of a school unit employee**" (emphasis supplied); *see also* Rule 3(d) ("Discussion of matters involving **individual students** are **also** not permitted.").  If it was unclear to Plaintiff that this means an employee identified by name, the record establishes this fact was explained to him when he was interrupted only initially to be warned by the Chair.  *See* ECF No. 34-3 at 2:20-2:24 ("Sir, we're not going to mention names.  Your recording mentioned names.  If it does that again, I'll ask you to sit down.").  And, in any case, the record establishes that the requirements of the rule are not unclear to McBreairty, who spoke uninterrupted at the April 26, 2023 Board meeting when he described an unnamed RSU 22 teacher's beliefs about "grooming" and praised certain teachers without directing his praise to specific named individuals.  *See* April 2023 Meeting at 6:20-6:42, 7:10-7:32.

Third, Plaintiff's argument that "personnel matters" ought to be interpreted narrowly as only the employment information that is kept confidential under Maine's Freedom of Access Act (FOAA) ignores the forum at issue and the multiple, interrelated interests that the Board has in restricting personnel matter comments in this forum.  The purpose of the FOAA is the facilitation of access to public information.  The  Personnel Matter Rule, as discussed above, is intended to do more than merely protect the privacy and confidentiality of employees in the forum at issue here.

10

The purpose of the public comment period at school board meetings is to provide opportunity for comment on "school and education matters." 20-A M.R.S. § 1001(20). Such matters are broad and wide-ranging in light of the myriad issues that touch on education, and RSU 22 does not shy away from the criticisms that can and often do accompany the breadth of educational issues. At the same time, the Board must be able to conduct its after-hours meetings in an efficient and orderly manner while also fulfilling its obligations to employees' rights.

### b. Policy BEDH is Not Unconstitutionally Vague

Plaintiff challenges only Rules 3(b) and 3(c) based on alleged unconstitutional vagueness.

### i. McBreairty has No Standing to Challenge Rule 3(b) in Policy BEDH

In his FAC and in his Motion, McBreairty alleges only that he intends to attend future Board meetings to criticize employees by name, *see* FAC ¶¶ 35-36; *see also* Motion at 1, 4. His expressed intention does not implicate Rule 3(b), which proscribes speakers from engaging in disruptive conduct, and Plaintiff neither alleges nor asserts that he intends to engage in disruptive conduct through any of the styles of expression specifically identified in Rule 3(b) or otherwise.[7] Plaintiff therefore lacks standing to challenge Rule 3(b). *See McBreairty*, 93 F.4th at 518, 520 (explaining that McBreairty was required to show that "he has an intention to engage in the speech in question at a future meeting" and concluding that his allegations did not specifically "refer . . . to the type of speech that McBreairty would engage in").

---

[7] Although Plaintiff argues only in his Motion that his criticism of employees *may* go so far as to constitute defamation and thus fall under Rule 3(b), *see* Motion at 17, he does not allege this in his Complaint, nor would such an allegation be sufficient to establish the requisite concrete intent to challenge Rule 3(b). *McBreairty*, 93 F.4th at 518, 521. Moreover, such an allegation would not allege either conduct proscribed by Rule 3(b) or a credible threat of enforcement. *Cf. Frese v. MacDonald*, 425 F.Supp.3d 64, 74-75 (D. N.H. 2019) (plaintiff's proclaimed intent to criticize law enforcement asserted conduct proscribed by a criminal defamation statute when plaintiff had previously been prosecuted for criminal defamation, pursuant to that statute, after criticizing police officers). Even further, because the Personnel Matter Rule does not permit any comments with respect to the job performance or conduct of individual employees, there is no credible threat of enforcement of Rule 3(b) against Plaintiff's proposed criticism. And indeed, the Board has an interest in the Personnel Matter Rule, in part, because the Board cannot necessarily know in real time whether comments made about an employee are defamatory.

ii.   <u>Policy BEDH is Not Subject to Vagueness Challenges</u>

"The void-for-vagueness doctrine . . . is concerned with circumstances in which a law is so vague that it does not provide fair notice of what conduct it prohibits and creates a risk of arbitrary enforcement." *Doe v. Hopkinton Pub. Sch.*, 19 F.4th 493, 509 (1st Cir. 2021).  Yet vagueness lies only if the challenged provision is such that persons of "average intelligence would have no choice but to guess at its meaning." *Nt'l Org. for Marriage v. McKee*, 649 F.3d 34, 62 (1st Cir. 2011). The government is permitted "considerable discretion," *see Ward v. Rock Against Racism*, 491 U.S. 781, 794 (1989), and "perfect clarity and precise guidance have never been required even of regulations that restrict expressive activity," *Minnesota Voters Alliance v. Mansky*, 138 S. Ct. 1876, 1891 (citing *Ward*, 491 U.S. at 794).

