## UNITED STATES DISTRICT COURT
## DISTRICT OF MAINE

| | |
|---|---|
| SHAWN MCBREAIRTY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )    Docket No. 1:23-cv-00143-NT |
| | ) |
| HEATH MILLER and | ) |
| SCHOOL BOARD OF RSU22, | ) |
| | ) |
| Defendants. | ) |

## ORDER ON PLAINTIFF'S SECOND
## MOTION FOR A PRELIMINARY INJUNCTION

Before me is Plaintiff Shawn McBreairty's second motion (ECF No. 39) for a preliminary injunction to enjoin the Defendants—the RSU 22 School Board ("**School Board**") and its chair, Heath Miller—from prohibiting McBreairty from public comment and from enforcing the School Board's revised Public Participation Policy. McBreairty is seeking expedited injunctive relief because he intends to criticize RSU 22 employees by name at an upcoming School Board meeting. For the reasons outlined below, the Plaintiff's motion for a preliminary injunction is **DENIED**.

## BACKGROUND[1]

Shawn McBreairty resides in Hampden, a town within Regional School Unit 22 ("**RSU 22**"). First Am. Verified Compl. 42 U.S.C. § 1983 Compl. for Declaratory, Injunctive Relief and Damages ("**Am. Compl.**") ¶¶ 1, 3 (ECF No. 34). RSU 22 is

---

[1] The following facts are drawn from the verified complaint (ECF No. 1) and the amended verified complaint and its exhibits (ECF No. 34), and the declarations and exhibits submitted with the 2023 and 2024 preliminary injunction briefing.

governed by the School Board, which is chaired by Defendant Heath Miller (the "**Board Chair**"). Am. Compl. ¶¶ 2–3. Under Maine law: "A school board shall provide the opportunity for the public to comment on school and education matters at a school board meeting. Nothing in this subsection restricts the school board from establishing reasonable standards for the public comment period, including time limits and conduct standards." 20-A M.R.S. § 1001(20). In accordance with this Maine law, the School Board holds monthly meetings, which are open to the public to attend and are also livestreamed on RSU 22's website. Decl. of Heath Miller ("**Miller Decl.**") ¶¶ 3–4 (ECF No. 9-1). As permitted under 20-A M.R.S. § 1001(20), RSU 22 has enacted School Board-related policies, including a policy identified as "BEDH" and titled "Public Participation in Board Meetings" (the "**Policy**").[2] Am. Compl. Ex. F (ECF No. 34-6). The Policy states that "[t]he primary purpose of School Board meetings is to conduct the business of the Board related to Board policies, programs, and operations." Policy 1.

Pursuant to the Policy, the School Board "recognizes the value of public comments on school and educational matters" and invites members of the public to "speak[ ] during the designated public comment portion of the agenda at Board

---

[2]    Since McBreairty filed his original complaint in March of 2023, the School Board has revised its Public Participation Policy. The former version contained the following rule:

> Confidential personnel information will not be shared in a public session. No complaints or allegations will be allowed at Board meetings concerning any person employed by the school system or against particular students. Personnel matters or complaints concerning student or staff issues will not be considered in a public meeting but will be referred through established policies and procedures.

Am. Compl. Ex. A (ECF No. 34-1). The Plaintiff includes the old policy in his amended complaint and continues to make arguments about the now-defunct rule. Unless otherwise indicated, when I refer to the Policy, I am referring to the version now in effect, the "BEDH Public Participation Policy Revised June 16, 2023." Am. Compl. Ex. F (ECF No. 34-6).

meetings" and "to submit written comments on school and educational matters to the Board and Superintendent." Policy 1. The Policy sets forth general requirements for public comments during meetings, including seven rules of order. Policy 1–2. In his amended complaint, McBreairty takes issue with three of those rules of order, Rule 3(b), Rule 3(c), and Rule 3(d).

In relevant part, Rule 3 states:

b. Speakers are expected to follow rules of common etiquette and decorum and refrain from engaging in disruptive conduct, including, but not limited to using vulgar and/or obscene language, yelling, threatening others using words or by other actions, making defamatory comments, exceeding the allotted time limits, talking over or interrupting others, offering repetitive comments, and offering comment on matters unrelated to the school unit's programs, policies, or operations.

c. Discussion of personnel matters is not permitted during the public comment period due to the privacy, confidentiality and due process rights of school unit employees. For purposes of this policy, "discussion of a personnel matter" means any discussion, whether positive or negative, of job performance or conduct of a school unit employee.

d. Discussion of matters involving individual students are also not permitted during the public comment period due to the privacy, confidentiality, and due process rights of the school unit's students.

Policy 1–2. The Policy further provides that "[a]ny concerns about personnel matters and/or student matters should be directed to the Superintendent or another appropriate administrator outside of Board meetings so that they can be addressed through an alternative channel and in a manner consistent with privacy, confidentiality, and due process rights of the individuals involved." Policy 2. The Board Chair is tasked with ensuring the orderly conduct of School Board meetings and compliance with the Policy, including the above rules of order. Policy 1. He "will

stop any public comment that is contrary to these rules" and "may request the assistance of law enforcement if necessary to address disruptions or safety concerns." Policy 2. The Policy warns that "[i]ndividuals who disrupt a Board meeting may be asked to leave in order to allow the Board to conduct its business in an orderly manner." Policy 2.