Here, however, Policy BEDH is not even subject to this Fourteenth Amendment vagueness inquiry.  Courts, including the First Circuit, have doubted the applicability of vagueness challenges to provisions other than statutes, ordinances, and licensing schemes.  *See Ridley*, 390 F.3d at 93-94 (questioning the extent to which the vagueness inquiry applies to the MBTA's advertising guidelines and explaining that the "void-for-vagueness argument classically arises where the government imposes criminal sanctions for conduct or speech."); *Milestone v. City of Monroe*, 665 F.3d 774, 785 (7th Cir. 2011) (doubting whether the rules of decorum in a municipal senior center were subject to vagueness challenge because they were neither statute nor ordinance).

iii.   <u>Rule 3(b) is Not Unconstitutionally Vague</u>

Even if Policy BEDH is subject to some level of vagueness inquiry, that inquiry is not nearly as exacting as Plaintiff contends.  "Excessive discretion and vagueness inquiries under the First Amendment are not static inquiries, impervious to context."  *Ridley*, 390 F.3d at 95 (explaining that the vagueness inquiry is most rigorous in the criminal context and finding it

significant to the vagueness inquiry that the regulatory scheme at issue was neither a traditional nor a designated public forum).  Because "selectivity and discretionary access are defining characteristics of non-public fora," the "grant of discretion to exercise judgment in a non-public forum must be upheld so long as it is reasonable in light of the characteristic nature and function of that forum."[8]  *Ridley*, 390 F.3d at 95 (quotation marks omitted).  Here, any discretion is therefore reasonable because the restrictions in Rule 3(b) are explicitly purposed to maintain decorum in a limited public forum that is intended for the Board to conduct its business efficiently and openly.  *See Ridley*, 390 F.3d at 95 (where the chief purpose of the MBTA's advertising program was raising revenue without losing ridership, discretion afforded to government in deciding whether speech was "demeaning" was not unreasonably vague); *Lowery*, 586 F.3d at 436 (school chair's discretion to determine what constituted "repetitive" or "harassing" comments was "unavoidable" when a school board must "be able to keep its meetings in order" so that it can function).

Whether such discretion is reasonable is the only relevant inquiry where, as here, Rule 3(b) restricts only modes of expression and the only consequence that results from violation thereof is being asked to leave the podium or, upon persistent disruption, the meeting.[9]  *See Ridley*, 390 F.3d at 94 (explaining that any vagueness inquiry "reduces to an investigation into . . . discretion" where there are no criminal or monetary sanctions that would create a chilling effect); *Milestone*, 665 F.3d at 785 (high level of clarity not required for rules of decorum, prohibiting vulgar language, where the rules did not result in arrest, incarceration, or even a fine).

In any event, for purposes of the public comment period, the challenged portions of Rule 3(b) have "reasonably clear meanings."  *Ridley*, 390 F.3d at 96.  McBreairty challenges only the

---

[8] The First Circuit equates a "non-public forum" with a "limited public forum."  *See Ridley*, 390 F.3d at 76 n.4; *Curnin v. Town of Egremont*, 510 F.3d 24, 28 (1st Cir. 2007).

[9] Pursuant to Policy BEDH, law enforcement is contacted only when an individual refuses to cease disruption.  2024 Miller Declaration ¶¶ 11-12.

following restrictions in Rule 3(b): the restriction requiring that speakers "follow the rules of common etiquette and decorum and refrain from engaging in disruptive conduct," the restriction on "vulgar" speech, and the restriction on "defamatory" speech." Motion at 17.