At two School Board meetings in February and March of 2023—under the prior public participation policy—the Board Chair warned McBreairty that he was violating the policy then in effect, and, when McBreairty continued speaking, the Board Chair eventually contacted law enforcement to escort McBreairty out. Am. Compl. ¶¶ 16–19, 23, 25–26. In March of 2023, McBreairty filed his complaint in this Court, along with an emergency motion for a temporary restraining order and preliminary injunction, expressing that he wanted to speak at the April 2023 School Board meeting. Emergency Mot. for TRO and Prelim. Inj. 1 (ECF No. 3).

Following expedited briefing and a hearing, I denied McBreairty's motion. Order (ECF No. 17); *McBreairty v. Miller*, No. 1:23-cv-00143-NT, 2023 WL 3096787 (D. Me. Apr. 26, 2023). He appealed the order to the First Circuit, which held that the record failed to show that McBreairty had standing to seek injunctive relief because he had not made the requisite showing that he intended to engage in the speech at issue at a future School Board meeting. *McBreairty v. Miller*, 93 F.4th 513, 518, 521 (1st Cir. 2024).

Meanwhile, on June 16, 2023, while the case was on appeal, the School Board amended its public participation policy to the Policy quoted above. *See* Am. Compl.

¶ 31 & Ex. F. The Defendants aver that the decision to change the Policy was set in motion in the winter of 2023, before McBreairty filed this lawsuit, and was not motivated by his allegations. Suppl. Decl. of Heath Miller ("**Miller Suppl. Decl.**") ¶ 2 (ECF No. 42-1). The School Board began the process of amending the Policy on March 15, 2023, when the Maine School Management Association distributed a new policy it had prepared. Miller Suppl. Decl. ¶ 2.

Following the remand, on March 12, 2024, McBreairty filed his amended complaint, in which he confirmed that he does indeed plan to speak at future School Board meetings "again and again, at every meeting, and he intends to criticize RSU22 officials and government employees at these meetings" and to identify certain individual teachers by name. Am. Compl. ¶¶ 35–36. McBreairty alleges that his comments would violate Rule 3(b) and Rule 3(c) because they would be "critical of the named individuals" and "would discuss the job performance and/or conduct of the named individuals, who are school unit employees." Am. Compl. ¶¶ 38–39. McBreairty also claims that his comments would violate the Board Chair's "unwritten rule that individuals cannot be mentioned by name," which McBreairty says is only enforced against those who criticize the government and not against those who praise it. Am. Compl. ¶¶ 40–41. In addition, McBreairty anticipates that he might one day criticize a student, though he has no concrete intent to do so, and that such speech would be prohibited by Rule 3(d). Am. Compl. ¶ 43. The complaint contains five claims: (1) a claim under 42 U.S.C. § 1983 for violation of the First Amendment because the Defendants retaliated against McBreairty for exercising his First

Amendment rights to freedom of speech and expression and to petition; (2) a claim for declaratory and injunctive relief under 42 U.S.C. § 1983 for violations of the First Amendment; (3) a claim under 5 M.R.S. § 4682 for violations of the rights to free speech and petition provided by the U.S. Constitution and Maine Constitution; (4) a claim for declaratory and injunctive relief under 5 M.R.S. § 4682 for violations of the U.S. Constitution and Maine Constitution; and (5) a claim for violation of 20-A M.R.S. § 1001(20), the Maine statute that requires school boards to provide an opportunity for the public to comment on school and education matters at a school board meeting. Am. Compl. ¶¶ 47–83.

The Defendants filed their answer to the amended complaint on March 25, 2024. Answer (ECF No. 37). On April 9, 2024, McBreairty filed his motion for preliminary injunction ("**Motion**"), arguing that he intended to speak at the April 24, 2024 School Board meeting and that the Court should enjoin the Defendants from enforcing the Policy against him at that meeting. Mot. for Prelim. Inj. ("**Pl.'s Mot.**") (ECF No. 39). On April 11, 2024, I held a conference of counsel to discuss the briefing schedule in light of McBreairty's plans to speak at the April School Board meeting. Minute Entry (ECF No. 41). After conferring with his client, counsel for the Plaintiff represented that McBreairty would instead plan to attend the School Board's first meeting in May to give the parties time to complete briefing and to give me time to consider their arguments and issue a decision. The parties agreed that it was unnecessary to hold an evidentiary hearing or oral argument on the matter. The Defendants filed their response in opposition ("**Opposition**") to McBreairty's Motion

on April 26, 2024. Mem. of Law in Opp'n to Pl.'s Mot. for Prelim. Inj. ("**Defs.' Opp'n**") (ECF No. 42). McBreairty filed a reply on May 10, 2024, a week after the deadline I had set at the conference (ECF No. 43). The parties have confirmed that the next School Board meeting is scheduled for May 15, 2024.

## LEGAL STANDARD

"Injunctive relief 'is an extraordinary and drastic remedy that is never awarded as of right.'" *Monga v. Nat'l Endowment for the Arts*, 323 F. Supp. 3d 75, 82 (D. Me. 2018) (quoting *Peoples Fed. Sav. Bank v. People's United Bank*, 672 F.3d 1, 8–9 (1st Cir. 2012)). "[T]rial courts have wide discretion in making judgments regarding the appropriateness of" preliminary injunctive relief. *Sanchez v. Esso Standard Oil Co.,* 572 F.3d 1, 14 (1st Cir. 2009). For a court to grant injunctive relief, the court must evaluate:

> (1) whether the plaintiff is likely to succeed on the merits, (2) whether he is likely to suffer irreparable harm in the absence of immediate relief, (3) the balance of equities, and (4) whether granting the injunction is in the public interest.