As an initial matter, the plain language of Rule 3(b) makes clear what constitutes "disruptive conduct," and "a policy is not to be described as ambiguous because a word is viewed in isolation or a phrase is taken out of context*," Ardente v. Standard Fire Ins. Co.*, 744 F.3d 815, 817 (1st Cir. 2014).  The list of proscribed modes of speech in Rule 3(b) modifies the general requirement that "speakers are expected to follow rules of common etiquette and decorum and refrain from engaging in disruptive conduct, **including, but not limited to** using vulgar and/or obscene language . . . [and] making defamatory comments."  2023 BEDH Policy (emphasis supplied).  Thus, avoiding vulgar expression and defamatory statements, alongside refraining from yelling, threatening, exceeding time limits, and talking over others, are the very kinds of conduct that make up the "common etiquette and decorum" for which Plaintiff contends he can discern no meaning.  Plaintiff's contention that its meaning is unclear is plainly wrong, and the rule provides more guideposts than are even necessary.  *See Ison v. Madison Local Sch. Dist*., 3 F.4th 887, 897 (6th Cir. 2021)*; see also Moms for Liberty*, 582 F.Supp.3d at 1221.

As to Plaintiff's contention that "vulgar" speech is unconstitutionally vague, that contention finds no support in the case law, and indeed Plaintiff cites none in support of his position.  The prohibition on "vulgar" expression in Rule 3(b) restricts lewd, sexually explicit, and profane remarks that serve only to disrupt, and perfect clarity as to what constitutes disruptive, vulgar speech is not required in this limited public forum.  *See Ridley*, 390 F.3d at 93 ("The mere fact that a regulation requires interpretation does not make it vague."); *Lowery*, 586 F.3d at 436. Moreover, "First Amendment jurisprudence has acknowledged limitations on the otherwise

absolute interest of the speaker in reaching an unlimited audience where the speech is sexually explicit and the audience may include children." *Bethel Sch. Dist. No. 403 v. Fraser*, 478 U.S. 675, 684 (1986); *see* Miller Declaration ¶ 10.[10]

Nor is the restriction on "defamatory" speech unclear. The Ninth Circuit has held that a city council rule of decorum prohibiting "slanderous" speech is not facially vague because slander, like defamation, is a "term with a known and established legal meaning" and "[i]t is clear from the legal definition of slander that the rule prohibits speakers from making false statements of fact that are harmful to another's reputation." *Felton v. Griffin*, 185 Fed.Appx. 700, 701-02 (9th Cir. 2006) (citing the definition of slander in Black's Law Dictionary); *see also Ridley*, 390 F.3d at 95 (restriction on advertisements that "demean" or "disparage" was not unreasonably vague even where it required "some degree of interpretation"). That a person of ordinary intelligence need not guess at the meaning of "defamatory" is further supported by the fact that even non-legal dictionaries make clear the well-settled meaning of defamation. *See Defame*, Merriam-webster.com, https://www.merriam-webster.com/dictionary/defame (last visited April 22, 2024) (defining "defame" as "to harm the reputation by communicating false statements about"). Moreover, Plaintiff has no protected First Amendment interest in speech that is defamatory. *See Felton*, 185 Fed.Appx. at 702 (determining that city council's rule banning "slanderous" speech was permissible because the First Amendment does not protect slanderous speech).

---

[10] The Supreme Court's view that restrictions on "vulgar" speech are viewpoint-neutral underscores that the level of discretion here is not unconstitutionally excessive. *See Ridley*, 390 F.3d at 94. That view also reveals no concern for any lack of clarity with respect to categorizing this mode of expression, which does not single out a particular opinion or idea. *See Iancu v. Brunetti*, 139 S. Ct. 2294, 2303 (2019) (Roberts, J. concurring) (explaining that he would interpret the word "scandalous" such that "it can be read more narrowly to bar only marks that offend because of their mode of expression—marks that are obscene, vulgar, or profane."); *id.* at 2303 (Alito, J., concurring) (explaining that Congress could preclude "the registration of marks containing vulgar terms that play no real part in the expression of ideas.").

iv.   The Personnel Matter Rule in Rule 3(c) is Not Unconstitutionally Vague

Plaintiff's argument that Rule 3(c) is vague, if applicable, will fare no better.  Plaintiff

argues that it provides an "unwritten silencing power" because it permits stopping speech as soon

as an employee is named.  *See* Motion at 16.  To start, Plaintiff's own argument suggests that the

contours of the Personnel Matter Rule are unequivocally clear to him.  And, as discussed above,

there is no unwritten rule; the Rule defines "discussion of personnel matter" as "any discussion,

whether positive or negative, of job performance or conduct **of a school unit employee**."  2023

BEDH Policy (emphasis supplied). Rule 3(d) likewise reinforces the conclusion that Rule 3(c)

restricts discussion as to a particular employee.  *See* 2023 BEDH Policy ("Discussion of matters

involving individual students are also not permitted.").