*McBreairty v. Sch. Bd. of RSU*, 616 F. Supp. 3d 79, 88–89 (D. Me. 2022) (citing *Norris ex rel. A.M. v. Cape Elizabeth Sch. Dist.*, 969 F.3d 12, 22 (1st Cir. 2020)). "In the First Amendment context, the likelihood of success on the merits is the linchpin of the preliminary injunction analysis." *Sindicato Puertorriqueño de Trabajadores v. Fortuño*, 699 F.3d 1, 10 (1st Cir. 2012) (per curiam). The Plaintiff as the movant shoulders the burden of establishing that a preliminary injunction should issue, and the School Board "bears the burden of proving the constitutionality of its actions." *United States v. Playboy Ent. Grp., Inc.*, 529 U.S. 803, 816 (2000).

## DISCUSSION

### I.   Standing

Before considering the merits, I must consider whether McBreairty has standing under Article III of the U.S. Constitution to seek the requested injunctive relief. McBreairty maintains that he has standing because he fears being subject to arrest or other action if he violates the School Board's Policy by exercising his First Amendment right to criticize a public employee. Pl.'s Mot. 6. The Defendants argue that McBreairty lacks standing to bring two of his three challenges to the Policy. Defs.' Opp'n 6 n.4, 11. I agree with the Defendants.

As the First Circuit recently explained:

> Article III only permits federal courts to hear "Cases" or "Controversies." To establish that there is a case or controversy, a plaintiff must have standing to obtain the relief sought. For there to be standing, the plaintiff must have suffered an injury in fact, that is fairly traceable to the challenged conduct, and that may be redressed by the requested relief.

*McBreairty*, 93 F.4th at 518 (internal citations omitted). In a facial First Amendment challenge, an injury in fact can be established if the Plaintiff shows "an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by the statute, and there exists a credible threat of prosecution." *Ramírez v. Sánchez Ramos*, 438 F.3d 92, 98 (1st Cir. 2006). But a plaintiff like McBreairty who is "seeking injunctive relief from the enforcement of a limitation on speech that allegedly violate[s] the First Amendment lack[s] Article III standing" if he "never stated an intention to engage in any activity that falls within the challenged rule." *McBreairty*, 93 F.4th at 518 (quoting *Ramírez*, 438 F.3d at 99).

Here, McBreairty alleges that he "intends to return to RSU22 Board meetings and speak during the public comment period, again and again, at every meeting, and he intends to criticize RSU22 officials and government employees at these meetings," including identifying teachers by name, in violation of Rule 3(c) of the Policy. Am. Compl. ¶¶ 35–36, 39. Because McBreairty has alleged his intention to engage in the speech at issue—discussion of individual personnel matters—at future School Board meetings, he has standing to challenge Rule 3(c) of the Policy.

McBreairty also alleges that his comments about RSU 22 employees would violate Rule 3(b) of the Policy because they would be "truthful, yet critical of the named individuals." Am. Compl. ¶ 38. But such intended speech would not, on its face, violate Rule 3(b). In Maine, a comment is defamatory if it involves a false statement. *See Galarneau v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, 504 F.3d 189, 197–98 (1st Cir. 2007). So McBreairty's allegation that he intends to provide truthful comments during the public comment period takes his intended speech out of the purview of Rule 3(b). Although McBreairty poses a rhetorical question in his Motion—"what is to stop Defendants from labeling criticism of School Board members or RSU22 employees . . . as defamatory?"—such speculation does not suffice to allege the injury in fact that McBreairty needs to establish standing.

Similarly, McBreairty lacks standing to challenge Rule 3(d) of the Policy, which prohibits discussion of matters involving individual students. McBreairty alleges that he "has no concrete intent to criticize or single out any individual student," Am. Compl. ¶¶ 42–43, so he admittedly has not shown the "concrete, live dispute[ ]"

needed for standing to challenge Rule 3(d) here. *See McBreairty*, 93 F.4th at 518. And he only alleges entitlement to declaratory and injunctive relief as to Rules 3(b) and 3(c) of the Policy. *See* Am. Compl. ¶¶ 63, 76.

Having determined that McBreairty has standing to challenge only Rule 3(c) of the Policy, I turn now to the merits of his claims.

## II.   The Merits of Plaintiff's Claims

McBreairty focuses on his constitutional free speech claims, so I must determine whether he is likely to succeed on his claim that Rule 3(c) of the Policy violates the First Amendment right to free speech both facially and as applied. Because the protections afforded speech under the Maine Constitution are coextensive to those in the U.S. Constitution, I do not separately analyze his challenge under the Maine Constitution. *See Cutting v. City of Portland*, No. 2:13-cv-359-GZS, 2014 WL 580155, at *4 n.3 (D. Me. Feb. 12, 2014) (" '[T]he Maine Constitution is no less restrictive than the Federal Constitution' with respect to the protections it provides for the freedom of speech." (quoting *State v. Janisczak*, 579 A.2d 736, 740 (Me. 1990))), *aff'd*, 802 F.3d 79 (1st Cir. 2015).