He also argues, in direct contradiction to this first argument, that it is unclear whether

criticism is allowed "in the abstract," even absent naming an individual employee.  *See* Motion at

17-18.  Here, too, the Rule is clear; it prohibits discussion of the conduct "of a school unit

employee," and abstract criticism is plainly allowed.  The record also demonstrates that, to the

extent there is any misunderstanding of the Rule, the Chair often provides a warning when speakers

initially mention individual employees' names; and the record further demonstrates that Plaintiff

understood the rule when he spoke at the April 26, 2023 meeting.

Although Plaintiff cites no case law in support of his position, Circuit Courts have

expressed no concern for any ambiguity in personnel-matter restrictions such as the one challenged

here, *see Pollak,* 2022 WL 17958787, at *2, *8; *Fairchild*, 597 F.3d at 761 (noting that plaintiff,

who challenged a school board policy that did not permit discussion of individual personnel

matters, "wisely [did] not push the vagueness" argument because it lacked merit).

**B. Plaintiff Has No As-Applied Claim for Violation of the New Policy**

The only policy relevant to this Court's consideration of McBreairty's instant motion for a preliminary injunction is the rule currently in effect. McBreairty has not spoken at the public comment portion of the RSU 22 Board meeting since that policy was adopted. He thus has no basis for seeking injunctive relief based on his as-applied claim.

**C. There is No Private Cause of Action Under 20-A M.R.S. § 1001(20)**

McBreairty advances only one new legal theory in his second motion for injunctive relief. He claims that the Public Participation Policy violates 20-A M.R.S. § 1001(20) and that he thus has a reasonable likelihood of success on the merits of his claim pled in Count 5 of the FAC for violation of that statute. He does not.

No Maine case has ever held that there is a private right of action for any provision in Section 1001. The Maine Law Court has warned that it is "hesitant to imply a private right of action where the legislature has not expressly stated that a cause of action exists." *Charlton v. Town of Oxford*, 2001 ME 104, ¶ 15, 774 A.2d 366, 372. This is because, when the Legislature deems it "essential that a private party have a right of action, it has expressly created one." *Id.* (quoting *Larrabee v. Penobscot Frozen Foods, Inc.*, 486 A.2d 97, 101 (Me. 1984)). Thus, where a statute does not expressly provide a private right of action, an action will only be implied, if at all, when there is clear legislative intent discernible from the statute or legislative history. *See Wawenock, LLC v. Dep't of Transp.*, 2018 ME 83, ¶ 5, 187 A.3d 609, 612.

In support of his argument that he has a private right of action under Section 1001(20), Plaintiff quotes language from *Goodwin v. School Admin. Dist. No. 35,* 1998 ME 263, 721 A.2d 672, setting forth a four-factor test to discern whether there exists an implicit private cause of action. This Court need not consider this test because the unambiguous plain language of the

statute makes clear there is no private right of action.  *See Wawenock*, 2018 ME 83, ¶¶ 9-12, 187 A.3d 609 (plain language alone resolved that there was no private right of action).

In any event, none of the factors support Plaintiff's contention.  As to the first factor— whether the plaintiff is a member of the class for whose benefit the statute was enacted—the statute was enacted to instruct school boards on duties that it can or should execute.  Section 1001(20), for example, provides discretion to School Boards in "establishing reasonable standards for the public comment period, including time limits and conduct standards."  The statute does not instruct School Boards on the contours of these reasonable standards, and it must be interpreted consistently with the Legislature's clear objective to vest School Board's with authority to hear, and reasonably restrict, comments on "school and education matters."  *See Wawenock*, 2018 ME 83, ¶¶ 10-11, 187 A.3d 609 (explaining that nothing suggests permission to encroach on Transportation Department's authority when the statute "must be interpreted consistently with" the decision to "provide the [Transportation] Department with broad authority").