### A.   First Amendment Speech Claim

The First Amendment to the United States Constitution provides that "Congress shall make no law . . . abridging the freedom of speech." U.S. Const. amend. I. The Fourteenth Amendment extends the First Amendment's restrictions to the actions of the states. *New York Times Co. v. Sullivan*, 376 U.S. 254, 277 (1964). First Amendment claims proceed in a three-step analysis. First, I must decide whether the Plaintiff's activity "is speech protected by the First Amendment." *Cornelius v. NAACP*

*Legal Def. & Educ. Fund, Inc.*, 473 U.S. 788, 797 (1985). If it is, I next "must identify the nature of the forum" in which the speech occurred "because the extent to which the Government may limit access depends on whether the forum is public or nonpublic." *Id.* Finally, I "must assess whether the justifications for exclusion from the relevant forum satisfy the requisite standard." *Id.*

As to step one of the inquiry, the Defendants do not dispute that McBreairty's public comments at School Board meetings are protected speech. *See City of Madison, Joint Sch. Dist. No. 8 v. Wis. Emp. Rels. Comm'n*, 429 U.S. 167, 174–75 (1976) (holding that the First Amendment protects the rights of speakers at school board meetings that are opened for direct citizen involvement and permit public participation). Moving to step two, the parties agree that the public comment portion of the School Board meeting is a limited public forum. *See* Mot. 8; Defs.' Opp'n 13; *see also McBreairty v. Sch. Bd. of RSU 22*, 616 F. Supp. 3d 79, 93 (D. Me. 2022) ("Taken together, [Maine] law and the Policy show that the School Board opened up a limited public forum for the purpose of inviting public comment on school-related matters.").

A limited public forum is what it sounds like—a forum that has been opened to the public but is "limited to use by certain groups or dedicated solely to the discussion of certain subjects." *Christian Legal Soc'y Chapter of the Univ. of Cal., Hastings Coll. of the L. v. Martinez*, 561 U.S. 661, 679 n.11 (2010) (citation omitted). Thus, a restriction based on subject matter "may be permissible if it preserves the purposes of that limited forum." *Rosenberger v. Rector & Visitors of Univ. of Va.*, 515 U.S. 819, 830 (1995). But "viewpoint discrimination . . . is presumed impermissible

when directed against speech otherwise within the forum's limitations." *Id.*; *see Perry Educ. Ass'n v. Perry Loc. Educators' Ass'n*, 460 U.S. 37, 46 (1983) ("In addition to time, place, and manner regulations, the state may reserve the forum for its intended purposes, communicative or otherwise, as long as the regulation on speech is reasonable and not an effort to suppress expression merely because public officials oppose the speaker's view.").

Accordingly, the government may restrict expression in a limited public forum so long as the restriction (a) does "not discriminate against speech on the basis of viewpoint" and (b) is "reasonable in light of the purpose served by the forum." *Good News Club v. Milford Cent. Sch.*, 533 U.S. 98, 106–07 (2001) (internal quotation marks omitted). But "[t]he government must abstain from regulating speech when the specific motivating ideology or the opinion or perspective of the speaker is the rationale for the restriction." *Rosenberger*, 515 U.S. at 829. As the First Circuit has explained:

> The essence of viewpoint discrimination is not that the government incidentally prevents certain viewpoints from being heard in the course of suppressing certain general topics of speech, rather, it is a governmental intent to intervene in a way that prefers one particular viewpoint in speech over other perspectives on the same topic.

*Ridley v. Mass. Bay Transp. Auth.*, 390 F.3d 65, 82 (1st Cir. 2004). The government discriminates based on viewpoint if it "denies access to a speaker solely to suppress the point of view he espouses." *Id.* (quoting *Cornelius*, 473 U.S. at 806).

### 1.   Facial Challenge to the Policy

McBrearty argues that Rule 3(c) of the Policy is unconstitutional on its face because it is viewpoint-based, an unreasonable restriction on speech that is content-

based, and vague. Pl.'s Mot. 13–14. The Defendants counter that a personnel-matter restriction like Rule 3(c) is viewpoint neutral, a reasonable restriction on speech, and not unconstitutionally vague. Defs.' Opp'n 7–11, 16.

### a.     Whether Rule 3(c) Is Viewpoint Neutral

To determine if a restriction rises to the level of viewpoint discrimination, I must consider "whether—within the relevant subject category—the government has singled out a subset of messages for disfavor based on the views expressed." *Matal v. Tam*, 582 U.S. 218, 248 (2017) (Kennedy, J., concurring in part and concurring in the judgment). Rule 3(c) of the Policy provides that "[d]iscussion of personnel matters is not permitted during the public comment period due to the privacy, confidentiality and due process rights of school unit employees." Policy 2. The Policy defines "discussion of a personnel matter" to mean "any discussion, whether positive or negative, of job performance or conduct of a school unit employee." Policy 2. On its face, then, the rule does not impermissibly "prefer[ ] one particular viewpoint in speech over other perspectives on the same topic." *See Ridley*, 390 F.3d at 82. Instead it "suppress[es] certain general topics of speech"—topics concerning the job performance or conduct of an RSU 22 employee—which the government is permitted to do in an limited public forum. *See id.* The rule does not single out any subset of messages for disfavor based on the views expressed. I conclude that Rule 3(c) is likely to be found viewpoint neutral.

### b.     Whether Rule 3(c) Is Reasonable

A content-based restriction is reasonable if "it preserves the purposes of that limited forum." *Rosenberger*, 515 U.S. at 829–30. "The reasonableness standard is not

a particularly high hurdle; there can be more than one reasonable decision, and an action need not be the most reasonable decision possible in order to be reasonable." *Ridley,* 390 F.3d at 90. McBrearty argues that there is nothing reasonable about prohibiting statements about school employees in a limited public forum created for comment on "school and education matters." Pl.'s Mot. 13 (quoting 20-A M.R.S. § 1001(20)). Maine law does require that school boards "provide the opportunity for the public to comment on school and education matters at a school board meeting," but the same statute also permits them to establish "reasonable standards for the public comment period." 20-A M.R.S. § 1001(20). The question then comes back around to whether the standard that the School Board established in Rule 3(c), excluding individualized personnel matters from its limited public forum, is reasonable. I conclude that it is likely to be found reasonable.