As to the second factor—legislative intent—the Law Court looks to the plain language of the statute itself as the best indicator of whether there is legislative intent to create a remedy.[11]  *See id.* ¶¶ 7, 9.  Here, 20-A M.R.S. § 1001, entitled "Duties of school boards," begins "School boards shall perform the following duties."  It then goes on to list twenty-two separate duties, some of which are permissive and some of which are obligatory, and none of which provide for a private cause of action.  There is only one section in Section 1001 that provides for enforcement by a certain class.  *See* § 1001(22) ("If an affected school employee is covered by a collective

---

[11] Plaintiff's argument on legislative intent—that the Maine Legislature somehow intended to provide a private right of action for specifically Section 1001(2) because Representative Cuddy and the Maine Education Association sought to ensure a "right" of the public to speak—is without merit.  There are numerous statutes that create rights yet do not include a private right of action.  *See, e.g.*, *Gonzaga University v. Doe*, 536 U.S. 273 (2002) (No private right of action under FERPA, which gives parents and students rights to access educational records).

bargaining agreement, the policy under this subsection is subject to the dispute resolution process of the collective bargaining agreement."). The plain language thus unambiguously provides for no private cause of action under Section 1001(22).

As to the third factor, it is not consistent with the underlying legislative scheme to imply a private remedy. The fact that the statute provides discretion to School Boards only supports the plain language conclusion. *See Wawenock*, 2018 ME 83, ¶¶ 7, 9, 187 A.3d 609 (explaining that a statute containing "few or no particularities on how its broad transportation goals and policies are to be executed also indicates that it was not intended to afford any private right of action"). As to the fourth factor, the supervision of school boards' conduct is not traditionally relegated to the judicial system, *see, e.g.*, *Solmitz v. Maine Sch. Admin. Dist. No. 59*, 495 A.2d 812, 816 (Me. 1985) ("It is beyond question that local school boards have broad discretion in the management of school affairs."); rather, such oversight occurs through the legislature and at the ballot box.

## III.   PLAINTIFF HAS NOT DEMONSTRATED AN 'UNEQUIVOCAL' RIGHT TO RELIEF BASED ON THE REMAINING FACTORS

### A.   Plaintiff Has Not Established that He Will be Irreparably Harmed if a Preliminary Injunction is Not Issued

Plaintiff contends that he will be irreparably harmed because the "pattern of silencing [him] will continue if not enjoined." Motion at 18. The record simply does not support this contention; at the April 26, 2023 meeting, the same day that this Court entered its 2023 Order, Plaintiff spoke uninterrupted for three minutes while criticizing Mr. Miller's job performance and offering a wide range of other views on topics including gender identity, school signage and programming, academic proficiency, and the politics of the teacher's union, all of which he communicated without naming individual employees. As this Court concluded in its 2023 Order, Plaintiff's "alleged harm absent injunctive relief—his inability to criticize named RSU 22 staff at School

Board meetings—is mitigated" by his ability to voice those concerns in accordance with Policy BEDH or pursuant to the alternative channels for doing so.  2023 Order at 27, Page ID #: 233.

### B.  The Balance of Harms and Public Interest Weigh Against Injunctive Relief

The balance of harms likewise continues to "strongly" weigh in favor of Defendants; Plaintiff cannot show a level of hardship that will outweigh the hardship that the Board will incur if the purposes underlying its policy are frustrated by the relief sought here.  As this Court agreed in its 2023 Order, the Board's interest in conducting orderly meetings is significant, as is the Board's obligation to protect employees from harassment, alongside its interest in shielding itself from defamation claims.  *See id*. at 28, Page ID #: 234.  The Board also has an obligation to honor the due process rights of employees, who are entitled to notice when their performance is discussed before the Board.  "Meanwhile, the Plaintiff can still say whatever he wants about the schools and what is being taught; he just cannot name individuals in this forum."  *Id*.

Finally, injunctive relief would still frustrate the public's interest in keeping RSU 22 educators safe, conducting efficient and orderly business of the Board, and promoting public attention and participation to the work of the Board.  *See id*. at 29, Page ID #: 235.  The public harm at stake once again cannot be overstated, and "[j]udicial interposition in the operation of the public school system of the Nation raises problems requiring care and restraint," *Epperson v. Arkansas*, 393 U.S, 97, 104 (1968).

### <u>CONCLUSION</u>

Because Plaintiff has once again failed to show a substantial likelihood of success on the merits and because all other remaining factors still swing the pendulum towards a denial of Plaintiff's request for relief, this Court must deny Plaintiff's request for a preliminary injunction.

Dated:  April 26, 2024

*/s/ Melissa A. Hewey*_____
Melissa A. Hewey
*/s/ Susan M. Weidner*_____
Susan M. Weidner
Attorneys for Defendants
**DRUMMOND WOODSUM**
84 Marginal Way, Suite 600
Portland, Maine 04101-2480
(207) 772-1941
mhewey@dwmlaw.com
sweidner@dwmlaw.com