The primary purpose of the School Board meetings is for the School Board to conduct the business of the school district. Permitting anyone with a comment about a particular individual employed by RSU 22 to voice it at a School Board meeting "could derail the agenda for the meeting and risk unnecessary disclosure of private information about employees or students." *Fairchild v. Liberty Indep. Sch. Dist.*, 597 F.3d 747, 760 (5th Cir. 2010). Further, alternate avenues for such speech are readily available. Obviously outside of the limited public forum of the televised School Board meeting, McBrearty is free to speak his mind about individual school personnel. But more importantly, the Policy itself offers a way for McBrearty to raise his "concerns about personnel matters." Policy 2. Rule 3(e) informs would-be speakers that those

concerns "should be directed to the Superintendent or another appropriate administrator outside of Board meetings so that they can be addressed through an alternative channel and in a manner consistent with privacy, confidentiality, and due process rights of the individuals involved."[3] Policy 2. Alternatively, "members of the public are welcome to submit written comments on school and educational matters to the Board and Superintendent." Policy 1. That all "leaves the public ample opportunity to be heard—just not here and now." *Fairchild*, 597 F.3d at 760; *cf. Davison v. Rose*, 19 F.4th 626, 636 (4th Cir. 2021) ("[D]enying a speaker at the podium in a . . . hearing the right to launch personal attacks does not interfere with what that speaker could say without employing such attacks." (quoting *Steinburg v. Chesterfield Cnty. Plan. Comm'n*, 527 F.3d 377, 387 (4th Cir. 2008))). I therefore find that the restriction in the Policy is likely reasonable.

### c.   Weight of Case Law

As the Defendants point out, I am not alone in concluding that a prohibition on the discussion of an individual school employee's job performance or conduct during a school board meeting's comment session is a reasonable and viewpoint-

---

[3]      Privacy, confidentiality, and the due process rights of RSU 22 employees are among the obligations that the Defendants cite as additional factors in the reasonableness determination that I should balance against the interest in a public opportunity for comment. Mem. of Law in Opp'n to Pl.'s Mot. for Prelim. Inj. ("**Defs.' Opp'n**") 9 (ECF No. 42). A Maine statute requires school boards to "address the negative effects of bullying of school employees" and "ensure the safety of employees and an inclusive environment for all employees." 20-A M.R.S. § 1001(22). Another Maine statute requires schools to keep confidential "information in any form relating to an employee . . . if it relates to . . . [p]erformance evaluations, personal references and other reports and evaluations reflecting on the quality or adequacy of the employee's work or general character compiled and maintained for employment purposes" and any "[c]omplaints, charges of misconduct, replies to complaints and charges of misconduct and memoranda and other materials pertaining to disciplinary action." 20-A M.R.S. § 6101(2)(B).

neutral restriction. In *Pollak v. Wilson*, No. 22-8017, 2022 WL 17958787 (10th Cir. Dec. 27, 2022), the Tenth Circuit upheld the district court's denial of a plaintiff's motion for a preliminary injunction based on a similar First Amendment claim. Under the school board policy at issue, "[p]ersonnel matters are not appropriate topics to be discussed at regular board meetings." *Id.* at *2. When the plaintiff mentioned a school employee by name during the public comment period, the chair "seized on the mention of [the employee's] name as making a comment on a personnel matter, proceeded to shut down [the plaintiff]'s comment, and had [the plaintiff] removed from the premises." *Id.* at *3 (internal quotation marks omitted). Like McBreairty, the plaintiff challenged the constitutionality of the policy both facially and as it was applied to him, arguing that the school board engaged in viewpoint discrimination because "favorable comments about school employees were welcome, while unfavorable speech was a banned 'personnel matter.' " *Id.* at *3–4.

The Tenth Circuit held that the personnel-matter restriction was facially viewpoint neutral because it "prohibits the discussion of a subject—personnel matters—but does not draw a distinction based on viewpoint." *Id.* at *7; *see id.* at *8 ("[T]he text of the Policy is viewpoint neutral because it forbids discussion of all personnel matters, regardless of the speakers' perspective."). It also concluded that, in light of the purpose served by board meetings (conducting the official business of the school district), the policy "reasonably prevents discussion of personnel matters during the public comment period." *Id.* at *8. The Tenth Circuit held that the board "establish[ed] the reasonableness of the Policy's personnel-matter restriction" given

the purpose of the school board meetings and the board's stated need to protect personal information. *Id.* at *9. Because the school board had shown "the personnel-matter restriction is viewpoint neutral and reasonable," the district court "did not abuse its discretion in concluding that [the plaintiff] had not shown a substantial likelihood of success on the merits of this claim." *Id.* at *11.

Similarly, in *Prestopnik v. Whelan*, 83 F. App'x 363 (2d Cir. 2003), the Second Circuit affirmed a district court's finding that a teacher's First Amendment rights had not been violated by a school board's refusal to allow her to speak, through counsel, during the public comment portion of a meeting about her tenure issue. The school board policy in that case "explicitly exclude[d] speech about specific personnel decisions," and the plaintiff had not shown that the policies "either were not viewpoint neutral or were unreasonable." *Id.* at 365; *see also Davison*, 19 F.4th at 635–36 (upholding as reasonable a school board policy that prohibited "all personal attacks, regardless of viewpoint" against any identifiable individual because they cause "unnecessary delay or disruption to a meeting").

Likewise, in *Fairchild v. Liberty Independent School District*, the Fifth Circuit found personnel-matter restrictions to be constitutional under the limited public forum analysis. In that case, the school board policies "exclude[d] from public discourse certain topics of speech—including individualized personnel matters—which the Board channels into more effective dispute resolution arenas, before it hears the matter and resolves it." *Id.* at 759. The Fifth Circuit held that the policies "plainly" were "both viewpoint-neutral and reasonable in light of the forum's

purpose." *Id.* at 760. The court reasoned that there was no evidence that the school board discriminated "based on the view or identity of a given speaker" because "[a] speaker may discuss concerns generally (as [the plaintiff] did)." *Id.* It also found that the rule was reasonable because the school board had "a legitimate interest, if not state-law duty, to protect student and teacher privacy and to avoid naming or shaming as potential frustration of its conduct of business." *Id.*

McBreairty argues that *Fairchild* is distinguishable because the policy in that case allowed the school board to "listen" to personnel complaints during the public comment session but not act on them. Pl.'s Mot. 11 n.7. But the *Fairchild* policy is like RSU 22's Policy in that it did not permit the naming of employees during public comment and instead required members of the public who had "personal disagreement with employees" to go through the alternative channel of the board's grievance processes. *Fairchild*, 597 F.3d at 756–57, 760. As the Fifth Circuit explained, the school board's policy "excludes resolution of the merits of disputed individual performance in its limited forum, and to allow the charges of one side would force allowance of a response—a frustration of this studied effort to manage its agenda." *Id.* at 760. In other words, the school board did "not allow at th[at] time and place charges against its teachers" but instead "reroute[d] them for further treatment." *Id.* Although the parties have yet to develop the record as fully as in *Fairchild*, that appears to be the case in RSU 22 as well.

For the foregoing reasons, I find that it is not likely that Rule 3(c) will be found to be unreasonable or discriminatory on the basis of speaker viewpoint. The

Defendants have therefore justified their exclusion of personnel-matters speech from the limited public forum established for public comment during School Board meetings. I now must decide whether McBreairty is likely correct that Rule 3(c) is impermissibly vague.

### d. Whether Rule 3(c) Is Unconstitutionally Vague[4]

The void-for-vagueness doctrine is based on due process and "is concerned with circumstances in which a law is so vague that it does not provide fair notice of what conduct it prohibits and creates a risk of arbitrary enforcement." *Doe v. Hopkinton Pub. Sch.*, 19 F.4th 493, 509 (1st Cir. 2021). Restrictions on speech require a greater degree of specificity, "[b]ut 'perfect clarity and precise guidance have never been required even of regulations that restrict expressive activity.'" *Frese v. Formella*, 53 F.4th 1, 6–7 (1st Cir. 2022) (quoting *United States v. Williams*, 553 U.S. 285, 304 (2008)), *cert. denied,* 144 S. Ct. 72 (2023).

McBreairty's argument that Rule 3(c) is unconstitutionally vague focuses on whether the rule gives would-be speakers adequate notice. *See* Pl.'s Mot. 17–18. He contends that it is not clear under the rule "whether people are allowed to provide criticism even in the abstract." Pl.'s Mot. 17. "A statute is impermissibly vague for lack of notice 'only if it prohibits an act in terms so uncertain that persons of average

---

[4] The Defendants contend that McBreairty's facial challenge to the Policy should not even be subjected to vagueness scrutiny because the First Circuit and other courts have questioned whether the doctrine applies outside of statutes, ordinances, and licensing schemes. Defs.' Opp'n 12; *see Ridley v. Mass. Bay Transp. Auth.*, 390 F.3d 65, 93 (1st Cir. 2004) (conducting a vagueness analysis yet adding "to the extent it applies here at all" in a case involving guidelines for advertising in a public transit system). It is a fair point. But because I do not have a clearer directive to forgo applying the vagueness inquiry to the school board meeting rules, I proceed with the analysis.

intelligence would have no choice but to guess at its meaning and modes of application.' " *Id.* (quoting *Nat'l Org. for Marriage v. McKee*, 649 F.3d 34, 62 (1st Cir. 2011)). Moreover, "[t]he mere fact that a regulation requires interpretation does not make it vague." *Ridley*, 390 F.3d at 93.

Here, I find that Rule 3(c) is likely not impermissibly vague. It is clear what the rule prohibits because it provides a definition of what is meant by "discussion of a personnel matter." Policy 2. During public comment, speakers may not discuss the "job performance or conduct of a school unit employee" regardless of "whether positive or negative." Policy 2. A person of ordinary intelligence would understand that to mean that he may not praise, criticize, or otherwise comment on an individual RSU 22 employee's job performance or conduct. I see no ambiguity there. Even if there were room for interpretation as to the exact contours of this part of the rule, it is clear from reading Rule 3(c) as a whole that speakers may not discuss particular employees "due to the privacy, confidentiality and due process rights" of those individual school unit employees. *See* Policy 2.

McBreairty's concern about voicing criticism in the abstract is thus unfounded because generalized feedback would not run afoul of Rule 3(c) if it did not identify specific teachers. McBreairty appears to readily appreciate this distinction. He alleges that his intention to "*name and criticize*" particular school employees "on account of what they do in the RSU22 schools and how they educate children" would violate Rule 3(c) "as they would discuss the job performance and/or conduct of the

20

*named individuals*, who are school unit employees."[5] Am. Compl. ¶¶ 36, 39 (emphasis added). These allegations lend support to my conclusion that Rule 3(c) is likely not unconstitutionally vague. Accordingly, I find that McBreairty is unlikely to succeed on his challenge to Rule 3(c) based on vagueness.

### e.    Whether Rule 3(c) Is a Prior Restraint

McBreairty also alleges that the Policy has "chilled [him] from appearing and speaking" at School Board meetings because he fears being removed by law enforcement for violating one or more of the Policy rules. Am. Compl. ¶¶ 44–45. He argues that Rule 3(c) is an unconstitutional prior restraint. Pl.'s Mot. 14. The Defendants disagree. Defs.' Opp'n 7 n.6.

"The term 'prior restraint' is 'used to describe administrative and judicial orders forbidding certain communications when issued in advance of the time that such communications are to occur.'" *March v. Frey*, 458 F. Supp. 3d 16, 36 (D. Me. 2020) (quoting *Alexander v. United States*, 509 U.S. 544, 550 (1993)). "There is a strong presumption that prior restraints on speech are unconstitutional." *Sindi v. El-Moslimany*, 896 F.3d 1, 31 (1st Cir. 2018). Prior restraints often take the form of injunctions, but not all restrictions "that may incidentally affect expression . . . are 'prior restraints.'" *Madsen v. Women's Health Ctr., Inc.*, 512 U.S. 753, 763 n.2 (1994).

---

[5]    For example, at the February 2023 School Board meeting, McBreairty claimed that another teacher at RSU 22 equated introduction of LGBTQ+ concepts to young children with grooming by sexual predators, and McBreairty then identified a teacher by name, referring to her as the "2022 groomer, I mean teacher, of the year." Compl. Ex. C (ECF No. 1-3). He then said that the teacher should be locked up and not allowed within five hundred feet of a school. Compl. Ex. C. At the March 2023 School Board meeting, McBreairty identified by name a teacher "who has an LGBTQ cult war flag on the classroom wall," and he stated another named teacher had "taught sex . . . after school." Compl. Ex. E (ECF No. 1-5).

Here, I am skeptical that Rule 3(c) constitutes a prior restraint for a few reasons. First, a rule in a School Board policy hardly carries the weight of an injunction forbidding certain speech. Second, McBrearty's message is not being silenced altogether; there are multiple avenues available to him to convey his opinions about RSU 22 personnel to the School Board. *See id.* (declining to adopt prior restraint analysis because protesters were "not prevented from expressing their message in any one of several different ways"). And finally, on its face, Rule 3(c) does not operate as a prior restraint on speech but instead serves to provide safeguards by which the Board Chair can facilitate the "fair and orderly expression of public comments" at School Board meetings. Policy 1.

The following passage from a First Circuit case involving a challenge to a leaflet permitting scheme is instructive on this point:

> Subparagraph E.2 allows Massport to revoke a permit based on particular conduct by leafletters. Because this proviso grants discretion to limit activity at the time when it occurs, it is not a prior restraint on speech, but, rather, a means through which public safety personnel may terminate an activity that becomes dangerous or comes to violate the time, place, and manner restrictions contained in the regulations. As such, the proviso constitutes an unremarkable and ubiquitous safeguard, constitutional on its face. Whether the power that it vests in public officials may, at some future date, be applied in an unconstitutional manner is not now before us.

*New Eng. Reg'l Council of Carpenters v. Kinton*, 284 F.3d 9, 25 (1st Cir. 2002). Here, too, Rule 3(c) and the Policy as a whole give the Board Chair discretion to limit speech at the time it occurs, not before. The Policy allows the Board Chair to revoke a speaker's allotted time at the podium if the speaker violates the time, place, and manner restrictions contained in the Policy, for example, if a speaker names

individual teachers in violation of Rule 3(c). As in *Kinton*, that "proviso constitutes an unremarkable and ubiquitous safeguard" to protect the privacy, confidentiality, and due process rights of public school employees, and thus is likely constitutional on its face as it is not a prior restraint.

For all the foregoing reasons, I find that McBreairty has not shown a substantial likelihood of success on the merits of his constitutional challenge to the Policy.[6]

### 2.    As-Applied Challenge to the Policy

McBreairty also alleges and argues that Rule 3(c) is unconstitutional as applied to him. Am. Compl. ¶ 60; Pl.'s Mot. 9, 13–15. The problem with McBreairty's claim at this stage is that Rule 3(c) of the Policy has not yet been applied to McBreairty's speech because he has not spoken at a School Board meeting since the Policy was revised and Rule 3(c) was enacted last June. McBreairty acknowledges as much. *See* Pl.'s Mot. 9 (arguing the constitutionality of the way the rules "would be applied" to his intended future speech); Pl.'s Mot. 10 n.6 ("Since New Rule 3(c) was adopted, recordings of meeting[s] show only one public comment speaker, none of whose comments address any particular school, thus providing no evidence as to the application of the rule or absence thereof.").

---

[6]    I have not revisited the arguments that the parties made in their 2023 briefing under the prior version of the Policy, including McBreairty's as-applied challenge to that Policy, because I view McBreairty's claims under the old rules to be moot and irrelevant to the preliminary injunction motion before me now. To the extent those claims and arguments maintain some relevancy to the case, I adopt and incorporate the findings and conclusions in my prior order.

"[A] challenge to a rule or statute may be ripe for adjudication on the question of facial constitutionality and yet not be ripe for adjudication on the question of constitutionality as applied." *Kines v. Day*, 754 F.2d 28, 31 (1st Cir. 1985). Although McBreairty claims that the Defendants violated his First Amendment rights under the old Public Participation Policy rules, he cites no authority for the proposition that the manner in which the School Board applied the old rules can be the basis of an as-applied challenge to the new Rule 3(c). "Speculation, rather than solid evidence, would [be] the only basis for any . . . conclusion" on his as-applied challenge. *Id.* (noting that "[a]ny decision maker would be foolhardy to undertake such a delicate task without a fully developed record"). As of now, McBreairty's as-applied challenge is not ripe, and I decline his invitation to speculate on how Rule 3(c) may be applied to McBreairty in the future.

### B. Maine Statutory Claim

McBreairty also argues that his claim under 20-A M.R.S. § 1001(20) "is closely intertwined" with his claims for violation of his constitutional rights and that he is likely to succeed on this statutory claim in much the same way his constitutional claims are likely to succeed. Pl.'s Mot. 7. Because I have determined that he is unlikely to prevail on the merits of his First Amendment claims, McBreairty's "closely intertwined" Maine statutory claim is likewise likely to be unsuccessful.

### III. Remaining Factors

Likelihood of success "is the main bearing wall of th[e preliminary injunction] framework." *W Holding Co. v. AIG Ins. Co.-P.R.*, 748 F.3d 377, 383 (1st Cir. 2014) (internal quotation marks omitted). If, like McBreairty, "the moving party cannot

demonstrate that he is likely to succeed in his quest, the remaining factors become matters of idle curiosity." *Esso Standard Oil Co. (P.R.) v. Monroig-Zayas*, 445 F.3d 13, 18 (1st Cir. 2006).

### A.      Irreparable Harm

Irreparable harm is measured on "a sliding scale, working in conjunction with a moving party's likelihood of success on the merits, such that the strength of the showing necessary on irreparable harm depends in part on the degree of likelihood of success shown." *Braintree Lab'ys, Inc. v. Citigroup Glob. Mkts. Inc.*, 622 F.3d 36, 42–43 (1st Cir. 2010) (internal citation and quotation marks omitted). Although "the loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury," *Fortuño*, 699 F.3d at 10–11 (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)), here I have found that the Plaintiff is unlikely to succeed on the merits of his First Amendment claims. Further, the Plaintiff's alleged harm absent injunctive relief—his inability to criticize named RSU 22 staff at School Board meetings—is mitigated because McBreairty is free either to continue to voice his concerns at School Board meetings in accordance with the Policy (i.e., speak his piece but refrain from identifying individuals), to submit written comments, or to direct his concerns about personnel matters to school administrators outside of School Board meetings in accordance with Rule 3(e) of the Policy so that his concerns "can be addressed through an alternative channel and in a manner consistent with privacy, confidentiality, and due process rights of the individuals involved." Policy 2.[7]

---

[7]      It bears mention that, rather than seeking run-of-the-mill injunctive relief to preserve the status quo until the merits are resolved, the Plaintiff here seeks to change the current state of affairs.

### B.    Balance of Harms and Public Interest

As to the balance-of-harms inquiry, that too favors the Defendants. I balance the minimal viewpoint-neutral and reasonable interference with McBreairty's right to unfettered free speech—outlined above—against the harm the School Board will suffer if an injunction is granted. As I have previously observed, there is no question that the School Board's interest—conducting the orderly and undisrupted business of the School Board, governing RSU 22's public school system—is significant. In addition, the Defendants point to their statutorily imposed interests in safeguarding RSU 22's employees' privacy and confidentiality and protecting them from harassment and bullying. Meanwhile, McBreairty can still say whatever he wants about the schools and what is being taught by whom; he just cannot name individuals in this forum and instead has to provide such comments through one of the alternative channels provided by Policy. Nothing stops him from writing down his complaints about school and educational matters and submitting them to the School Board and Superintendent per the first page of the Policy, or from directing his concerns about personnel and student matters to the Superintendent or another

---

He is asking me to force the School Board to effectively change its newly revised policy as he wants, to allow him to discuss individual teachers by name during public comment at meetings. "Because a mandatory preliminary injunction alters rather than preserves the status quo, it normally should be granted only in those circumstances when the exigencies of the situation demand such relief." *Atl. Salmon Fed'n U.S. v. Merimil Ltd. P'ship*, No. 1:21-cv-00257-JDL, 2022 WL 558358, at *4 (D. Me. Feb. 24, 2022) (quoting *Man Against Xtinction v. Comm'r of Me. Dep't of Marine Res.*, 478 F. Supp. 3d 67, 71 (D. Me. 2020)). "Nevertheless, those exigencies should still be measured according to the same four-factor test, as the focus always must be on prevention of injury by a proper order, not merely on preservation of the status quo." *Braintree Lab'ys, Inc. v. Citigroup Glob. Mkts. Inc.*, 622 F.3d 36, 41 (1st Cir. 2010) (internal quotation marks omitted).

appropriate administrator outside of School Board meetings, as established by Rule 3(e) of the Policy. The balance-of-harms factor thus strongly favors the Defendants.

As to the public interest, on the one hand, "[p]rotecting rights to free speech is ipso facto in the interest of the general public." *Cutting*, 2014 WL 580155, at \*10 (internal quotation marks omitted). But on the other hand, "the First Amendment does not require endless public commentary," the Maine Legislature has established there is a substantial public interest in keeping RSU 22's educators safe, and "there is a significant public interest in the [School] Board conducting orderly public business." *Moms for Liberty - Brevard Cnty. v. Brevard Pub. Schs.*, 582 F. Supp. 3d 1214, 1221 n.13 (M.D. Fla. 2022), *aff'd,* No. 22-10297, 2022 WL 17091924 (11th Cir. Nov. 21, 2022). Granting the Plaintiff his requested injunctive relief would frustrate these three public interests. I therefore find that denying the preliminary injunction is in the public interest.

## CONCLUSION

For the reasons stated above, the Court **DENIES** the Plaintiff's motion for a preliminary injunction (ECF No. 39).


SO ORDERED.

/s/ Nancy Torresen
United States District Judge

Dated this 15th day of May, 2024.